## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

ATLANTIC SPECIALTY INSURANCE CO. AND EXCESS UNDERWRITERS SUBSCRIBING SEVERALLY TO POLICY NO. TMU-407387

        Plaintiff,

v.

PHILLIPS 66 COMPANY,

        Defendant.

CASE NO. 17-cv-9318

JUDGE: ELDON E. FALLON

MAG.: JANIS VAN MEERVELD

DEMAND FOR JURY TRIAL

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, THIRD-PARTY COMPLAINT, AND DEMAND FOR JURY TRIAL

**NOW INTO COURT,** through undersigned counsel, comes Phillips 66 Company ("Phillips 66"), who files this Answer, Affirmative Defenses, Counterclaim, Third-Party Complaint, and Demand for Jury Trial.

## RULE 12 DEFENSES AND OBJECTIONS

### Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

In response to the Complaint of Atlantic Specialty Insurance Company ("Atlantic Specialty") and "certain underwriters" of policy no. TMU-407387 ("Lloyd's Underwriters") (collectively, "Insurers"), Phillips 66 raises the defense and objection set forth in Federal Rules of Civil Procedure, Rule 12(b)(1), on grounds that complete diversity of citizenship and the amount in controversy, as required by 28 U.S.C. § 1332, have not been satisfied. Specifically, the citizenship of all "names" subscribing to policy

1

no. TMU-407387 must be "distinctly and affirmatively alleged"[1] and considered for purposes of diversity jurisdiction,[2] and the amount in controversy must be established as to each "name" subscribing to the policy.[3]

## ANSWER

Phillips 66 answers the Insurers' Complaint as follows:

### i.

In response to the first un-numbered paragraph of the Complaint, Phillips 66 does not acknowledge or admit that "policy no. TMU-407387" is an "excess policy" or that the Insurers have reserved any of their rights and defenses.

### 1.

The allegations contained in Paragraph 1 of the Complaint do not pertain to Phillips 66 so no response is required of Phillips 66.   To the extent a response is necessary, the allegations are denied for lack of sufficient information or knowledge to form a belief as to the truth of the allegations.

### 2.

The allegations contained in Paragraph 2 of the Complaint do not pertain to Phillips 66 so no response is required of Phillips 66.   To the extent a response is necessary, the allegations are denied for lack of sufficient information or knowledge to form a belief as to the truth of the allegations.

---

[1] *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F. 2d 1254, 1259 (5th Cir. 1988).

[2] *NAG, Ltd. v. Certain Underwriters at Lloyds of London*, CV 16-16728, 2017 WL 490634, at *4 (E.D. La. Feb. 6, 2017).

[3] *Id.*

3.

The allegations contained in Paragraph 3 of the Complaint are admitted.

4.

Paragraph 4 of the Complaint does not contain an allegation of fact, so no response is required.

5.

Phillips 66 admits only that the citizenship allegations contained in Paragraph 3 of the Complaint are accurate.  Phillips 66 denies the remaining allegations in Paragraph 6 of the Complaint for lack of sufficient information or knowledge to form a belief as to the truth of the allegations.

6.

Phillips 66 admits that venue in this district is proper.

7.

Paragraph 7 of the Complaint states a conclusion of law, not an allegation of fact, so no response is required.   To the extent a response is required, Phillips 66 admits only that the Insurers and Blanchard Contractors, Inc. ("Blanchard Contractors") owe contractual obligations to Phillips 66 for defense, indemnity, and insurance coverage, and Phillips 66 further responds by stating the Insurers and Blanchard Contractors have willfully and in bad faith breached their contractual obligations as set forth more fully in Phillips 66's Counterclaim and Third-Party Complaint stated below.

8.

Phillips 66 admits that effective as of November 17, 2016, Phillips 66 and

3

Blanchard Contractors entered into USA Master Services Agreement CW2291283 ("MSA").

9.

Phillips 66 admits that Article 18.1.2 of the MSA obligates Blanchard Contractors to "Indemnify" Phillips 66 and the "Company Indemnitees", as those terms are defined in the MSA, for claims up to $10 million made by employees of Blanchard.  In further response, Phillips 66 states that Article 18 of the MSA contains what is commonly referred to in the industry as "knock for knock" indemnity such that Phillips 66 also agreed to indemnify Blanchard Contractors for personal injury claims made against it by employees of Phillips 66 regardless of the fault.  Phillips 66 adopts by reference and includes in its Answer all of the provisions of the MSA as if pleaded fully herein.

10.

Phillips 66 admits that Article 19.1.3 of the MSA obligates Blanchard Contractors to obtain commercial general liability insurance, including contractual liability coverage. In further response, Phillips 66 adopts by reference and includes in its Answer all of the provisions of the MSA as if pleaded fully herein.

11.

