UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE CO. AND EXCESS UNDERWRITERS SUBSCRIBING SEVERALLY TO POLICY NO. TMU-407387<br><br>　　　　　Plaintiff,<br>v.<br><br>PHILLIPS 66 COMPANY<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>NO. 17-cv-9318<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JANIS VAN MEERVELD |

**<u>MEMORANDUM IN SUPPORT OF PHILLIPS 66 COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Phillips 66 Company ("P66") submits this Memorandum in support of its Motion for Partial Summary Judgment that La. R. S. 9:2780.1 does not invalidate the indemnity and insurance provisions in the November 17, 2016 Master Services Agreement ("MSA").

P66 is entitled to a partial summary judgment on this issue because:

(1) Phillips 66 seeks an interpretation of La. R. S. 9:2780.1;

(2) The interpretation of a statute is a question of law;[1] and

---

[1] *Fry v. Louisiana*, 2012 WL 1589627, at *3 (M.D. La. May 4, 2012), *aff'd sub nom. Fry v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, 544 Fed. Appx. 374 (5th Cir.2013) ("it is well established that the interpretation of a statute is a question of law rather than a question of fact.") (citations omitted).

1

(3) La. R.S. 9:2780.1(E), the jurisprudence interpreting La. R.S. 9:2780 (the Louisiana Oilfield Anti-Indemnity Act or "LOAIA"), and the exception to the definition of "construction contract" in La. R.S. 9:2780.1(A)(2)(b)(ii) make clear that 9:2780.1 cannot apply to the MSA.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The instant dispute arises out of a fire that occurred at the Phillips 66 Paradis Pipeline Station on February 9, 2017 ("Incident").[2] Employees of P66 and Blanchard Contractors Inc. ("Blanchard") were performing a pigging operation on a segment of a natural gas liquid pipeline ("Pipeline") at the Paradis Pipeline Station when the Incident occurred.[3] The Pipeline was transporting commingled, raw grade natural gas liquid from a gathering facility in Venice, Louisiana to the Enterprise Norco Fractionation Plant located in Norco, Louisiana, where it is fractionated and processed.[4]

Prior to the Incident, P66 and Blanchard entered into a MSA which governed the work performed on the Pipeline.[5] Section 18.1.1 of the MSA required P66 to indemnify Blanchard for all "Claims arising out of or related in any way to Personal Injury" of P66's employees, and Section 18.1.2 of the MSA required Blanchard to indemnify P66 for all "Claims arising out of or related in any way to Personal Injury" of Blanchard's

---

[2] Exhibit A, Declaration of Mr. Todd Denton, ¶ 1. The fire resulted in the death of one P66 employee, injuries to two other P66 employees, and injuries to three employees of Blanchard. *Id.* at ¶ 2.

[3] Exhibit A, Declaration of Mr. Todd Denton, ¶ 1.

[4] Exhibit A, Declaration of Mr. Todd Denton, ¶ 3.

[5] Exhibit A, Declaration of Mr. Todd Denton, ¶ 1, and attached A-1, USA Masters Services Agreement with Blanchard, and A-2, Service Order.

employees (commonly known as a "knock-for-knock" indemnity).[6] Section 19 of the MSA also required Blanchard to procure general liability insurance naming P66 as an additional insured.[7]

In June 2017, Desmond Calloway and Jacob Jambon, two Blanchard employees who were injured during the Incident, sued P66 ("Lawsuit").[8] P66 tendered the Lawsuits to Blanchard and its insurers ("Insurers") for defense and indemnity,[9] and the Insurers filed a Complaint seeking, *inter alia*, a declaration that the indemnity and insurance obligations in the MSA are void and unenforceable under La. R.S. 9:2780.1.[10] In response, P66 filed a Counterclaim and a Third Party Demand seeking, *inter alia*, a judgment that La. R.S. 9:2780.1 does not apply to the MSA.[11]

---

[6] Exhibit A, Declaration of Mr. Todd Denton, ¶ 1, and attached A-1, USA Masters Services Agreement with Blanchard. "Knock for knock" indemnity agreements allow the parties to agree that each company will "take care of" that company's own employees. They differ from traditional indemnity agreements that put all the risk on only one of the parties to the contract. In a "knock for knock" indemnity, *each* party to the agreement assumes responsibility for the risk of injury to its own employees.

[7] *Id.*

[8] Complaint (Doc. 1) at ¶¶ 13, 14; Answer (Doc. 4), ¶¶ 13, 14.

