UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE CO. AND EXCESS UNDERWRITERS SUBSCRIBING SEVERALLY TO POLICY NO. TMU-407387<br><br>Plaintiff,<br><br>v.<br><br>PHILLIPS 66 COMPANY,<br><br>Defendant. | CASE NO. 17-cv-9318<br><br>JUDGE: ELDON E. FALLON<br><br>MAG.: JANIS VAN MEERVELD |

**PHILLIPS 66 COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Phillips 66 Company ("Phillips 66 ") submits this Memorandum in Support of its Motion for Partial Summary Judgment. For the reasons that follow, partial summary judgment in Phillips 66's favor is appropriate with respect to the purely legal issue of Atlantic Specialty Insurance Company's ("Atlantic") duty to defend.

I. **APPLICABLE LAW**

An insurer's duty to defend and its duty to indemnify an insured are separate and distinct duties.[1] An insurer's duty to defend is much broader than its duty to indemnify.[2] While the duty to indemnify depends on conclusively established facts, "the duty to defend arises whenever the pleadings against the insured disclose even a possibility of

---

[1] *Arceneaux v. Amstar Corp.*, 2010-2329 (La. 7/1/11); 66 So. 3d 438, 450.

[2] *Suire v. Lafayette City-Parish Consol. Government*, 2004-1459 (La. 4/12/05); 907 So. 2d 37, 51-2; *American Home Assurance Co. v. Czarniecki*, 230 So.2d 253, 259 (La. 1969); *Bamert v. Johnson*, 40,066 (La. App. 2 Cir. 8/17/05); 909 So. 2d 705, 708.

1

liability under the policy."[3] Under Louisiana law, an insurer's duty to defend is governed by the following well-settled principles:

- Even though a petition may allege numerous claims for which coverage is excluded, a duty to defend exists if there is at least a single factual allegation in the petition under which coverage is not unambiguously excluded;[4]

- "Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds that raise even the possibility of liability under the policy;"[5]

- "The test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage;"[6]

- "Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises;"[7]

- "Because the scope of the insurer's duty to defend presents an issue of law, summary judgment is an appropriate procedural vehicle to decide the issue presented in this litigation."[8]

---

[3] *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 9/7/16), 200 So.3d 277, 282.

[4] *Motorola, Inc. v. Associated Indem. Corp.*, 02-0716 (La. App. 1st Cir. 6/25/04), 878 So.2d 824, 836.

[5] *North Amer. Treat Sys. v. Scottsdale Ins.*, 2005-0081 (La. App. 1st Cir. 8/23/06), 943 So. 2d 429, 443.

[6] *Id.* at 444. *See also Martco Ltd. P'ship v. Wellons, Inc.*, 588 F. 3d 864, 874 (5th Cir. 2009) (insurer's argument that pleadings must affirmatively assert a claim within coverage "would require an inversion of Louisiana's standard for assessing the duty to defend issue" because a Court "must ask whether the allegations do not unambiguously prevent a conclusion that coverage could exist."); *City of Plaquemine v. North American Constructors, Inc.*, 683 So. 2d 386 (La. Ct. App. 1st Cir. 1996) ("The fact that the allegations of the petition could be clarified to unambiguously include coverage also shows the original petition did not unambiguously exclude coverage.") (quoting *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So.2d 1132, 1135 (La. Ct. App. 1994)); *Colomb v. U.S. Fid. & Guar. Co.*, 539 So.2d 940, 944 (La. Ct. App.1989) ("Plaintiff's petition need not include facts indicating that the injury arose during the period the policy was in effect. The duty to defend rule requires only that the facts alleged in the petition do not unambiguously exclude coverage. As we find that the allegations of the petition herein do not unambiguously exclude [the time of bodily injury], appellant is required to participate in appellee's defense regardless of the possible outcome.") (quoting *Armstrong v. Land & Marine Applicators, Inc.*, 463 So.2d 1327, 1331 (La. App. 5th Cir. 1984)); *Gootee Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, CV 15-3185, 2016 WL 1545658, at *5 (E.D. La. Apr. 15, 2016) ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."); *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 877 F.3d 600, 613 (5th Cir. 2017) (Court "may draw inferences from the petition that may lead to a finding of coverage" for purposes of duty to defend).

[7] *Suire*, 907 So. 2d at 52.

[8] *Triche v. St. Paul Guardian Ins. Co.*, 2009-0612 (La. App. 1 Cir. 10/23/09), 2009 WL 3452757, *2.