The allegations of Paragraph 11 of the Complaint are denied as written because the incorrect MSA Article is referenced.   In further response, Phillips 66 states that Articles 19.3 and 19.4 of the MSA obligated Blanchard Contractors to obtain primary liability insurance naming Phillips 66 and all "Company Indemnitees" as additional

insureds to the full extent of the risks and liabilities assumed by Blanchard Contractors under the MSA or any service order issued pursuant to the MSA.

## 12.

Phillips 66 admits that on February 9, 2017, a fire occurred on a segment of the RV-60 (VPO1) natural gas liquid incidental gathering pipeline located at Phillips 66's Paradis, Louisiana pump station, which was being operated by Phillips 66 Pipeline, LLC, a wholly owned subsidiary of Phillips 66 Company.  To the extent Paragraph 12 of the Complaint contains any contrary allegations of fact, they are denied.

## 13.

Phillips 66 admits the allegations contained in Paragraph 13 of the Complaint.

## 14.

Phillips 66 admits the allegations contained in Paragraph 14 of the Complaint.

## 15.

Phillips 66 admits the allegations contained in Paragraph 15 of the Complaint and further states that it also tendered the defense and indemnity of the claims to the Insurers due to Phillips 66's status as an "Insured" under the policies issued by the Insurers.

## 16.

Phillips 66 admits the allegations contained in Paragraph 16 of the Complaint upon information and belief.

## 17.

Phillips 66 admits that Atlantic Specialty issued Policy No. B5JH9075516 to Blanchard Contractors ("Atlantic Policy"), and that the Atlantic Policy was in effect on

5

February 9, 2017.  Phillips 66 denies the remainder of Paragraph 17 of the Complaint.

18.

Phillips 66 admits that certain underwriters at Lloyd's, through Trident Marine Managers, Inc., issued Policy No. TMU-407387 to Blanchard Contractors ("Lloyd's Policy"), and that the Lloyd's Policy was in effect on February 9, 2017.  Phillips 66 denies the remainder of Paragraph 18 of the Complaint.

19.

Phillips 66 denies the conclusions of law set forth in Paragraph 19 of the Complaint and further states that La. R.S. 9:2780.1 does not apply to any provisions of the MSA.  La. R.S. 9:2780.1 applies only to provisions "contained in, collateral to, or affecting a motor carrier transportation contract or construction contract."  The work performed by Blanchard Contractors at the time of the incident was not performed pursuant to a "motor carrier transportation contract or construction contract."  Instead, the work was performed pursuant to a contract for maintenance of "gas gathering lines used in association with the transportation of production from oil and gas wells from the point that oil and gas becomes co-mingled for transportation to oil storage facilities or gas transmission lines" Such work is expressly exempt from La. R.S. 9:2780.1.[4]

20.

The allegations contained in Paragraph 20 of the Complaint are denied.  In further response, Phillips 66 states that Atlantic Specialty's duty to defend is broader than its duty to indemnify and, regardless of its coverage obligation as to punitive damages,

---

[4] See La. R.S. 9:2780.1(A)(2)(b)(ii).

6

Atlantic Specialty was obligated to defend Phillips 66 against a "suit" if any one claim was ***potentially*** within coverage.

21.

The Complaint does not contain a paragraph 21.

22.

Phillips 66 denies that the Insurers are entitled to any of the relief requested in Paragraph 22 of the Complaint, and in further response, Phillips 66 states that the indemnity and additional insurance obligations of the MSA are valid and enforceable, Blanchard Contractors is contractually obligated to defend and indemnify Phillips 66 in the *Calloway* and *Jambon* suits, and Phillips 66 is an "Insured" under the policies issued by the Insurers.

### <u>AFFIRMATIVE DEFENSES</u>

AND NOW, in further response to the Insurers' Complaint, Phillips 66 raises the following additional, non-exclusive defenses:

<u>First Defense</u>

The indemnity and additional-insured provisions in the MSA are not void, unenforceable, or contrary to Louisiana law, in whole or in part.

<u>Second Defense</u>

Phillips 66 is an "Insured" under the policies issued by the Insurers.

<u>Third Defense</u>

Under the terms of the policies issued by the Insurers, the terms of the MSA, the allegations of Desmond Calloway and Jacob Jambon against Phillips 66, and/or the

7

representations made by the Insurers or their agents to Phillips 66, the Insurers are/were obligated to defend Phillips 66, pay Phillips 66's attorneys' fees and defense costs, or reimburse Phillips 66 for attorneys' fees and defense costs incurred in defending the *Calloway* and *Jambon* suits.

Fourth Defense

Under the facts and circumstances, the terms of the policies issued by the Insurers, and the terms of the MSA, the Insurers are/were obligated to provide coverage to Phillips 66 for all claims and demands asserted against it by Desmond Calloway and Jacob Jambon or, in the alternative, reimburse Phillips 66 for all sums paid to settle the claims.

Fifth Defense

The Insurers' claims and defenses have been waived.