[9] Copies of these tender letters are attached as Exhibits B-1, B-2, and B-3. During the months following the April 4, 2017 tender, Atlantic Specialty and Blanchard, through local counsel, indicated to P66 that the tender would be accepted, but then on September 19, 2017, the Plaintiff Insurers filed the Complaint for declaratory judgment without ever providing a response to any of the tender letters or advising P66 that they were not going to accept the tender.

[10] *See* Rec. Doc. No. 1.

[11] The Counterclaim is against the insurer defendants, and the Third Party Demand is against Blanchard. Each seeks a declaration that the indemnity and additional insured provisions of the MSA are valid and enforceable. In addition, P66 also asserts related claims for bad faith breach of contract, for breach of the duty to defend and indemnify, and for breach of statutory duties under Title 22, but those claims are not the subject of this Motion.

## II.　LEGAL ARGUMENT AND ANALYSIS

This Motion presents an issue of statutory construction of **La. R.S. 9:2780.1**.  The sole issue raised in this motion is whether 9.2780.1 applies to the MSA in light of:

(1) La. R.S. 9:2780.1(E);

(2) The jurisprudence interpreting La. R.S. 9:2780; and

(3) La. R.S. 9:2780.1(A)(2)(b)(ii)'s exception to the definition of "construction contract."

The Legislature was well aware when enacting La. R.S. 9:2780.1 that the statute's application could overlap with LOAIA (La. R.S. 9:2780).  It was also well aware of LOAIA jurisprudence establishing that LOAIA does not invalidate indemnity and insurance provisions in agreements pertaining to "commingled gas or oil" (*i.e.*, gas or oil that that "becomes so fundamentally changed by processing, commingling, or preparing it for distribution to its ultimate end user that it can no longer properly be attributed to a particular well").[12]    To prevent the two statutes from overlapping and to preserve the exclusion for agreements pertaining to "commingled gas or oil," the Legislature inserted two specific provisions into La. R.S. 9:2780.1.

The first provision, La. R.S. 9:2780.1(E), provides that "***the provisions of this Section are not intended to, nor shall they be judicially interpreted, to alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780***…."  Thus, pursuant to La. R.S. 9:2780.1(E), Sections 9:2780 and 9:2780.1 are separate and distinct

---

[12] *Johnson v. Amoco Prod. Co.*, 5 F.3d 949, 953–54 (5th Cir. 1993).

statutes governing different types of contracts, and 9:2780.1 cannot be interpreted to extend or "add to" the provisions of 9:2780.

The second provision, La. R.S. 9:2780.1(A)(2)(b)(ii), recognizes the "commingled gas or oil" exception established by LOAIA jurisprudence. It exempts from La. R.S. 9:2780.1 all contracts pertaining to the "design, construction, alteration, renovation, repair, or maintenance of ... gas gathering lines used in association with the transportation of production from oil and gas wells from the point that oil and gas becomes co-mingled for transportation to oil storage facilities or gas transmission lines."[13] In other words, if the contract pertains to a pipeline containing oil or gas that has been "co-mingled for transportation to oil storage facilities or gas transmission lines," it is exempt from La. R.S. 9:2780.1.[14] Any other interpretation would yield an absurd result: The exact same contract that is valid and enforceable under LOAIA could be held unenforceable under 9:2800.1, which is what 9:2780.1(E) was enacted to prevent.

Considering the foregoing, Atlantic's argument that the MSA is subject to the provisions of La. R.S. 9:2780.1 must be rejected as a matter of law. La. R.S. 9:2780.1(E), the jurisprudence interpreting LOAIA, and La. R.S. 9:2780.1(A)(2)(b)(ii)'s exception make clear that the MSA cannot be subject to 9:2780.1. Atlantic's interpretation, if accepted, would require the Court to ignore La. R.S. 9:2780.1(E) and

---

[13] La. R.S. 9:2780.1(A)(2)(b)(ii).

[14] La. R.S. 9:2180.1(2)(b)(ii) (emphasis added). This is made clear by the fact the exception does not have "termination point" to it. It states that the exception applies "*from the point* the oil and gas becomes co-mingled *for transportation* to oil storage facilities or gas transmission lines," but it does not define a point downstream from there to which the exception ceases to apply.

render La. R.S. 9:2780.1(A)(2)(b)(ii)'s exception meaningless. Yet, Louisiana law is clear that "[e]very word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found."[15] Therefore, P66's interpretation of La. R. S. 9:2780.1 is the proper interpretation of the statute, Atlantic's interpretation must be rejected, and P66 is entitled to a summary judgment that La. R. S. 9:2780.1 does not apply to any provision in the MSA.