## II. THE ATLANTIC POLICY

Atlantic issued Policy No. B5JH9075516 ("Atlantic Policy"), with a policy period of October 1, 2016 through October 1, 2017, to Blanchard Contractors, Inc. ("Blanchard").[9] Under the Atlantic Policy, Atlantic agreed to defend an "insured" against any "suit" seeking damages that the insured is legally obligated to pay because of "bodily injury" to which the Atlantic Policy applies.[10]

Pursuant to an "Additional Insured and Waiver of Subrogation Endorsement (Blanket)," the word "insured" includes any organization that Blanchard is obligated by an "insured contract" to include as an additional insured, but only with respect to liability arising out of Blanchard's work.[11] The word "suit" includes a civil proceeding alleging damage because of "bodily injury."[12] The phrase "bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[13] The phrase "insured contract" includes a written contract or agreement pertaining to Blanchard's business under which Blanchard assumed P66's tort liability.[14]

In sum, Atlantic was required to defend Phillips 66 if:

(1) Blanchard was obligated to include Phillips 66 as an additional insured;

(2) Such obligation arose from a written agreement pertaining to Blanchard's business under which Blanchard assumed Phillips 66's tort liability; and

---

[9] **Exhibit B**, Atlantic Policy, at BCI-000477.

[10] **Exhibit B**, Atlantic Policy, at BCI-000480.

[11] **Exhibit B**, Atlantic Policy, at BCI-000480.

[12] **Exhibit B**, Atlantic Policy, at BCI-000505.

[13] **Exhibit B**, Atlantic Policy, at BCI-000500.

[14] **Exhibit B**, Atlantic Policy, at BCI-000501 – 502.

(3) A suit was commenced against Phillips 66 which raised the possibility that Phillips 66 could be liable for bodily injury arising out of Blanchard's work.

All of those elements are easily met here.[15]

### III. THE MASTER SERVICES AGREEMENT OBLIGATED BLANCHARD TO INCLUDE PHILLIPS 66 AS AN ADDITIONAL INSURED AND TO ASSUME PHILLIPS 66'S TORT LIABILITY

On November 17, 2016, Phillips 66 and Blanchard entered into USA Master Services Agreement No. CW2291283 ("MSA").[16] The MSA required Blanchard to obtain "Commercial General Liability insurance" showing Phillips 66 as an additional insured.[17]

The MSA further required Blanchard to assume Phillips 66's liability for any and all causes of action, claims, suits, losses, liabilities, fines, penalties, costs, damages, judgments, awards and expenses arising out of or related in any way to Personal Injury of the Employees or officers of Blanchard arising out of or occurring in connection with a Service Order.[18]

---

[15] *See, e.g., Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 2017 WL 2984867 (E.D. La. July 12, 2017), *reconsideration denied*, 2017 WL 3621242 (E.D. La. Aug. 21, 2017) (holding that an insurer had a duty to defend a putative additional insured under a similar additional insured endorsement because "[b]oth the *Adams* and *St. Pierre* plaintiffs allege that Allied was individually at fault and that Allied is liable for the work of Masse, or, at least, the allegations do not unambiguously exclude the possibility that Allied may be liable for Masse's operations.").

[16] **Exhibit A**, Declaration of Mr. Todd Denton, and attachment A-1, USA Masters Services Agreement with Blanchard.

[17] **Exhibit A**, Declaration of Mr. Todd Denton, and attachment A-1, USA Masters Services Agreement with Blanchard, at Section 19.4.

[18] **Exhibit A**, Declaration of Mr. Todd Denton, and attachment A-1, USA Masters Services Agreement with Blanchard, at Section 18.1.2. Although the word "assume" is not used in the MSA's indemnity provisions, the law is clear that a party assumes another's liability by agreeing to indemnify it. *See*, e.g., *Musgrove v. Southland Corp.*, 898 F.2d 1041, 1044 (5th Cir. 1990) (a contractual assumption of liability is "typically is in the form of an indemnity agreement."); *United Nat. Ins. Co. v. Dexter Honore Const. Co., LLC*, 2009 WL 1182259, at *11 (W.D. La. Apr. 30, 2009) ("the BOA is an insured contract under the Policy because Honore agreed to indemnify Fluor in the BOA.").

Accordingly, the first and second elements of Atlantic's duty to defend are met.

## IV. BLANCHARD'S WORK, THE INCIDENT, AND THE CLAIMS FOR BODILY INJURY

On January 26, 2017, a Phillips 66 affiliate issued Service Order No. 4523432638 ("Service Order") to Blanchard.[19] The Service Order stated that it was "issued in accordance with the terms and conditions in Master Service Agreement CW2291283," and required "Blanchard Contractors to provide labor and materials for RV60 ILI tool runs" regarding the "RV-60 (VP01) 20in Pipeline Pigging Project" in Paradis, Louisiana.[20]

On February 9, 2017, an explosion and fire occurred on a segment of the RV-60 (VP01) natural gas liquid pipeline ("Pipeline") located at Phillips 66's Paradis, Louisiana pump station near the "Williams Discovery" plant.[21]

On June 23, 2017, Desmond Calloway ("Mr. Calloway"), an employee of Blanchard, filed suit against Phillips 66 in the District Court of Harris County, Texas, Civil Action Number 2017-42198, alleging that he sustained personal injuries, including severe burns, while performing maintenance on the Pipeline at the time of the explosion and fire ("*Calloway* Suit").[22] Mr. Calloway alleged that Phillips 66 was liable for the negligent acts of its employees, agents, or representatives for the injuries he sustained as

---

[19] **Exhibit A**, Declaration of Mr. Todd Denton, ¶ 1, and attached A-2, Service Order.