Sixth Defense

The Insurers' claims and defenses are barred by the principle of estoppel.

Seventh Defense

The Insurers claims and defenses are barred by the equitable principle of unclean hands.

Eighth Defense

Phillips 66 reserves the right to supplement and amend this answer to add additional affirmative defenses or other arguments during the development of the case as discovery warrants, as may be appropriate in the premises, and as additional facts are discovered.

## COUNTERCLAIM

AND NOW, assuming the position of counterclaimant, Phillips 66 Company ("Phillips 66") asserts the following pursuant to Rule 13 of the Federal Rules of Civil Procedure:

## THE PARTIES

### A.

Phillips 66, counterclaimant, is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Texas.

### B.

Made defendants in this Counterclaim are:

i.      Atlantic Specialty Insurance Company ("Atlantic Specialty"), a foreign insurance company licensed to do business and doing business in the State of Louisiana; and

ii.     All underwriters subscribing to policy no. TMU-407387 ("Lloyd's Underwriters"), who, upon information and belief, are entities licensed to do business and doing business in the State of Louisiana.

(Collectively, "Insurers")

## THE ATLANTIC POLICY

### C.

Atlantic Specialty issued Policy No. B5JH9075516 to Blanchard Contractors, Inc.

9

("Atlantic Policy").  The Atlantic Policy was in effect on February 9, 2017.

## D.

Phillips 66 is an "Insured" under the Atlantic Policy by virtue of the "ADDITIONAL INSURED AND WAIVER OF SUBROGATION ENDORSEMENT (BLANKET) (MCL 0295116)" which provides, as follows:

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:**  _$ (included)

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, only to the extent of the risks and liabilities assumed in the "insured contract", it is agreed that:

1.   Section IV. of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an "insured contract" to include as Additional Insureds, but only with respect to liability arising out of "your work."

2.   It is further agreed that we waive any right of recovery we may have against any such Additional Insured because of payments we make for "bodily injury" or "property damage" arising out of "Your Work" for that Additional Insured, but only to the extent of your obligation under the "insured contract".

3.   All Other Terms and Conditions Remain Unchanged.

Alternatively, Phillips 66 is a third-party beneficiary of the Atlantic Policy and/or an injured person with a right of direct action against Atlantic Specialty under La. R.S. 22:1269.

## E.

The Atlantic Policy obligates Atlantic Specialty to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "to defend any 'suit' seeking those damages."

10

F.

The Atlantic Policy also contains the following provision, requiring Atlantic Specialty to indemnify Blanchard Contractors for defense and indemnity obligations assumed under an "insured contract" and arising from "bodily injury" to any of Blanchard Contractors' employees:

> We shall indemnify you for amounts for which you shall have become liable to pay and shall have paid including claims expenses, up to the applicable limits of insurance stated in the declarations on account of investigation, defense and indemnity obligations assumed under an "insured contract" and arising from "bodily injury" to any of your employee(s) (excluding captain(s) and crew of owned and/or operated, chartered, leased or borrowed watercraft and/or diver(s) whilst engaged in diving operations). "Bodily Injury" shall not include bodily injury that may arise from occupational disease.

## THE LLOYD'S POLICY

G.

The Lloyd's Underwriters issued Policy No. TMU-407387 to Blanchard Contractors, Inc. ("Lloyd's Policy"). The Lloyd's Policy was in effect on February 9, 2017.

H.

Phillips 66 is an "Insured" under the Lloyd's Policy by virtue of the definition of "Insured", which means, *inter alia*:

(c) any person or entity to whom the "Insured" is obliged by a written "Insured Contract" entered into before any relevant "Occurrence", to provide insurance such as is afforded by this Policy but only with respect to:

   (i)  liability arising out of operations conducted by the named "Insured" or on its behalf; or

   (ii) facilities owned or used by the named "Insured";

(d) any person or organisation, other than the named "Insured", included as an additional insured in the policies listed in Item 2 of the Declarations but not for broader coverage than is available to such person or organisation under such underlying policies;

11

Alternatively, Phillips 66 is a third-party beneficiary of the Lloyd's Policy and/or an injured person with a right of direct action against the Lloyd's Underwriters under La. R.S. 22:1269.

## I.

The Lloyd's Policy obligates the Lloyd's Underwriters to "indemnify the 'Insured' in respect of its operations anywhere in the World, for 'Ultimate Net Loss' by reason of liability:

(a)  imposed upon the "Insured" by law or

(b)  assumed by the "Insured" under an "Insured Contract",

for damages in respect of:

(i)      "Bodily Injury"

(ii)     "Personal Injury"

(iii)    "Property Damage"

(iv)    "Advertising Injury",

caused by or arising out of an "Occurrence" during the Policy Period as set out in Item 5 of the Declarations.