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16] All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.[17] A

---

[15] *Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.*, 12-0239, p. 5 (La. 10/16/12); 101 So. 3d 22, 26

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FRCP 56(c)).

[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

14717305_1.docx

court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."[18]

The issue presented in this Motion is purely legal. There is no genuine dispute that La. R.S. 9:2780.1 does not apply to the MSA.

> **B.  La. R.S. 9:2780.1(E) makes clear that 9:2780.1 cannot extend or "add to" the provisions of 9:2780.  Yet, Atlantic attempts to use 9:2780.1 as an extension of 9:2780 in this case.**

The legislature made a conscious decision not to alter, extend, or affect the provisions of LOAIA when enacting 9:2780.1. La. R.S. 9.2780.1(E) expressly states: "*the provisions of this Section are not intended to, nor shall they be judicially interpreted, to alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780*…."

A fundamental rule of statutory construction is that "it must be presumed that the Legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject."[19] Thus, "legislative language will be interpreted on the assumption that the Legislature was aware of existing statutes, rules of construction, and *judicial decisions interpreting those statutes*."[20] When the Legislature enacted 9:2780.1, it was charged with knowledge of LOAIA and judicial decisions interpreting LOAIA.

The jurisprudence interpreting LOAIA establishes that the Legislature did not intend to invalidate indemnity and insurance provisions in agreements pertaining to oil or

---

[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[19] *Fontenot v. Reddell Vidrine Water Dist*, 02-0439, p. 13 (La. 1/14/03), 836 So.2d 14, 24.

[20] *State v. Bedford*, 01-2298, p. 3 (La. 1/28/03), 838 So.2d 758, 760.

gas that "can no longer be identified with a particular well" (*e.g.*, "commingled" oil or gas). In *Johnson v. Amoco Prod. Co.*,[21] the U.S. Fifth Circuit held that if the contracted work "can no longer be identified with a particular well or if the gas becomes so fundamentally changed by processing, **commingling**, or preparing it for distribution to its ultimate end user that it can no longer properly be attributed to a particular well," then the anti-indemnity provisions of LOAIA cannot apply.[22] *See also Labove v. Candy Fleet, L.L.C.*, 2012 WL 3043168, at *5 (E.D. La. July 20, 2012) (LOAIA does not apply to a contract for work on platforms that facilitated the transmission of commingled oil and/or natural gas to larger, downstream pipelines); *Hughes v. Pogo Producing Co.*, No. 2009 WL 667186 (W.D. La. Mar. 11, 2009) (LOAIA does not apply to a contract covering work at a platform which served as a commingling station where gas from three incoming pipelines was further commingled and pumped into one pipeline destined for a refinery).

In line with that jurisprudence, and aware that the provisions of 9.2780.1 and LOAIA could potentially overlap, the Legislature set forth a "commingling" exception in La. R.S. 9:2780.1(A)(2)(b)(ii) and expressly stated in 9:2780.1(E) that "***the provisions of this Section are not intended to, nor shall they be judicially interpreted, to alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780***…."

Though LOAIA jurisprudence is clear that the Legislature did not intend to subject agreements pertaining to pipelines carrying commingled gas or oil to LOAIA, and though the Legislature made clear that 9.2780.1 cannot extend or "add to" the provisions of

---

[21] 5 F.3d 949, 953–54 (5th Cir. 1993).

[22] *Id.* (quoting *Transcon. Gas*, 953 F.2d 985, 994 (5th Cir. 1992).

8

9:2780, Atlantic nevertheless seeks an interpretation of 9.2780.1 extending and adding to LOAIA by subjecting agreements governing work on a Pipeline carrying comingled, raw grade natural gas liquid that "can no longer be identified with a particular well"[23] to 9:2780.1. La. R.S. 9:2780.1(E) prohibits this result, and Atlantic's position cannot be accepted.

### C. The exception within 9:2780.1 is a codification of the "point of comingling" jurisprudence under LOAIA and exempts the MSA from the provisions of 9:2780.1.