[20] **Exhibit A**, Declaration of Mr. Todd Denton, ¶ 1, and attached A-2, Service Order.

[21] Complaint (Doc. 1) at ¶ 12; **Exhibit A**, Declaration of Mr. Todd Denton, ¶¶ 1, 3.

[22] Complaint (Doc. 1) at ¶ 13; **Exhibit C**, *Calloway* Petition.

a result of the explosion and fire.[23]

On June 28, 2017, Jacob Jambon, also an employee of Blanchard, intervened in the *Calloway* Suit, and asserted claims for personal injuries, including severe burns, against Phillips 66 which he alleges to have incurred while performing maintenance on the Pipeline on February 9, 2017 ("*Jambon* Suit").[24] Mr. Jambon alleged that Phillips 66, acting individually, or by and through agents, officers, directors, servants, and employees, was negligent and, therefore, liable for the injuries he sustained as a result of the explosion and fire.[25]

Accordingly, the third and final element of Atlantic's duty to defend – *i.e.*, a suit against Phillips 66 which raised the possibility that Phillips 66 could be liable for bodily injury arising out of Blanchard's work – is also met. Therefore, Atlantic owes Phillips 66 a duty to defend those suits.

## V. ATLANTIC CANNOT EVADE ITS DUTY TO DEFEND BY RELYING ON AN UNPROVEN ASSERTION THAT THE MSA IS INVALID

Atlantic's refusal to defend Phillips 66 rests on its assertion that the MSA's indemnity and insurance provisions are invalid under La. R.S. 9:2800.1. But Atlantic's assertion is wrong as a matter of law.[26] Further, even if there is a question of fact to be determined as to whether Atlantic's reliance on 9:2801.1 is correct, Louisiana law is clear that "the duty to defend arises whenever the pleadings against the insured disclose even a

---

[23] **Exhibit C**, *Calloway* Petition, at ¶ 18.

[24] Complaint (Doc. 1) at ¶ 14; **Exhibit D**, *Jambon* Petition.

[25] **Exhibit D**, *Jambon* Petition, at ¶¶ 17, 19 – 27.

[26] Phillips 66 filed a separate Motion for Partial Summary Judgment on this issue demonstrating that Atlantic Specialty's reliance on La. R.S. 9:2780.1 is incorrect as a matter of law.

6

14426620_3.docx

possibility of liability under the policy"[27] – not *after* a court considers and adjudicates an insurer's fact-based coverage defenses.

The reason for the foregoing rule is simple: The duty to defend can only have its intended value when the underlying action is ongoing, otherwise it is merely a duty to reimburse defense expenses after-the-fact.[28] As one Court explained:

> Defense is the rendering of a service at the time—the emphasis is on the present tense: Soldiers defend their country, attorneys defend their clients, chess players defend the King against capture, football players defend the end zone.
>
> Reimbursement, by contrast, involves an element of retrospection. Someone fronted money at time one, and someone else later made up for it at time two: "Thanks for picking up the tab for lunch today, I'll reimburse you tomorrow"; "Be sure to keep your travel expense records so the company can reimburse you when you get back"—that sort of thing.
>
> **It should be immediately apparent that the right to receive a defense is not equal to the right to receive reimbursement and cannot be equated with it. There is a distinct benefit in not having to pony up money immediately.** Such a benefit is most acutely felt when an answer to a complaint is due in civil court and a lawyer must be found and paid to draft and file it. At the very least the benefit of a defense is the time value of money, but it also involves elements of convenience (such as not having to keep funds on hand earmarked for legal costs) and focus (not having to worry about the selection of legal counsel when one is sued).[29]

Thus, "[i]mposition of an immediate duty to defend is necessary to afford the insured

---

[27] *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 9/7/16), 200 So.3d 277, 282.

[28] If an insurance company does not immediately acknowledge its duty to defend, the duty to defend is effectively converted into a duty to reimburse defense costs to the policyholder, after-the-fact. However, "[t]he duty to provide reimbursement for costs as they are incurred is separate from a duty to defend", and the duty to defend is much more valuable. *See, e.g., F.D.I.C. v. Booth*, 824 F.Supp. 76, 80 (M.D. La. 1993).