## J.

The Lloyd's Policy defines "Ultimate Net Loss" as "the amount the 'Insured' is obligated to pay, by judgement or settlement, as damages resulting from an 'Occurrence' covered by this Policy, including the service of suit, institution of arbitration proceedings and all 'Defence Expenses' in respect of such 'Occurrence'."

12

<u>THE MSA AND SERVICE ORDER NO. 4523432638</u>

### K.

On November 17, 2016, Phillips 66 and Blanchard Contractors entered into USA Master Services Agreement CW2291283 ("MSA").  A copy of the MSA is attached hereto as Exhibit A, and incorporated herein by reference.

### L.

Under the MSA, Phillips 66 (the "Company") and Blanchard Contractors (the "Contractor") agreed to establish certain terms and conditions which were incorporated into and applied to each Service Order entered into between Phillips 66 or its Affiliates and Blanchard Contractors or its Affiliates.

### M.

Article 18.1.2 of the MSA contains the following indemnity provision:

18.1.2. PERSONNEL OF CONTRACTOR AND SUBCONTRACTORS. CONTRACTOR SHALL INDEMNIFY EACH OF THE COMPANY INDEMNITEES FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO PERSONAL INJURY OF THE EMPLOYEES OR OFFICERS OF THE CONTRACTOR INDEMNITEES ARISING OUT OF OR OCCURRING IN CONNECTION WITH A SERVICE ORDER, REGARDLESS OF THE TIMING OR NATURE OR STYLE OF SUCH CLAIMS AND REGARDLESS OF THE IDENTITY OF THE CLAIMANT INCLUDING, BUT NOT LIMITED TO, THE EMPLOYEE OR OFFICER HIMSELF AND THEIR RESPECTIVE REPRESENTATIVES, AGENTS, HEIRS, BENEFICIARIES, ASSIGNS AND FAMILY MEMBERS.

### N.

The MSA contains the following definitions:

"Claims" shall mean causes of action, claims, suits, losses, liabilities, fines, penalties, costs, damages, judgments, awards and expenses, including, but not limited to, court costs and reasonable attorneys' fees.

13

"Company" shall have the meaning provided in the first paragraph of this Agreement where the term is used in relation to this Agreement and/ not to a specific Service Order. Where the term is used with regard to responsibilities, rights and obligations under an individual Service Order, "Company" shall mean the entity identified as "Company" in that Service Order.

"Company Indemnitees" shall mean Company and any of its Affiliates and Coventurers who are participants in the project to which the Work relates.

"Contractor" shall have the meaning provided in the first paragraph of this Agreement where the term is used in relation to this Agreement and not to a specific Service Order. Where the term is used with regard to responsibilities, rights and obligations under an individual Service Order, "Contractor" shall mean the entity identified as "Contractor" in that Service Order.

"Contractor Indemnitees" shall mean Contractor and its subcontractors and any of their respective Affiliates that are involved in the Work or in the project for which the Work is provided.

"Indemnify" or "Indemnification" shall mean defend, release, indemnify and hold harmless.

"Personal Injury" shall mean any injury suffered by a natural person including death, sickness, ill health, disease, and mental anguish, distress or injury.

## O.

Article 19.1.3 of the MSA contains the following insurance requirements:

19.1.    Insurance Requirements

Contractor agrees to maintain insurance of the types and with limits of liability not less than those set forth below, at its expense, from insurers reasonably acceptable to Company covering items, risks and operations required to fulfill the Agreement and the Service Orders.

* * * *

19.1.3. Commercial General Liability insurance, including contractual liability coverage, with a limit not less than One Million United States dollars ($1,000,000) any one occurrence. Such insurance shall include sudden and accidental pollution liability coverage.

## P.

Article 19.4 of the MSA contains the following waiver of subrogation and additional insured requirements:

14

19.4.    Waiver of Subrogation and Additional Insured

The policies under Articles 19.1.3 through 19.1.6 above shall show each of the Company Indemnitees as additional insureds to the extent of the risks and liabilities assumed by Contractor under this Agreement and/or any Service Order and shall contain a provision that any breach by Contractor of any warranty, covenant, or representation in any of the policies shall not prejudice any claim by the additional insureds. Further, all insurance policies obtained by Contractor (including those described in Articles 19.1 and 19.2 and those with respect to Contractor's equipment) shall contain a waiver of subrogation in favor of each of the Company Indemnitees to the extent of the risks and liabilities assumed by Contractor under this Agreement and/or any Service Order. Likewise, all insurance policies obtained by Company or its Affiliates that are relevant to this Agreement or a Service Order hereunder shall contain a waiver of subrogation in favor of Contractor to the extent of the liabilities assumed by Company under this Agreement and/or the applicable Service Order.

Q.

On January 16, 2017, one of Phillips 66's affiliates issued Service Order No. 4523432638 ("Service Order") to Blanchard Contractors.  The Service Order stated that it was "issued in accordance with the terms and conditions in [the MSA]," and required Blanchard Contractors to "provide labor and materials for RV60 ILI tool runs" regarding the "RV-60 (VP01) 20in Pipeline Pigging Project."   A copy of the Service Order is attached hereto as Exhibit B, and incorporated herein by reference.