The conclusion that La. R.S. 9:2780.1(E) exempts the MSA from 9:2780.1 is reinforced by the fact that 9:2780.1 itself contains an exclusion for contracted work at pipelines beyond the point of commingling. A gateway analysis for application of 9:2780.1 is whether the contract under which the work is performed is considered a "construction contract" as defined by the statute. After providing a definition for "construction contract" in section (2)(a), 9:2780.1 sets forth specific *exceptions* to the definition of "construction contract." One such exception, contained in 9:2780.1(A)(2)(b)(ii), provides as follows:

> "Construction contract" shall **not** include any design, construction, alteration, renovation, repair, or maintenance of the following: ... Oil flow lines or gas gathering lines used in association with the transportation of production from oil and gas wells **from the point that oil and gas becomes co-mingled for transportation** to oil storage facilities or gas transmission lines.[24]

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be

---

[23] *See Johnson,* 5 F. 3d 949; *Labove*, 2012 WL 3043168; *Hughes*, 2009 WL 667186.

[24] La. R.S. 9:2180.1(2)(b)(ii) (emphasis added).

9

made in search of the intent of the legislature."[25] This provision unambiguously exempts from 9:2780.1 contracts pertaining to work occurring at pipelines used to transport production from gas wells after the point of comingling.

The exception was designed to ensure that 9:2780.1 would not be interpreted to "add to" LOAIA by encompassing contracted work at oil and gas pipelines beyond the point of commingling. Any other reading would result in an absurd result: The exact same gas pipeline maintenance contract that is valid and enforceable under LOAIA could be held unenforceable under 9:2780.1. This is precisely why the legislature made it clear in 9:2780.1(E) that the statute should not be interpreted in a manner that would "alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780."

The only logical interpretation of 9:2780.1(A)(2)(b)(ii) is that the Legislature codified the "point of commingling" case law which had been solidified under the LOAIA nearly a decade before 9:2780.1 was enacted. Indeed, and 9:2780.1(E) provides additional support for that reading of the exception.

In adhering to its "fundamental duty, as the ultimate arbiter of the meaning of the laws of this state," this Court should give effect to the obvious intent of the Legislature as expressed in 9:2780.1(E), which is to consistently meld the jurisprudence interpreting LOAIA with 9:2780.1,[26] and find that 9:2780.1 does not apply to the MSA.

---

[25] La. Civil Code art. 9.

[26] *See e.g., McLane S., Inc. v. Bridges,* 2011-1141 (La. 1/24/12), 84 So. 3d 479, 484 (internal citations omitted) ("Our fundamental duty, as the ultimate arbiter of the meaning of the laws of this state, is to give effect to the legislature's intent.").

14717305_1.docx

### III.     CONCLUSION

Considering La. R.S. 9:2780.1(E), the jurisprudence interpreting La. R.S. 9:2780, and La. R.S. 9:2780.1(A)(2)(b)(ii), **La. R.S. 9:2780.1 cannot apply to the MSA**.  Thus, Atlantic's contention that La. R.S. 9:2780.1 invalidates the indemnity and insurance provisions of the MSA should be rejected.

The Louisiana legislature clearly intended that 9:2780.1 be interpreted in a manner consistent with, and not merely as an addition to, LOAIA.  An indemnity provision in a contract pertaining to a gas pipeline that is valid and enforceable under the LOAIA should not be declared invalid under 9:2780.1.  LOAIA case law holds that indemnity provisions in contracts pertaining to work performed on natural gas lines after the point of commingling are valid and enforceable.  It is undisputed that the work being performed on the Pipeline occurred at a point after gas was commingled.  Thus, Atlantic's attempt to apply 9:2780.1 as an extension to LOAIA should be rejected.

Accordingly, P66 prays that this Court grant its Motion issue a judgment that La. R. S. 9:2780.1 does not apply to any provision in the November 17, 2016 Master Services Agreement.

                              By Attorneys:

                              */s/ Michael J. deBarros*
                              Glenn M. Farnet (#20185) [Lead Attorney]
                              glenn.farnet@keanmiller.com
                              John F. Jakuback (#21643)

john.jakuback@keanmiller.com
Michael deBarros (#32422)
michael.debarros@keanmiller.com
Kean Miller LLP
400 Convention St., Suite 700
Baton Rouge, LA 70802
Telephone: 225-387-0999
Facsimile: 225-388-9133

*Counsel for Phillips 66 Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 10th day of April, 2018.

                                  */s/ Michael J. deBarros*
                                    Michael deBarros