[29] *Crawford v. Weather Shield MFG., Inc.*, 38 Cal. Rptr. 3d 787, 805-8 (Cal. Ct. App. 2006) (Emphasis added, citations omitted).

what it is entitled to: the full protection of a defense on its behalf."[30] Because timing is a critical factor, the existence of the duty must be easily ascertainable. Unless the test is simple, thereby rendering disputes over the duty subject to expeditious resolution, the value of the duty to defend is destroyed.[31]

Recognizing the foregoing principles, numerous courts have held that an insurer's duty to defend exists and persists until the contract that the insurer claims is invalid has been adjudicated null and void. *See*, *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (an insurer's duty to defend exists and persists until there has been a judicial determination that a contract is null and void); *AEGIS v. Rigas*, 382 F. Supp. 2d 685 (E.D. Pa. 2004) (collecting cases and holding that defense costs are owed by an insurer despite the insurer's claim that the contract was void "because a contract is in effect until the issue of rescission is adjudicated"); *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 419-20 (Ind. App. 2008) ("to say that the mere act of filing a declaratory action 'suspends' the duty to defend would . . . essentially write the duty to defend out of liability insurance policies."); *Fed. Ins. Co. v. Tyco Int'l Litd.*, 2 Misc. 3d 1006(A) (N.Y. Sup. Ct.2004) ("an insurer's present duty to defend the insured under a liability policy is unaffected by an unproven claim for rescission") (citing *Gon v. First St. Ins. Co.*, 871 F.2d 863, 864–65 (9th Cir.1989) (affirming district court's order that insurer pay

---

[30] *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1153 (Cal. 1993).

[31] *Haskel, Inc. v. Superior Court*, 33 Cal.App.4th 963, 979 (1995), as modified (Apr. 25, 1995) ("An insured obtains liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation. If the courts did not impose an immediate defense obligation upon a showing of a 'potential for coverage,' thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit.").

insured's defense costs after the district court had held insurer's rescission action "in abeyance"); *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 654 F. Supp. 1334, 1345–46 (D.D.C. 1986), *rev'd in part on other grounds*, 944 F.2d 940 (D.C. Cir.1991) (insurer owed a duty to defend until the insurer proved that the contract was void); *Natl. Union Fire Ins. Co. of Pitt. v. Brown*, 787 F.Supp. 1424, 1427 n. 8 (S.D. Fla. 1991) (contract remained in effect and insurer had a duty to defend until the insurer's question of contractual validity was "fully litigated"); *Hoechst Celanese Corp. v. Natl. Union Fire Ins. Co. of Pitt.*, 1994 WL 721618 at *4 (Del. Super. Ct. 1994) (insurer was obligated to defend despite its assertion that contract was invalid).

Under Louisiana law, an insurer has a duty to defend **unless** there is **no possibility of coverage under the policy**. There is a possibility of coverage here. Thus, Atlantic owed Phillips 66 a defense and cannot rely on its unproven assertion that the MSA should be declared invalid. Accordingly, the issue of Atlantic's duty to defend Phillips 66 is ripe for determination, Atlantic cannot establish that coverage is unambiguously excluded under its policy, and the Court should grant Phillip 66's motion.

## VI. CONCLUSION

Blanchard agreed to name Phillips 66 as an additional insured under its liability policies. In accordance with that agreement, Atlantic issued a liability policy covering Phillips 66, as an additional insured, for bodily injury claims. Now that Phillips 66 has been sued for bodily injury claims as a result of the February 9, 2017 incident, Atlantic has reneged on its promise and attempts to hide behind an ***erroneous*** and ***unproven allegation*** that the MSA is invalid. Louisiana law does not allow an insurer to evade its

duty to defend by relying on unilateral and unproven *assertions*. Instead, the duty to defend arises as soon as the pleadings disclose any potential for coverage under the policy.[32] Accordingly, Phillip 66's motion that Atlantic owed a duty to defend Phillip 66 in the *Calloway* and *Jambon* Suits should be granted.

Respectfully Submitted:

 /s/ Michael deBarros
Glenn M. Farnet (#20185) [Lead Attorney]
glenn.farnet@keanmiller.com
John F. Jakuback (#21643)
john.jakuback@keanmiller.com
Michael deBarros (#32422)
michael.debarros@keanmiller.com
KEAN MILLER LLP
400 Convention St., Suite 700
Baton Rouge, LA 70802
Telephone: 225-387-0999
Facsimile: 225-388-9133

***Counsel for Phillips 66 Company***

---

[32] *Arceneaux*, 200 So. 3d at 282.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 10th day of April, 2018.

                                        */s/ Michael deBarros*
                                        Michael J. deBarros

11

14426620_3.docx