THE UNDERLYING CLAIMS,
ATLANTIC SPECIALTY'S AGREEMENT TO DEFEND PHILLIPS 66, AND THE
DECLARATORY JUDGMENT ACTION

R.

On February 9, 2017, a fire occurred on a segment of the RV-60 (VP01) natural gas liquid pipeline located at Phillips 66's Paradis, Louisiana pump station while Blanchard Contractors was performing its obligations under the Service Order ("Incident").   Desmond Calloway and Jacob Jambon, employees of Blanchard Contractors, were injured as a result of the Incident.

10228777_1

S.

In March 2017, Phillips 66 received a "Letter of Representation, Request for Inspection, and Demand for Preservation of Evidence" from Mr. Calloway's attorney.

T.

On April 4, 2017, Phillips 66 tendered the Calloway matter to Blanchard Contractors for defense and indemnity, and requested that Blanchard Contractors provide notice to its insurers of Mr. Calloway's claim.

U.

Upon information and belief, Atlantic Specialty and/or the Lloyd's Underwriters received notice of the Incident and/or of Desmond Calloway's and/or Jacob Jambon's injuries prior to April 5, 2017.

V.

On April 5, 2017, Anthony J. Staines, Atlantic Specialty's agent and/or representative, notified representatives of Phillips 66 that "Rufus Harris is the counsel that Blanchard's GL Underwriters have assigned to defend Phillips. I've asked him to contact you."

W.

On April 6, 2017, Mr. Rufus C. Harris, III, Atlantic Specialty's agent and/or representative, notified representatives of Phillips 66 that "Blanchard's GL insurer has asked me to defend Phillips re its D&I tender."  To that end, Phillips 66 allowed Mr. Harris's firm, Harris & Rufty LLC ("Harris & Rufty"), to associate in its defense of the *Calloway* and *Jambon* matters, including calling for a joint-defense conference call in

16

which it was understood by all parties that Harris & Rufty was representing Phillips 66, as well as participation by Mr. Alfred Rufty and his legal assistant, both with Harris & Rufty, at an inspection of the Paradis station after the event.

X.

On June 23, 2017, Desmond Calloway, an employee of Blanchard Contractors, filed a petition against, *inter alia*, Phillips 66 in the District Court of Harris County, Texas, Civil Action Number 2017-42198 ("*Calloway* Suit"). The *Calloway* Suit alleges various causes of action against Phillips 66 for bodily injury sustained by Desmond Calloway while performing maintenance on the natural-gas pipeline at the time of the Incident. A copy of this petition is attached hereto as Exhibit C, and incorporated herein by reference. Phillips 66 has incurred and continues to incur substantial fees and costs in defense of the *Calloway* Suit.

Y.

On June 28, 2017, Jacob Jambon, also an employee of Blanchard Contractors, intervened in the *Calloway* Suit, and asserted various causes of action against Phillips 66 for bodily injury sustained by Jacob Jambon while performing maintenance on the natural-gas pipeline at the time of the Incident ("*Jambon* Suit"). A copy of Jacob Jambon's petition in intervention is attached hereto as Exhibit D, and incorporated herein by reference. Phillips 66 has incurred and continues to incur substantial fees and costs in defense of the *Jambon* Suit.

Z.

On July 7, 2017, Phillips 66 tendered the *Calloway* Suit and *Jambon* Suit to

Blanchard Contractors and the Insurers for defense and indemnity.

AA.

Upon information and belief, Atlantic Specialty and/or the Lloyd's Underwriters received notice of the *Calloway* Suit and *Jambon* Suit before July 31, 2017.

BB.

On September 19, 2017, the Insurers filed the instant declaratory judgment action against Phillips 66.

CC.

At no point in time prior to September 19, 2017 did either of the Insurers communicate any reservation of rights or denial of coverage to Phillips 66.

DD.

At no point in time prior to September 19, 2017 did either of the Insurers provide an explanation to Phillips 66 for denying Phillips 66's claim.

EE.

At no point in time prior to Phillips 66's filing of this Counterclaim did either of the Insurers pay any amounts to Phillips 66 under their policies.

FF.

Upon information and belief, at no point in time prior to September 19, 2017, did either of the Insurers conduct an adequate investigation as to whether the exception in La. R.S. 9:2780.1(A)(2)(b)(ii) applied to the facts of this case.

18

## COUNT 1 – DECLARATORY JUDGMENT

### GG.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs A through FF of this Counterclaim.

### HH.

Phillips 66 contends that the policies issued by the Insurers, under which Phillips 66 seeks coverage herein, obligates the Insurers to defend Phillips 66 or reimburse Phillips 66's defense expenses and costs in the *Calloway* and *Jambon* Suits, and to indemnify Phillips 66 for all liability arising from the *Calloway* and *Jambon* Suits.

### II.

The Insurers contend to the contrary and have refused to acknowledge, failed to honor, denied, repudiated, and disputed their obligations to defend and/or indemnify Phillips 66.

### JJ.

An actual and justiciable controversy has arisen and now exists between the Phillips 66 and the Insurers concerning the construction and interpretation of the insurance policies, the MSA, and La. R.S. 9:2780.1 in relation to the *Calloway* and *Jambon* Suits.   Phillips 66 desires and is entitled to a judicial declaration by this court of its rights and the obligations of the Insurers under their respective liability policies to defend and indemnify Phillips 66 for costs, expenses and liabilities arising from the *Calloway* and *Jambon* Suits.  Such a declaration is necessary and proper at this time.

19

## COUNT 2 – BREACH OF CONTRACT

### KK.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs A through JJ of this Counterclaim.

### LL.

Phillips 66 and/or Blanchard Contractors have performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Insurers' policies, except to the extent that Phillips 66 is excused from such performance, or such conditions, covenants, and promises have been waived by the representations, acts or omissions of the Insurers.

### MM.

Under the terms of the policies issued by the Insurers, the terms of the MSA, the allegations of Desmond Calloway and Jacob Jambon against Phillips 66, and/or the representations made by the Insurers, the Insurers' representatives, or the Insurers' agents to Phillips 66, the Insurers are/were obligated to defend Phillips 66, pay Phillips 66's attorneys' fees, or reimburse Phillips 66 for attorneys' fees and defense costs incurred in defending the *Calloway* and *Jambon* Suits.

### NN.

Under the facts and circumstances, the terms of the policies issued by the Insurers, and the terms of the MSA, the Insurers are/were obligated to provide coverage to Phillips 66, or indemnify Phillips 66, for all claims and demands asserted against it in

the *Calloway* and *Jambon* Suits or, in the alternative, reimburse Phillips 66 for all sums paid to settle the *Calloway* and *Jambon* Suits.

OO.

In breach of the terms and conditions of their respective policies, the Insurers have refused to provide the amount of covered benefits owed under the policies and have refused to pay the full amounts owed to Phillips 66, or any amount as of the filing of this Counterclaim.

PP.

As a direct and proximate result of the Insurers' breaches, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.  The Insurers are liable to Phillips 66 for all of these amounts.

## COUNT 3 – NEGLIGENCE / BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING / BREACH OF FIDUCIARY DUTIES

QQ.

Phillips 66 repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs A through PP of this Counterclaim.

RR.

La. R.S. 22:1973(A) provides: "An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a

21

reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach."

SS.

Additionally, the Insurers owe "a high fiduciary duty to discharge [their] policy obligations to [their] insured in good faith."[5]

TT.

The Insurers negligently or intentionally breached their duties to Phillips 66 by:

i.     Failing to acknowledge and act reasonably promptly upon communications from Phillips 66 with respect to claims arising under the policies;

ii.    Failing to investigate and process Phillips 66's claims reasonably promptly;

iii.   Failing to conduct a reasonably thorough investigation prior to denying coverage;

iv.   Failing to promptly provide a reasonable explanation of the basis for their refusal to defend and indemnify Phillips 66 in their insurance policies in relation to the facts or applicable law;

v.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

vi.   Forcing Phillips 66 to incur substantial expenses in defending against the Insurers' declaratory judgment action;

---

[5] *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15, 20), 169 So.3d 328, 341.

22

vii.    Compelling Phillips 66 to institute litigation to recover amounts due under the insurance policies at issue herein; and

viii.   Hiring an attorney to represent Phillips 66 in the *Calloway* and *Jambon* matters and then hiring the same attorney to sue Phillips 66 in the instant lawsuit.

UU.

As a direct and proximate result of the breaches by the Insurers, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.  The Insurers are liable to Phillips 66 for all of these amounts.

COUNT 4 – STATUTORY VIOLATIONS OF LA. R.S. 22:1973

VV.

Phillips 66 repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs A through UU of this Counterclaim.

WW.

La. R.S. 22:1973(B) provides: "Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in [La. R.S. 22:1973(A)]:

(1)    Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. . . .

23

(5)     Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause."

XX.

Phillips 66 alleges and maintains that the Insurers:

i.      Knowingly misrepresented to Phillips 66 that they would provide a defense to Phillips 66 for the *Calloway* and *Jambon* matters;

ii.     Knowingly misrepresented to Phillips 66 that "the indemnity and additional-insured provisions in the MSA are void and unenforceable in whole or part and are contrary to the public policy of Louisiana."

iii.    Arbitrarily and capriciously refused, and continue to refuse, to fully and completely defend Phillips 66 or reimburse Phillips 66's defense expenses and costs in the *Calloway* and *Jambon* Suits; and

iv.     Arbitrarily and capriciously failed to pay amounts due to Phillips 66 under their policies within sixty days after receipt of satisfactory proof of loss.

YY.

As a direct and proximate result of the breaches by the Insurers, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.  The Insurers are liable to Phillips 66 for all of these amounts.

24

ZZ.

La. R.S. 22:1973(C) provides: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

AAA.

In addition to the claimed loss and damage as set forth above, Phillips 66 seeks penalties pursuant to R.S. 22:1973(C) for the Insurers' breaches as set forth herein.

COUNT 5 – STATUTORY VIOLATIONS OF LA. R.S. 22:1892

BBB.

Phillips 66 repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs A through AAA of this Counterclaim.

CCC.

La. R.S. 22:1892(A)(1) provides: "All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest."

DDD.

Phillips 66 alleges and maintains that it and/or Blanchard Contractors has submitted satisfactory proof of loss to the Insurers for Phillips 66's claimed loss under their policies for which the Insurers have failed to pay any amount within thirty (30) days as prescribed by La. R.S. 22:1892(A)(1).

25

EEE.

Phillips 66 alleges and maintains that the Insurers' failures as herein alleged were arbitrary, capricious, or without probable cause.

FFF.

As a direct and proximate result of the failures by the Insurers, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.  The Insurers are liable to Phillips 66 for all of these amounts.

GGG.

La. R.S. 22:1892(B)(1) provides, in part, that: "Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . as provided in Paragraph[] (A)(1)  . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees . . . as well as reasonable attorney fees and costs."

HHH.

In addition to the claimed loss and damage as set forth above, Phillips 66 hereby seeks penalties and attorneys' fees pursuant to R.S. 22:1892(B)(1) for the Insurers' arbitrary and capricious failure to comply with La. R.S. 22:1892(A)(1).

26

## COUNT 6 – BAD FAITH BREACH OF CONTRACT
## LA. CIV. CODE ART. 1997

### III.

Phillips 66 repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs A through HHH of this Counterclaim.

### JJJ.

La. Civ. Code Art. 1997 provides: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

### KKK.

Phillips 66 alleges and maintains that the Insurers intentionally and/or maliciously failed to perform its defense and indemnity obligations to Phillips 66 by their acts and/or omissions as set forth in this Counterclaim.

### LLL.

As a direct and proximate result of the acts and/or omissions by the Insurers as herein alleged, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.

### MMM.

The Insurers are liable for all of Phillips 66's damages, foreseeable or not, that are a direct consequence of their failure to perform under their policies and under applicable law.

## THIRD-PARTY COMPLAINT

AND NOW, assuming the position of Third-Party Plaintiff, Phillips 66 Company ("Phillips 66") asserts the following pursuant to Rule 14(a) of the Federal Rules of Civil Procedure:

### THE PARTIES

1.

Phillips 66, Third-Party Plaintiff, is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Texas.

2.

Made Third-Party Defendant in this lawsuit is Blanchard Contractors, Inc. ("Blanchard Contractors"), a Louisiana corporation with its principal place of business in Cut off, Louisiana.

3.

This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.  Upon information and belief, all parties herein are citizens of different states, and the amount in controversy exceeds the statutory minimum.

4.

Venue is proper in this Honorable Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the underlying personal-injury lawsuits asserted by Desmond Calloway and Jacob Jambon occurred in this district.

5.

An actual controversy exists between Phillips 66 and Blanchard Contractors, as Phillips 66 has demanded defense and indemnity from Blanchard Contractors for the claims made against Phillips 66 and others by Desmond Calloway and Jacob Jambon, and Blanchard Contractors has not provided any such defense and indemnity to Phillips 66.

6.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs K through T and X through Z, of its Counterclaim, above.

## COUNT 1 – DECLARATORY JUDGMENT

7.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs 1 through 6 of this Third-Party Complaint.

8.

Phillips 66 contends that the MSA, in conjunction with the Service Order, obligates Blanchard Contractors to defend Phillips 66 or reimburse Phillips 66's defense expenses and costs in the *Calloway* and *Jambon* Suits, and to indemnify Phillips 66 for all liability arising from the *Calloway* and *Jambon* Suits.

9.

Despite multiple tenders of the Desmond Calloway and Jacob Jambon claims to Blanchard Contractors for defense and indemnity, Phillips 66 has not received any defense and indemnity from Blanchard Contractors, nor has Blanchard Contractors

29

provided any reason to Phillips 66 for its failure to defend and indemnify Phillips 66 for the Desmond Calloway and Jacob Jambon matters.

10.

Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses as a result of Blanchard Contractors' failure to honor its indemnity and defense obligations under the MSA, in conjunction with the Service Order.

11.

An actual controversy exists between Phillips 66 and Blanchard Contractors, as Phillips 66 has demanded defense and indemnity from Blanchard Contractors for the claims made against Phillips 66 and others by Desmond Calloway and Jacob Jambon, and Blanchard Contractors has not provided any such defense and indemnity to Phillips 66. Phillips 66 desires and is entitled to a judicial declaration by this court of its rights and the obligations of Blanchard Contractors under the MSA, in conjunction with the Service Order, to defend and indemnify Phillips 66 for costs, expenses and liabilities arising from the *Calloway* and *Jambon* claims.  Such a declaration is necessary and proper at this time.

<u>COUNT 2 – BREACH OF CONTRACT</u>

12.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs 1 through 11 of this Third-Party Complaint.

13.

Phillips 66 and/or Blanchard Contractors have performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the MSA, except to the extent that Phillips 66 is excused from such performance, or such conditions, covenants, and promises have been waived by the representations, acts or omissions of the Blanchard Contractors.

14.

Under the terms of the MSA and the allegations of Desmond Calloway and Jacob Jambon against Phillips 66, Blanchard Contractors is/was obligated to defend Phillips 66, pay Phillips 66's attorneys' fees and defense costs, or reimburse Phillips 66 for attorneys' fees and defense costs incurred in defending the *Calloway* and *Jambon* Suits.

15.

Under the terms of the MSA and the facts and circumstances, Blanchard Contractors is/was obligated to indemnify Phillips 66, for all claims and demands asserted against it in the *Calloway* and *Jambon* Suits or, in the alternative, reimburse Phillips 66 for all sums paid to settle the *Calloway* and *Jambon* Suits.

16.

In breach of the terms and conditions of the MSA, Blanchard Contractors has failed to defend and/or indemnify Phillips 66 with respect to the *Calloway* and *Jambon* claims.

31

17.

As a direct and proximate result of the Insurers' breaches, Phillips 66 has and will continue to incur substantial loss and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.  Blanchard Contractors is liable to Phillips 66 for all of these amounts.

COUNT 3 – BAD FAITH BREACH OF CONTRACT<br>LA. CIV. CODE ART. 1997

18.

Phillips 66 repeats, realleges, and incorporates by reference each and every allegation contained in Paragraphs 1 through 17 of this Third-Party Complaint.

19.

La. Civ. Code Art. 1997 provides: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

20.

Phillips 66 alleges and maintains that Blanchard Contractors intentionally and/or maliciously failed to perform its defense and indemnity obligations to Phillips 66 under the MSA.

21.

As a direct and proximate result of the acts and/or omissions by the Blanchard Contractors as herein alleged, Phillips 66 has and will continue to incur substantial loss

and damage, as well as attorneys' fees and costs, experts' fees and costs, investigation and other costs and expenses in excess of the jurisdictional limit of this court.

22.

Blanchard Contractors is liable for all of Phillips 66's damages, foreseeable or not, that are a direct consequence of their failure to perform under their policies and under applicable law.

**JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure, Rule 38, Phillips 66 demands trial by jury on all issues so triable including, but not limited to, those issues so triable which have been raised in the Insurers' Complaint and Phillips 66's Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint.

33

## PRAYER FOR RELIEF

WHEREFORE, Phillips 66 Company prays that its Answer, Affirmative Defenses, Counterclaim, Third-Party Complaint, and Demand for Jury Trial be deemed good and sufficient and, after due proceedings are had, there be judgment rendered in Phillips 66 Company's favor:

(1) Declaring the rights of Phillips 66 and the obligations of the Insurers and Blanchard Contractors under the insurance policies at issue herein, the MSA, and the Service Order;

(2) Requiring the Insurers to defend Phillips 66 and/or reimburse Phillips 66 for all amounts Phillips 66 has incurred in connection with the *Calloway* and *Jambon* Suits;

(3) Requiring Blanchard Contractors to defend Phillips 66 and/or reimburse Phillips 66 for all amounts Phillips 66 has incurred in connection with the *Calloway* and *Jambon* claims;

(4) Requiring the Insurers and/or Blanchard Contractors to pay the full amounts of any settlements by Phillips 66 of the claims in the *Calloway* and *Jambon* Suits;

(5) For penalties, costs, fees, damages, and interest as allowed by applicable law; and

(6) For all other just and equitable relief allowed by applicable law.

34

By Attorneys:

_  /s/ Michael deBarros_
Glenn M. Farnet (#20185) [Lead Attorney]
glenn.farnet@keanmiller.com
John F. Jakuback, (#21643)
john.jakuback@keanmiller.com
Michael deBarros (#32422)
michael.debarros@keanmiller.com
KEAN MILLER LLP
400 Convention St., Suite 700
Baton Rouge, LA 70802
Telephone: 225-387-0999
Facsimile: 225-388-9133

**_Counsel for Phillips 66 Company_**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 20th day of October, 2017.

*/s/ Michael deBarros*
Michael J. deBarros

10228777_1