Policy Number: B5JH9075516

Renewal of Number: B5JH9075515

PLEASE REVIEW THIS BINDER/POLICY CAREFULLY AS THE COVERAGE, TERMS AND CONDITIONS MAY VARY FROM THOSE INITIALLY REQUESTED IN YOUR SUBMISSION.

OneBeacon INSURANCE

Atlantic Specialty Insurance Company
A member of the OneBeacon Insurance Group

# MARINE COMPREHENSIVE LIABILITY COVERAGE PART DECLARATIONS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**Item 1.** **Named Insured and Mailing Address:**

Blanchard Contractors, Inc.
A&S Marine Services, LLC
BCI Midstream, LLC
BLB Development, LLC
TJB Marine Services, LLC
P.O. Box 884
Cut Off, LA 70345

**Agent Name and Address:**

Laris Insurance Agency, LLC
P.O. Box 559
Lockport, LA 70374

Producer Number: 1911

(With respect to Section IV, Who Is An Insured, the above Named Insured is considered to be an organization other than a partnership or joint venture unless otherwise specified above.)

**Item 2.** **Policy Period:** From: October 1, 2016 To: October 1, 2017
At 12:01 AM Standard Time at the Mailing Address Shown Above

**Item 3.** **Description of Operations:**

Marine construction and fabrication, etc. as per application

**Item 4.** **Location of All Premises You Own, Rent or Occupy:**

As per your insurance application that is on file with us.

**Item 5.** **Limits of Insurance/Liability: All Claims Expenses and amounts paid in satisfaction of Claims are subject to the applicable limit of liability.**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000. |
| Products - Completed Operations Aggregate Limit | $ | 1,000,000. |
| Personal and Advertising Injury Limits | $ | 1,000,000. |
| Each Occurrence Limit | $ | 1,000,000. |
| Fire Damage Limit (Any One Fire) | $ | 50,000. |
| Medical Expense Limit (Any One Person) | $ | 5,000. |

**Item 6.** **Deductible Liability:** [redacted] [redacted] Per Occurrence



Exhibit B

Policy Number: B5JH9075516

Renewal of Number: B5JH9075515

OneBeacon INSURANCE

**Item 7. Premium, Fees, Taxes and Rates:**

Exposure Rating Basis:
Estimated Exposure For Period:
Adjusted At A Rate(s) Of:
Audit Period:
Advance Or Deposit Premium:
Minimum Annual Premium:
Percent (%) Of Deposit Premium
Fully Earned At Inception:

[redacted]

Premium Shown Is Payable: In full at inception

**Item 8. Form(s) and Endorsement(s) made a part of the policy at time of issue:**

**Marine Comprehensive Liability Policy (MCL 0295100) amended as follows:**

Section II.A. - Exclusions 20.e. and 29 are deleted.
Section VII - Condition 3 is deleted.

**Including The Following Endorsements:**
Absolute Health Hazard Exclusion (MCL 0610161).
Action Over Indemnity Buyback Endorsement (MCL 0295115)
Additional Insured and Waiver of Subrogation (Blanket) (MCL 0295116)
Chemical, Biological, Bio-Chemical, Electromagnetic Exclusion Clause Endorsement 3/1/03 (MCL 1102154)
Cross Liability Endorsement (MCL 0295118)
Distribution Of Material In Violation Of Statutes (MCL 0616170)
Institute Extended Radioactive Contamination Exclusion Clause 11/1/02 (MCL 1102155)
Limited Pollution Buyback (72 hour) Endorsement (MCL 0295122)
Primary Insurance Endorsement (MCL 0295123) - Naming: As required by an "insured contract", but only with respects to an entity for whom you are directly or indirectly performing "your work".
Ship Repairer's Liability Endorsement (MCL 0295105)
Including:
Detention Endorsement (MCL 0295106)
Other Work Endorsement (MCL 0295107) - Other work: To be agreed.
Travelling Workmen Endorsement (MCL 0295108)
Charterer's Liability Endorsement (MCL 0295101)
Watercraft Broker's Liability Endorsement (MCL 0295112)
Watercraft Inclusion for Additional Insureds Required by Written Contract (MCL 1010162)
Wharfinger's Liability Endorsement (MCL 0295114)
United States Economic and Trade Sanctions Clause (MCL 0911163)
Terminal Operator's Liability Endorsement (MCL 0295111)
Louisiana Policyholder Notice – Defense Within Limits (MCL 0814168)

Policy Number: B5JH9075516

Renewal of Number: B5JH9075515

OneBeacon INSURANCE

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Christopher V. Jerry
Secretary

T. Michael Miller
President & CEO

**MARINE COMPREHENSIVE LIABILITY POLICY (MCL 0295100)**

Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company or companies providing this insurance.

The word "Insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION IV).

Other words and phrases that appears in quotation marks have special meaning. Refer to DEFINITIONS (SECTION IX).

The Section, Form or Clause titles or headings are for your reference only and have no bearing on the interpretation of the Sections, Forms or Clauses. Be certain to read all Sections, Forms and Clauses carefully to determine their actual meaning.

**SECTION I - COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

Insuring Agreement.

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   a. The amount we will pay for claims expenses and damages is limited as described in LIMITS OF INSURANCE (SECTION V); and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of claims expenses, judgements or settlements under Coverage A or B or medical expenses under Coverage C and/or Supplementary Payments under Section III.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B (SECTION III).

2. This insurance applies to "bodily injury" and "property damage" only if:

   a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

   b. The "bodily injury" or "property damage" occurs during the policy period.

3. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

Insuring Agreement.

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   a. The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION V); and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C and/or Supplementary Payments under Section III.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B (SECTION III).

2. This insurance applies to:

   a. "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   b. "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

   but only if the offense was committed in the "coverage territory" during the policy period.

**COVERAGE C. MEDICAL PAYMENTS**

Insuring Agreement.

1. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   a. On premises you own or rent;

   b. On ways next to premises you own or rent; or

   c. Because of your operations;

   provided that:

   a. The accident takes place in the "coverage territory" and during the policy period;

   b. The expenses are incurred and reported to us within one year of the date of the accident; and

   c. The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

2. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   a. First aid at the time of an accident;

   b. Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

c. Necessary ambulance, hospital, professional nursing and funeral services.

## SECTION II - EXCLUSIONS

### A. EXCLUSIONS APPLICABLE TO SECTION I, COVERAGES A AND B ONLY:

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

1. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   a. Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

   b. That the insured would have in the absence of the contract or agreement.

3. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   a. Causing or contributing to the intoxication of any person;

   b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

4. a. Any liability of whatsoever nature of the insured, whether you may be liable as an employer or in any other capacity whatsoever, to any of your "employees", including but not limited to any liability under any Workers' Compensation Law, Unemployment Compensation Law, Disability Benefit Law, United States Longshoremen's and Harbor Workers' Compensation Act, Jones Act, Death on the High Seas Act, General Maritime Law, Federal Employers' Liability Act, or any similar laws or liabilities, and/or whether by reason of the relationship of master and servant or employer and employee or not.

   b. Any liability of whatsoever nature of the insured to the spouse, child, parent, brother, sister, relative, dependent or estate of any of your "employees" arising out of the "bodily injury" and/or "personal injury" to said "employees", whether you may be liable as an employer or in any other capacity whatsoever.

   c. Any liability of whatsoever nature of the insured to any other party arising out of "bodily injury" and/or "personal injury" to any of your "employees", including but not limited to any such liability for (i) indemnity or contribution whether in tort, contract or otherwise and (ii) any liability of such other parties assumed under contract or agreement.

   d. Any liability of any of your "employees" with respect to "bodily injury" and/or "personal injury" to another of your "employees" sustained in the course of such employment.

   e. Any liability of whatsoever nature which any of your directors, officers, partners, principals, "employees" or stockholders may have to any of your "employees".

5. Liability arising out of any act or omission by you, or any other person or entity for whose acts or omissions you are legally liable, in respect of your "Employee Benefits" including but not limited to:

   a. giving counsel to "employees" with respect to "Employee Benefits";
   b. interpreting the "Employee Benefits";
   c. handling and keeping of records in connection with "Employee Benefits";
   d. effecting enrollment, termination or cancellation of "employees" under the "Employee Benefits";
   e. any dishonest, fraudulent, criminal, or malicious act or omission;
   f. failure of performance of contract by an insurer;
   g. lack of compliance with the terms of any contract, declaration of trust, or instrument providing "Employee Benefits";
   h. lack of compliance with any law concerning "Employee Benefits";
   i. failure to procure or maintain satisfactory and adequate insurances on "Employee Benefits" assets or property;
   j. failure of stock or other securities or of any investments of whatever kind to perform as represented;
   k. advice given to an "employee" to participate or not to participate in stock subscription or similar plans; and
   l. any liability arising out of the Employee Retirement Income Security Act and any other similar federal, state or other statutes, rules or regulations.

   As used in this exclusion, the term "Employee Benefits" includes, without limitation, Group Life Insurance, Group Health Insurance, Profit-Sharing Plans, Pension Plans, Employee Stock Subscription Plans, Workers' Compensation, Unemployment Insurance, Social Security and Disability Benefits Insurance.

6. a. Any liability for "Property damage" to any well or hole or for any cost or expense incurred in redrilling or restoring any such well or hole or any substitute well or hole which arose out of any well or hole:

      (1) which is being drilled or worked over by you or on your behalf; or

      (2) which is in your care, custody or control; or

      (3) in connection with which you have provided services, equipment or materials.

7. "Property damage" to drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing machinery, or any other equipment while it is below the surface of the earth in any well or hole,

   a. which is being drilled or worked over by you or on your behalf; or

   b. which is in your care, custody or control; or

   c. in connection with which you have provided services, equipment or materials.

8. Liability for cost or expenses incurred in:

   a. controlling or bringing under control any wells or holes; or

   b. extinguishing fire in or from any such wells or holes; or

   c. drilling relief wells or holes, whether or not the relief wells or holes are successful.

9. a. Any liability for any cost or expenses incurred or incidental to the raising, removal or destruction of any wreckage or debris or obstruction, however caused, whether or not it is your property, and whether or not such raising, removal or destruction is required by law, statute, contract or otherwise. This exclusion shall not apply with respects to your liability incurred when raising, removing or destroying said property.

b. Any liability for removal or recovery of any drilling tool, pipe, collar, casing, bit pump, drilling or well servicing machinery or any other equipment while it is below the surface of the earth in any well or hole.

10. a. "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
    b. Any loss, cost or expense arising out of any:

    (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

    This exclusion applies regardless of whether the "pollution" itself or the "bodily injury" and/or "property damage" caused by the "pollution" was fortuitous, accidental and/or intentional and regardless of whether the "pollution" caused environmental damage.

11. "Bodily injury" and/or "personal injury" or loss of, damage to, or loss of use of property, whether fortuitous, accidental and/or intentional and whether or not damaging to the environment, directly or indirectly arising from or caused in whole or in part by:

    a. Waste or disposal sites which were, or currently are owned, operated, or used by you or were or currently are utilized by others acting for and/or on your behalf;

    b. Disposal, dumping, conveyancing, carriage, or transportation of any "pollutants"; and

    c. Evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning up "pollutants".

    The words "loss of, damage to, or loss of use of property" as used in this exclusion include, but are not limited to:

    a. The cost of evaluating and/or monitoring and/or controlling and/or removing and/or nullifying and/or cleaning up "pollutants";

    b. Removal of, loss of, or damage to subsurface oil, gas, or any other substance or material.

12. "Property damage" directly or indirectly resulting from subsidence caused by your subsurface operations.

13. Loss of or damage to subsurface oil, gas, water, or other substance or material, or for the cost or expense of reducing to physical possession above the surface of the earth any oil, gas, water, or other substance or material; or for the cost or expense incurred or rendered necessary to prevent or minimize such loss or damage.

14. Actual or alleged liability to any "Co-Owner of a working interest". As used in this exclusion, the term "Co-Owner of a working interest" means any person or entity working with you, including but not limited to a co-owner, joint venturer, or mining partner, in mineral properties who participates in the operating expense of such properties or revenues therefrom, or who has the right to participate in the control, development, or operation of such properties.

15. Any liability, expense or costs (including but not limited to investigation, testing, clean-up or removal) for claims or "suits" or proceeding for "bodily injury" or "property damage", or "personal injury" or "advertising injury" which directly or indirectly arise out of "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene, including but not limited to the following:

    a. inhalation of, ingestion or absorption of, or any singular or continuous or intermittent exposure to "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene or any goods or products containing "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene; or
    b. the use of "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene in any goods, products or structures; or
    c. the removal of "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene in constructing or manufacturing any goods, products or structures; or

    d. the manufacture, transportation, storage, handling, distribution, sale, application, mining, consumption, or disposal of "asbestos" or "lead" or "polychlorinated biphenyl" or silica or benzene.

16. Any liability, expense or costs (including but not limited to investigation, testing, clean-up or removal) for claims or "suits" or proceedings for "bodily injury" or "property damage", or "personal injury" or "advertising injury' which directly or indirectly arise out of the inhalation of, or ingestion of, or absorption of, or any singular or continuous or intermittent exposure to any substance, gases, materials, products, wastes or emissions, noise or any environmental disturbance for which you might be liable.

17. a. Any Liability Coverage for "bodily injury" or "property damage":

    (1) With respect to which an "insured" under this policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    b. Any Medical Payments coverage, for expenses incurred with respect of "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    c. Any Liability Coverage for "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured", or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this policy:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a "nuclear reactor,"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

a. Any "nuclear reactor,"

b. Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste."

c. Any equipment or device used for the processing, fabrication or alloying of "special nuclear material" if at anytime the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage of disposal of "waste,"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

18. "Bodily injury" and/or "personal injury" and/or "property damage" arising directly or indirectly from:

    a. ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

    b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

    c. any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    This exclusion shall be paramount and shall override anything contained in this insurance which may be inconsistent.

19. Any liability for any sum(s) which you are or are alleged to be liable with respect to any watercraft you own and/or operate, charter, lease or borrow and for which coverage either would or could be provided to you by the terms of:

a. Protection and Indemnity Form SP-23, including Contractual Liability Coverage Extension;

b. Collision and Tower's Liability, as per Lines 78 through 111 of the American Institute Tug Form 53R-1; and

c. All extensions of coverage to the above referenced forms including, but not limited to, Additional Insured provisions;

whether or not such coverages are in place. This exclusion does not apply, however, to non owned watercraft which is in your care, custody or control for the sole purpose of being worked upon including shifting and moving within the limits of the port at which the work is being carried out and including trial trips, but not exceeding 100 miles from such port.

20. "Bodily injury" and/or "personal injury" and/or "property damage" arising out of:

a. Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise.

b. Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo;

c. Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase, "hostilities or warlike operations (whether there be a declaration of war or not)" shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other watercraft involved therein, is performing) by a hostile act by or against a belligerent power; for the purposes of the foregoing, power includes any authority maintaining navy, military or air forces in association with a power. In addition to the foregoing exclusions, this insurance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the Insured's liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of any watercraft in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without the consent of the Insured, shall be considered a warlike act for the purposes of this Policy.

d. The consequences of civil war, revolution, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy, or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional.

~~e. Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotions, riots, or the acts of any person or persons taking part in such occurrence or disorder;~~

21. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

a. Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

b. Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft; or

c. "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f. 2. or f. 3.of the definition of "mobile equipment" (Section IX. 13.).

22. "Bodily injury" or "property damage" arising out of:

    a. The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

    b. The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

23. "Property damage" to:

    a. Property you own, rent, or occupy;

    b. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    c. Property loaned to you;

    d. Property in your care, custody or control;

    e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    f. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    Paragraph b. of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

    Paragraphs c., d., e. and f. of this exclusion do not apply to liability assumed under a sidetrack agreement.

    Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

24. "Property damage" to "your product" arising out of it or any part of it.

25. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

26. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

    b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

27. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    a. "Your product";

b. "Your work"; or

c. "Impaired property".
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

28. The failure of your products and/or "your work" to meet any predetermined level of fitness or performance and/or guarantee of such fitness or level of performance and/or any consequential loss arising therefrom.

~~29. "Bodily injury," "property damage," "personal injury" or "advertising injury" included in the "products completed operations hazard."~~

30. Any actual or alleged liability, expense or cost for which you are or are alleged to be liable with respect to:

a. Your failure to perform any work and/or provide any service as, when or how agreed.

b. The removal, recovery, repair, alteration or replacement of any product (or part thereof) which fails to perform the function for which it was manufactured, designed, sold, supplied, installed, repaired, altered by you or on your behalf.

c. Your failure and/or inability to supply and/or provide an adequate supply of any material(s), gas(es) and/or other substance(s) of any description or kind.

d. Any consequential loss(es) resulting from your failure to perform and/or provide and/or supply as per paragraphs a, b and/or c above.

31. "Bodily injury" (contractually assumed or otherwise) to any/all diver(s) which resulted from or occurred from or during diving operations.

32. "Bodily injury" and/or "Personal Injury" and/or "Advertising Injury" arising out of any:

a. Refusal to employ;

b. Termination of employment;

c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

d. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination; or

e. Consequential "bodily injury" as a result of a. through d. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

33. a. Actual or alleged liability arising out of your capacity, duty or responsibility as an Officer, Director or Trustee of a corporation by reason of any breach of fiduciary duty or improper conduct or conflict of interest in the performance of your duties, responsibilities or accountability as an Officer, Director or Trustee, including, without limitation, any actual or alleged misstatement, misleading statement, gain of personal profit or advantage to which you were or are not entitled legally, any dishonest act, or bad faith conduct, in your capacity as an Officer, Director or Trustee, or with respect to the capital or assets of the Corporation, or any action taken beyond the scope of your authority as an Officer, Director or Trustee; or

b. Actual or alleged liability of any Officer, Director or Trustee arising out of or asserted in a shareholder's derivative action; or

c. Actual or alleged liability which would be payable under the terms of coverage of a Directors and Officers Liability Insurance Policy or a Directors and Company Reimbursement Indemnity Policy of the type issued by stock insurance companies of the United States, as if you had obtained such coverage in an amount sufficient to pay the full amount being claimed against you, whether or not you have obtained such coverage; or

d. "Personal injury" or "bodily injury" claims, "suits" or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or part, directly or indirectly:

(1.) any actual or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any state blue sky or Canadian securities law.

(2.) any similar state blue sky, federal or Canadian statutes regulating securities similar to the foregoing, or as they may be amended, any rules or regulations adopted pursuant thereto, or any other state blue sky or Canadian laws or common laws relating to securities; or

e. Actual or alleged liability arising out of or incidental to any alleged violation(s) of any federal or state law regulating, controlling and governing antitrust or the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Antitrust Improvements Act; or

f. Actual or alleged liability arising out of or contributed to by your dishonesty or infidelity.

34. Any negligence, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by you or on your behalf in the conduct of any of your business activities or for which you agree to indemnify others under an "insured contract."

35. "Personal injury" or "advertising injury" arising out of:

a. Oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

b. Oral or written publication of material whose first publication took place before the beginning of the policy period;

c. The willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

d. Liability which the insured has assumed in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

36. "Advertising injury" arising out of:

a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

b. The failure of goods, products or services to conform with advertised quality or performance;

c. The wrong description of the price of goods, products or services; or

d. An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

37. Any liability for any sum(s) which you are or are alleged to be liable with respect to "your work" on any watercraft, pipeline, tank or other container or structure which has contained flammable or combustible liquid in bulk or any watercraft, pipeline, tank or other container or structure which has carried or contained flammable compressed gas in bulk, unless such work is done in accordance with the requirements of the rules and regulations of the National Fire Protection Association applicable to such work.

38. Fines, penalties, bad faith damages, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages.

**B. EXCLUSIONS APPLICABLE TO SECTION I, COVERAGE C ONLY:**

We will not pay expenses for "bodily injury:"

1. To any insured.

2. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

3. To a person injured on that part of premises you own or rent that the person normally occupies.

4. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law, any similar law, or under the doctrine of maintenance and cure.

5. To a person injured while taking part in athletics.

6. Included within the "products-completed operations hazard."

7. Excluded under Section II.A. of this policy.

8. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SECTION III - SUPPLEMENTARY PAYMENTS - APPLICABLE TO SECTION I, COVERAGES A AND B ONLY**

We will pay, with respect to any claim or "suit" we defend (subject to applicable policy limits):

1. All expenses we incur including, but not limited to, attorney fees and litigation costs.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**SECTION IV - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees" (other than your executive officers and captain or crew of watercraft you own and/or operate, charter, lease or borrow) but only for acts within the scope of their employment by you. However, no "employee" is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

      (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

      (3) "Property damage" to property owned or occupied by or rented or loaned to that "employee", any of your other "employees", or any of your partners or members (if you are a partnership or joint venture).

   b. Any person (other than your "employee") or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-employee of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 60th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**SECTION V - LIMITS OF INSURANCE**

All CLAIMS EXPENSES and amounts paid in satisfaction of settlements or judgments for damages are subject to the applicable limit of liability. All CLAIMS EXPENSES shall first be subtracted from the applicable Limit of Insurance, with the remainder, if any, being the amount available to pay DAMAGES. The liability of the Company for the combined total of all Damages and Claims Expenses for a claim covered shall not exceed the amount stated in the Declarations section of this policy in Item 5 “Limits of Insurance” as applied to the applicable claim.

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits"; or

   d. Coverages provided in or endorsed to this policy.

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   c. Damages under Coverage B;

   d. Damages under other coverages endorsed to or otherwise made a part of this policy; and

   e. All Supplementary Payments (as per SECTION III).

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard", including all Supplementary Payments (as per SECTION III).

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" arising out of any one "occurrence", including all Supplementary Payments (as per Section III).

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A;

   b. Medical expenses under Coverage C; and

   c. Supplementary Payments under Section III

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

   The limits of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION VI - DEDUCTIBLE LIABILITY INSURANCE**

Applicable to Section I, Coverage Parts A and B and all coverage endorsements attached to this policy.

1. Our obligation under the "Bodily Injury" Liability, "Property Damage" Liability, "Personal Injury" Liability and "Advertising Injury" Liability Coverages to pay damages, expenses or costs on your behalf applies only to the amount of damages, expenses or costs in excess of any deductible amounts stated on the Declarations Page as applicable to such coverages, and the limits of insurance applicable to "each occurrence" for such coverages will be reduced by the amount of such deductible. "Aggregate" limits for such coverages shall not be reduced by the application of such deductible amount.

2. The deductible amounts shown on the Declarations apply as follows:

A. PER CLAIM BASIS - if the deductible is on a "per claim" basis, the deductible amount applies:

   1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively;

      a. To all damages and supplementary payments because of "bodily injury" sustained by one person, or

      b. To all damages and supplementary payments because of "property damage" sustained by one person or organization,

      as the result of any one "occurrence."

   2. Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages and supplementary payments because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence."

B. PER OCCURRENCE BASIS - if the deductible is on a "per occurrence" basis, the deductible amount applies:

1. Under Bodily Injury Liability or Property Damage Liability Coverage, respectively:

   a. To all damages and supplementary payments because of "bodily injury" as the result of any one "occurrence," or

   b. To all damages and supplementary payments because of "property damage" as the result of any one "occurrence."

   regardless of the number of persons or organizations who sustain damages because of that "occurrence."

2. Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages and supplementary payments because of "bodily injury" and "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence."

3. The terms of this insurance, including those with respect to:

   a. Our right and duty to defend any "suits" seeking those damages; and

   b. Your duties in the event of an "occurrence," claim or suit

   apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**SECTION VII - CONDITIONS PRECEDENT TO COVERAGE:**

In consideration of the reduced premium charged, you agree that:

1. You are and shall remain during the policy period stated in the Declarations to this policy a subscriber to or a qualified self insurer under the Workers Compensation Act for the State in which you are domiciled and those States in which you do business, and/or under any applicable Federal Workers Compensation Acts.

2. Maritime Employers' Liability Insurance, if purchased by you, shall include an alternate employer endorsement providing coverage to all additional insureds under this policy and to all persons or entities you have agreed to indemnify and/or insure pursuant to contract.

3. ~~An Excess Liability or Umbrella Liability policy providing minimum limits of $1,000,000. in excess of the limits of this policy will be maintained in effect during the policy period stated in the Declarations to this policy. If such excess coverage is terminated during the policy period stated in the Declarations of this policy, the effective date of termination of said excess insurance shall also be the termination date of this policy. You further agree to furnish us with a certificate of insurance verifying that such coverage is in place including the company affording coverage and their policy number, limits and policy term.~~

4. You will:

   a. preserve all rights against any and all:

      (1.) Independent contractors and/or subcontractors

      (2.) "Temporary workers"

      (3.) "Leased workers"

      (4.) "Employee provider firms"

      all of which are referred to below as "entities".

b. require the "entities" to maintain, in full force and effect, liability insurance***, including coverage for all contractual liability you assume by written contract for the acts of your independent contractors and/or subcontractors,*** with limits at least equal to the limits of this policy, as well as workers' compensation insurance. The "entities" shall require their insurer(s) to name you as an additional insured and shall waive all rights of subrogation against you and your principal. The liability insurance provided by the "entities" shall be endorsed to designate it to be primary to all other insurance issued in your favor and in favor of your "principal". For the purposes of this condition the "principal" is defined as any party for whom you are performing work.

c. require the "entities" to provide proof of the insurance as required above prior to any of the "entities" beginning to work for you. The "entity" shall also require their insurer(s) to provide you with thirty (30) days written notice of cancellation or material change of their insurance.

5. Any and all vessels you own and/or operate and/or charter, lease or borrow shall be separately insured during the term of this policy to limits not less than $1,000,000. or hull value (whichever is greater) for protection and indemnity and collision and towers risks. Terms of such insurance shall not be less broad than those insured by:

   a. Protection and Indemnity Form SP-23, including Contractual Liability Coverage Extension;

   b. Lines 78 through 111 of the American Institute Tug Form 53R-1.

   If such coverage is terminated during the period of this policy, the effective date of termination of said insurance shall also be the termination date of this policy.

   This condition does not apply, however, to non owned watercraft which is in your care, custody or control for the sole purpose of being worked upon including shifting and moving within the limits of the port at which the work is being carried out and including trial trips, but not exceeding 100 miles from such port.

6. We shall not contribute any amount or participate on any basis (primary, excess or otherwise) with providers of indemnity agreements or insurers providing the insurance required in Conditions 1 through 5 above regardless as to whether or not such indemnity is enforceable or such insurance is valid and collectible.

A breach of or any failure to fully comply with any of the above conditions voids all the insurance provided by this policy.

**SECTION VIII - GENERAL CONDITIONS**

All coverages provided by or included in this policy and all endorsements attached to this policy are subject to the following conditions. Read them carefully.

1. Bankruptcy / Insolvency

   The insolvency, bankruptcy, receivership of the insured or the insured's estate or any refusal or inability to pay by the insured or the insured's estate and/or the insolvency, bankruptcy, receivership or any refusal or inability to pay by any other insurance company and/or by any other underwriter shall not operate to:

   a. Relieve us of our obligations under this policy;

   b. Increase our liability under this policy;

   c. Increase our share of liability under this policy;

   In no event shall we assume the responsibilities of the insured or the insured's estate and/or obligations and/or the obligations of any other insurance company and/or any other underwriter.

2. Brokers / Agents Cancellation Clause

Where credit has been given by Brokers/Agents for the premium and you have consented that the Broker/Agent shall have a lien on the policy in this respect and authority to cancel in the event of the premium not having been paid when due, we may cancel this policy at the request of your Broker/Agent and may return any unearned premium to your Broker/Agent as may be agreed.

Provided that your Broker/Agent has given you Ten (10) Days written notice of cancellation by registered post to your last known address.

In the event of the applicable limits of insurance being exhausted hereunder where the premium is deferred, all future installments shall become immediately due and payable, and we shall be entitled to take credit therefor.

3. Cancellation / Non Renewal

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named insured cancels, the refund may be less than pro-rata. The cancellation will be effective even if we have not made or offered a refund.

   f. In the event of cancellation of this policy, the earned premium shall be calculated in accordance with the cancellation provision contained above and shall be based upon the estimated annual premium, advance premium, or minimum premium, whichever is greater.

   g. If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Changes

   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

5. Duties In The Event of Occurrence, Claim or Suit

   a. You must see to it that we are notified as soon as practicable after you become aware of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable after you receive or are advised of a "suit" or claim.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

6. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

7. In Rem

Subject to all exclusions, conditions and other provisions of this policy, an action in rem against your watercraft shall be interpreted to be the same as an action in personam against you.

8. Inspections and Surveys

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes. We maintain the right to require that recommendations are complied with and if they are not, we have the right to cancel the policy.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public and we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

9. Premiums

The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

10. Legal Action Against Us

No person or organization has a right under this insurance policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

11. Other Insurance Or Protection

If the Insured is covered or protected under any indemnification agreement or under any insurance policy, regardless as to whether or not such indemnification agreement is enforceable or coverage under such policy is valid and collectible, for any loss or claim which would have otherwise been payable under this policy, we shall not contribute any amount toward the damages for such loss or claim.

12. Premium Audit

a. We will compute all premiums in accordance with our rules and rates.

b. Premium shown in the Declarations as advance premium is only a deposit premium. At the close of each audit period we will compute the earned premium for that period.

   Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, unless it is less than the minimum premium in which case the amount which is less than the minimum premium will not be refunded.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

13. Representations

By accepting this insurance policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

14. Separation Of Insureds

Except with respect to the Limits of Insurance, which are in no way increased, and any rights or duties specifically assigned to the first Named Insured in this insurance policy, which are in no way expanded, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

15. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this insurance policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

16. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION IX - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Asbestos" means all forms of actinollte, amosite, anthophyllite, chrysotile, crocidollte, tremollte, asbestos containing materials, asbestos products, asbestos fibers, asbestos dust, asbestos waste, or any goods, products, or structures containing asbestos.

3. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. “CLAIMS EXPENSES" means:

a. Fees charged by any lawyer or law firm, designated by the Company or required by law, to defend the INSUREDS; and

b. If authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any covered claim, including but not limited to:

i. All costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

ii. Premiums on appeal bonds, in an amount not to exceed the Company's Limits of Liability, which are required for the appeal of a covered claim. The Company shall have no obligation to apply for, guarantee or furnish any such bonds.

c. "CLAIMS EXPENSES" shall not include salaries and expenses of regular employees or officials of the Company or the NAMED INSURED or any ADDITIONAL INSUREDS.

6. "Coverage territory" means:

a. The United States of America (including its ter
ritories and possessions), International Waters of the Gulf of Mexico, Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a.) Goods or products made or sold by you in the territory described in a. above; or

(b). The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

7. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

9. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

a. A lease of premises;

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

(1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services; or

(4) That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

Nothing contained in an "insured contract" shall serve to increase the coverage or limits otherwise provided by this policy or its endorsements.

11. "Lead" means all lead, lead dust, lead-based products, lead-containing materials, lead-containing waste, or any goods, products, or structures containing lead.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13 "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft or "auto; "

b. While it is in or on an aircraft or "auto;" or

c. While it is being moved from an aircraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or "auto."

14. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

        (1) Equipment designed primarily for:

            (a).Snow removal;

            (b).Road maintenance, but not construction or resurfacing;

            (c).Street cleaning;

        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

15. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

17. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste regardless of where found. Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

18. "Pollution" means the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants", whether accidental, fortuitous or intentional and whether or not damaging to the environment.

19. "Polychlorinated biphenyl" shall mean any product which is known as polychlorinated biphenyl, contains polychlorinated biphenyl, has the same chemical formulary as polychlorinated biphenyl, is a derivative of polychlorinated biphenyl, or is generally known in the chemical trade as having a like formulation, structure, or function as polychlorinated biphenyl regardless of the name under which it is manufactured, sold or distributed.

20. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations;

And with respect to Stevedoring Operations:

(4) Occurrences not on board vessels at the site of operations after their completion or abandonment.

21 "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

c. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

22. "Suit" means a civil proceeding in which damage because of "bodily injury", "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

23. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

24. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

25. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE HEALTH HAZARD EXCLUSION (MCL 0610161)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

The following Exclusion shall be paramount and shall not be modified or superseded by any other Exclusion included herein or stamped or endorsed hereon:

It is hereby understood and agreed that as respects any and all activity of the Insured related to or arising from the clean-up emanating from the Deepwater Horizon oil spill, including the "Vessel of Opportunity" program, the following Absolute Exclusion shall apply:

This insurance does not apply to any liability (including contractual), expense or costs
(including but not limited to investigation, testing, clean-up, or removal) for claims or "suits" or proceedings:

a) For "bodily injury", "property damage", or "personal and advertising injury" made by or on behalf of any person or persons directly or indirectly on account of any substance, gases, material, product, waste emission arising out of chemicals, petrochemicals (products or by-products), other fossil fuel (including coal) derivatives, asbestos, asbestos fibers, asbestos dust, asbestos particles or products containing asbestos, lead, polychlorinated biphenyl, silica (silicon dioxide), benzene, coal dust, pesticides or herbicides, electromagnetic fields, respirable dust or particulate, toxic components of petroleum and natural gas, dispersants, detergents, or any other chemicals or compounds used in connection with clean-up or abatement efforts relating to an oil spill, a chemical spill or a gas blowout, including but not limited to:

i) inhalation of, ingestion or absorption of, suspected contact with, or any singular or continuous or intermittent exposure to any of the above, in any form or any goods or products containing any of the above in any form; or
ii) the use of any of the above in any goods, products or structures; or
iii) the manufacture, transportation, storage, handling, distribution, sales, application, mining, consumption or disposal of any of the substances listed above: or
iv) the cost or expense for the abatement, removal, or disposal of the above products or substances, including waste products or emissions.

b) For any obligation of any Insured to indemnify or contribute with another because of damages arising out of such "bodily injury", "property damage", or "personal and advertising injury"; or

c) For any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with such "bodily injury", "property damage", or "personal and advertising injury".

All other terms and conditions remain unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ACTION OVER INDEMNITY BUYBACK ENDORSEMENT (MCL 0295115)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: _$ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusions 4.c. of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall indemnify you for amounts for which you shall have become liable to pay and shall have paid including claims expenses, up to the applicable limits of insurance stated in the declarations on account of investigation, defense and indemnity obligations assumed under an "insured contract" and arising from "bodily injury" to any of your employee(s) (excluding captain(s) and crew of owned and/or operated, chartered, leased or borrowed watercraft and/or diver(s) whilst engaged in diving operations). "Bodily Injury" shall not include bodily injury that may arise from occupational disease.

3. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED AND WAIVER OF SUBROGATION ENDORSEMENT (BLANKET)**
**(MCL 0295116)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, only to the extent of the risks and liabilities assumed in the “insured contract”, it is agreed that:

1. Section IV. of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an "insured contract" to include as Additional Insureds, but only with respect to liability arising out of "your work."

2. It is further agreed that we waive any right of recovery we may have against any such Additional Insured because of payments we make for "bodily injury" or "property damage" arising out of "Your Work" for that Additional Insured, but only to the extent of your obligation under the "insured contract".

3. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC EXCLUSION CLAUSE ENDORSEMENT 3/1/03 (MCL 1102154)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: _$ (included)______**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

**AIMU**
**CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CROSS LIABILITY ENDORSEMENT (MCL 0295118)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that the inclusion of more than one corporation, person, organization, firm or entity as insured under this policy shall not in any way effect the rights of any such corporation, person, organization, firm or entity as respects any claim, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured. This policy shall protect each corporation, person, organization, firm or entity in the same manner as though a separate policy had been issued to each, but nothing herein shall operate to increase our liability as set forth elsewhere in this policy beyond the amount for which we would have been liable if only one person or interest had been named as the insured.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**
**(MCL 0616170)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

It is hereby understood and agreed that this insurance does not apply to any distribution of material in violation of statutes for “bodily injury” or “property damage” or personal and advertising injury” arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

All other terms and conditions remain unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE 11/1/02
(MCL 1102155)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that Exclusion 18 of Section II. A. shall be voided but only to the extent of the coverages provided under this endorsement.:

**INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
(November 1, 2002)**

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

   1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
(U.S.A. ENDORSEMENT)**

This insurance (reinsurance) is subject to the Institute Extended Radioactive Contamination Exclusion Clause (November 1, 2002) provided that if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause (November 1, 2002) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss, damage, liability or expense caused by nuclear reaction**,** nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITED POLLUTION BUY-BACK (72 HOUR) ENDORSEMENT (MCL 0295122)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusion 10 of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement and provided that you establish that all of the following conditions have been met:

   a. The discharge, dispersal, release or escape was neither expected nor intended by the Insured. A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the Insured.

   b. The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this policy.

   c. The discharge, dispersal, release or escape became known to the Insured within 72 hours after its commencement and was reported to Underwriters within Thirty (30) days thereafter.

   d. The discharge, dispersal, release or escape did not result from the Insured's intentional and willful violation of any government statute, rule or regulation.

2. Exclusion 10. of Section II. A. shall not apply to clean up costs that result from mitigation of a seepage and pollution claim from a covered pollution incident. Clean up costs shall be defined as those expenses incurred as a direct result of the removal, treatment, detoxification or neutralization of pollutants or hazardous substances as legally mandated by governmental authority excluding, however, the cost of environmental impact studies. Such clean up expenses are part of (not in addition to) the limits of liability of this policy and will reduce the limits of liability available for payments of judgements or settlements.

3. Nothing contained in this endorsement shall operate to provide any coverage hereon for liability, expense or costs, whether incurred fortuitously, accidentally and/or intentionally and whether or not environmental in nature, with respect to:

   a. Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by your sub-surface operations or sub-surface operations performed on your behalf.

   b. Removal of, loss of or damage to sub-surface oil, gas or any other substance.

   c. Fines, penalties, criminal costs of defense, punitive damage, exemplary damages or any other damages resulting from the multiplication of compensatory damages.

   d. Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substance or the transportation of any waste materials or substances.

   e. Losses resulting from Blowout and/or Cratering.

   f. Losses resulting from and/or caused by watercraft which you own, operate, charter, lease and/or borrow.

g. Losses which arise solely because of provisions contained in the Oil Pollution Act of 1990, state and local government environmental Acts, as well as their successor Acts and which would not have been covered hereunder had those Acts not been enforced. It is also understood and agreed that this insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal or state law or local government Acts and it is a warranty of this insurance that it shall not be submitted to the United States Coast Guard or any other federal or state or local government agency as evidence of financial responsibility. We do not consent to be guarantors.

4. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRIMARY INSURANCE ENDORSEMENT (MCL 0295123)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and notwithstanding Condition 6. of Section VII. or Condition 11 of Section VIII, it is mutually agreed that:

1. with respect only to "your work" for the entities listed below, this policy shall be primary to any other insurance carried by them and/or their subsidiary and/or interrelated companies or any other additional insureds, and

2. the limits of this insurance including claims expenses, up to the applicable limits of liability stated in the declarations shall be exhausted prior to participation or payment of such other insurance.

3. we agree to provide the entities listed below with at least thirty (30) days (except ten (10) days for non payment of premium) written notice of cancellation.

   **ENTITY**
   As required by an “insured contract”, but only with respects to an entity for whom you are directly or indirectly performing “your work”.

4. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SHIP REPAIRER'S LIABILITY ENDORSEMENT (MCL 0295105)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: _$ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusions 9.a. and 23. d. of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall pay on your behalf all sums which you, as a ship repairer, shall become legally obligated to pay as damages for:

a. liabilities imposed upon you by law for physical loss of or damage to watercraft and their equipment, cargo, or other interests on board, including claims expenses, up to the applicable limits of liability stated on the declarations, occurring only while such watercraft are in your care, custody or control for the purpose of repair at:

**Location / Address:**

Those locations which are shown in your application which is on file with us and those shipyards and/or ship repair facilities and/or locations belonging to others from which you conduct your ship repair operations.

or while such watercraft are being moved via inland waters for a distance not in excess of _100_ miles in connection with repairs;

b. liabilities imposed upon you by law as damages because of "property damage" caused by a watercraft covered under "2. a." above while in your care, custody or control and being navigated or operated away from premises described in "2. a." above within permitted waters by your employee or employees or in tow of a tug not owned by or demise chartered to you. It is a condition of this paragraph 2.b. that any of your employees engaged in the navigation of a watercraft described herein shall possess such license as is required by the United States Coast Guard or any other applicable regulatory authority to perform the duties being carried out by said employee;

c. subject to the limits stated herein, the cost of defending any suit against you on any claim based on your liability or alleged liability covered by this insurance if the amount of the claim hereunder exceeds the deductible amount under this policy, but we shall not be liable for the cost or expense of prosecuting or defending any suit unless the same shall have been incurred with our written consent. We reserve the right to conduct the defense of any actions or suits at our own expense. The cost and expense of prosecuting any claim in which you shall have an interest shall be divided between you and us, proportionately to the amounts which we would be entitled to receive, respectively, if the suit should be successful.

3. This endorsement does not provide any insurance coverage for:

   a. "Bodily injury" and/or "personal injury;"

   b. Any liability assumed under contract;

c. Loss, damage or expense arising in connection with work on any watercraft which has carried flammable or combustible liquid in bulk as fuel or cargo or any watercraft which has carried flammable compressed gas in bulk, unless such work is done in accordance with the requirements of the rules and regulations of the National Fire Protection Association applicable to such work;

d. Demurrage, detention, loss of time, loss of freight, loss of charter, loss of use and/or similar and/or substituted expenses;

e. Loss, damage or expense which may be recoverable under any other insurance insuring to your benefit;

f. Collision liability, tower's liability or liabilities insured against under the customary forms of hull or protection and indemnity policies arising out of the operation of any watercraft owned by, or demise chartered to you or by any affiliated or subsidiary concern, individual or party;

g. Loss of or damage to property owned, leased to, or in your possession (other than watercraft which are in your custody for the purpose of repair) or utilized by you in your business as a ship repairer;

h. Loss of or damage to watercraft placed in your care, custody or control for the purpose of storage regardless of whether any work is also to be performed on the watercraft; provided that this exclusion shall not apply to any physical loss of or damage to the watercraft (otherwise covered under this Policy) resulting directly from repairs to said watercraft carried out during such storage period;

i. The expense of redoing "your work" improperly performed by or on your behalf or the cost of replacement of materials, parts or equipment furnished in connection therewith;

j. The cost or expense of repairing, replacing or renewing any faultily designed part or parts which cause(s) loss of or damage to the watercraft, or for any expenditure incurred by reason of a betterment or alteration in design;

k. Any loss of or damage to watercraft occurring while in your care, custody or control and otherwise covered under Section 1.a. hereof, but not discovered within Sixty (60) days of the delivery of the watercraft to the owner or demise charterer, or within Sixty (60) days after work is completed, whichever first occurs.

l. Loss, damage or expense arising in connection with:

   (1) any new watercraft that you are building or assisting to build; or

   (2) any watercraft undergoing reconstruction or conversion which entails a change in dimension, tonnage or type of watercraft.

4. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DETENTION ENDORSEMENT (MCL 0295106)**

This endorsement modifies insurance provided under:

Ship Repairer's Liability Endorsement (MCL 0295105)

**SCHEDULE**

**Premium: _ $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and notwithstanding exclusion 3.d. of the Ship Repairer's Liability Endorsement (MCL 0295105), this policy is extended to cover your legal liability for detention of any watercraft as a consequence of loss of or damage to such watercraft resulting in a claim which is the subject of indemnity under paragraph 2.a. of the Ship Repairer's Liability Endorsement (MCL 0295105), but this extension shall not cover any legal liability for detention that you accept under contract, express or implied, except to the extent that you are or would be liable for detention independently of any provision in that contract. This extension is subject to the applicable limits of insurance stated on the declarations including claims expenses.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER WORK ENDORSEMENT (MCL 0295107)**

This endorsement modifies insurance provided under:

Ship Repairer's Liability Endorsement (MCL 0295105)

**SCHEDULE**

**Premium: $ (included)**

1. The Ship Repairer's Liability Endorsement shall be extended to cover the following repair operations which do not come within the scope of your ship repairing operations:

   Other Repair Operations:-

   None at Inception. Underwriters to be advised of any changes.

   The gross charges in respect of such operations shall be declared to us and adjusted at a rate of (as shown in the Declarations) %.

2. The expressions "Ship Repairer" and "Ship Repairing" wherever used in this insurance shall be deemed to include your other repair operations.

3. Paragraph 2.a. of The Ship Repairer's Liability Endorsement shall be deleted and replaced with the following:

   "liabilities imposed upon you by law for physical loss of or damage to property which is in your care, custody or control for the purpose of being repaired including whilst in transit to or from your premises or whilst in transit to or from specialist repairers' or manufacturers' premises, including claims expenses, up to the applicable limits of insurance stated in the declarations."

4. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TRAVELLING WORKMEN ENDORSEMENT (MCL 0295108)**

This endorsement modifies insurance provided under:

Ship Repairer's Liability Endorsement (MCL 0295105)

**SCHEDULE**

**Premium: _$ (included)**

In consideration of the additional premium shown in the schedule to this endorsement, the coverage afforded by The Ship Repairer's Liability Endorsement (MCL 0295105) shall be extended whenever any persons employed by or on your behalf are on board the watercraft and/or drilling rig at sea or in any port for the purpose of effecting repairs, even though such persons may be signed on as members of the watercraft's crew.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHARTERER'S LIABILITY ENDORSEMENT (MCL 0295101)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusions 9.a. and 23. d. of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall pay on your behalf all sums which you, as a "Charterer", shall become obligated to pay as damages, up to the applicable limits of liability stated on the declarations, for:

   a. liabilities for physical loss or damage to the chartered watercraft, including demurrage and/or detention liability directly resulting therefrom, imposed upon you by reason of charter party provisions with respect to "safe berths," "safe ports" or the watercraft lying "safely afloat" or liabilities for such loss or damage arising out of loading and/or unloading operations.

   b. liabilities imposed upon you as such charterer by law for property damage, loss of life or bodily injury other than that covered by paragraph a;

   c. legal costs and/or fees or expenses of counsel occasioned by the defense of any claim against you for any liability or alleged liability covered by this Policy, provided that such costs, fees and/or expenses are incurred with the prior written consent of this Company.

   For the purposes of this endorsement, "Charterer" means one who hires, rents or leases watercraft or space on watercraft for their exclusive and temporary use.

3. The coverage provided by this endorsement shall be applicable only in respect to:

   Description of watercraft insured:

   As on File with the Company

4. This endorsement does not provide any insurance coverage for:

   a. Loss of life, or injury to the captain and/or crew of the chartered watercraft;

   b. Any liability (other than as provided in paragraph 2.a. above) assumed under contract;

   c. Any liability arising from a bareboat or demise charter of any watercraft;

   d. Detention and/or demurrage except as provided in paragraph 2 of this endorsement. Claims for demurrage resulting from quarantine existing at a port of discharge, loading or call without your knowledge shall, however, be covered by this policy;

e. Loss, damage or expense to cargo carried or to be carried on the watercraft chartered, whether on board or not; or for general average, salvage, sue and labor costs, or collision liability in respect to such cargo or applicable to freight or charter hire;

f. Any liability arising as the result of the carriage, custody or handling of cargo of a kind prohibited by the terms of the charter party or contrary to law;

g. Any liability arising as the result of the carriage, custody or handling as cargo on the chartered watercraft of explosives, ammonium nitrate, or toxic or corrosive materials, except such as are described in the watercraft paragraph 3 of this endorsement;

h. Any liability arising as the result of your ordering the watercraft to enter any ice-bound port or place or any place where lights, lightships, marks or buoys on watercrafts arrival are or are likely to be withdrawn by reason of ice, or where there is risk that ordinarily the watercraft will not be able (on account of ice) to enter, reach or leave such port or ports;

i. Loss, damage and/or expense which may be recoverable under any other insurance, carried by or for your account;

j. Death or injuries to passengers carried or for loss or damage to their baggage or personal effects for which you may be directly or indirectly liable.

5. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WATERCRAFT BROKER'S LIABILITY ENDORSEMENT (MCL 0295112)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: _$ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusions 19. and 34. of Section II. A. and Condition 5. of Section VII shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall pay on your behalf all sums which you, as a watercraft broker, shall become obligated to pay for liability imposed upon you by law arising, including claims expenses, up to the applicable limits of insurance stated in the declarations out of the hiring and/or re-hiring or charter brokerage of crewboats, supply vessels, tugs, workboats and barges of Third Parties for a valuable consideration paid to you as commissions, brokerage or charter hire.

3. Notwithstanding anything to the contrary in policy, this endorsement applies only to occurrences during the policy period and within the limits of the United States of America and for one hundred and fifty (150) miles off the coast of the United States of America.

4. This endorsement does not provide insurance coverage for:

   a. Any liability assumed under contract.

   b. Loss of or damage to property you own or occupy, or watercraft you hire and/or re-hire, or property as to which you are exercising actual physical control under bareboat charter.

   c. Liability arising from watercraft you own and/or watercraft which is bareboat or demised chartered to you.

   d. Loss of or damage to property caused intentionally by you or by your direction.

5. As a condition precedent to coverage you agree that:

   a. All watercraft chartered shall be under charter agreement to you.

   b. All watercraft shall have Hull Insurance to market value and a minimum of $1,000,000. protection and indemnity liability, including collision and tower's liability no less broad than as specified in Condition 5. of Section VII. This insurance shall be carried at the owner's expense and shall name you as an additional insured and waive all rights of subrogation against you.

   c. You shall have the original or true copy of the owner's policy on file.

6. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WATERCRAFT INCLUSION FOR ADDITIONAL INSUREDS REQUIRED BY WRITTEN CONTRACT (MCL 1010162)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

**It is a condition precedent to coverage afforded by this endorsement that MCL 0295115 "Action Over Indemnity Buyback Endorsement" is attached to this policy prior to this endorsement being effective.**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy and the condition precedent above, it is agreed:

1. To the extent, and only if, required by an "insured contract," Paragraph 19 of Section II (Subsection A, Exclusions Applicable to Section I, Coverage A and B only) shall be deemed deleted and shall not exclude coverage as to claims made by employees of the Named Insured against an additional assured which has been added to the policy as an assured by virtue of the "insured contract."

2. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WHARFINGER'S LIABILITY ENDORSEMENT (MCL 0295114)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Minimum And Deposit Premium: $ (included)**
**Adjustment Rate Per Watercraft Day: $ (included)**

In consideration of the minimum and deposit premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusions 9.a. and 23. d. of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall pay on your behalf all sums which you, as a wharfinger, shall become legally obligated to pay as damages including claims expenses, up to the applicable limits of insurance stated in the declarations for:

   a. liabilities imposed upon you by law for loss of or property damage to watercraft and the equipment, cargoes, freights and other interests on board, which are in your care, custody or control at:

      **Location / Address:**

      Those locations which are shown in your application which is on file with us and/or locations belonging to others from which you conduct your operations.

   b. liabilities imposed upon you by law for loss of or property damage to property other than that referred to in Paragraph a. hereof caused by said watercraft and its/their cargoes, which are in your care, custody or control.

   c. liabilities imposed upon you by law for expenses incurred in removing the wreck of any watercraft or any obstruction which resulted from an accident or occurrence in respect to or in connection with your wharfinger operations.

3. This endorsement does not provide insurance coverage for:

   a. "Bodily injury" and/or "personal injury;"

   b. Any liability assumed under contract, or otherwise, in extension of the liability imposed on you by law;

   c. Demurrage, detention, loss of time, loss of freight, loss of charter, loss of use and/or similar and/or substituted expenses;

   d. Loss, damage or expense which may be recoverable by you under any other insurance;

   e. Loss, damage or expense for collision liability, tower's liability or protection and indemnity liability, arising out of the operation of any watercraft owned or operated by you and/or by any affiliated or subsidiary concern or individual or party;

   f. Property you own, lease, or utilize in your business;

   g. Watercraft repair, construction, alteration, conversion or gas freeing;

h. Loss of or damage to cargo you own or cargo being loaded or unloaded.

i. Loss of or damage to watercraft stored ashore or watercraft moored/docked at your facilities which are not of a transient nature.

4. In consideration of the coverages provided by this endorsement you agree to report to us the number of watercraft days (a watercraft day being defined as a watercraft being at risk for twenty-four (24) consecutive hours or part thereof) that watercraft are at risk at your dock(s) as listed in 2. a. above during the policy period. Premium is due and payable at the rate as shown in the schedule to this endorsement per watercraft day, which amount shall be applied to the minimum and deposit premium until such deposit is exhausted, at which time additional premium shall be paid.

5. All Other Terms and Conditions Remain Unchanged.

## UNITED STATES ECONOMIC AND TRADE SANCTIONS CLAUSE (MCL 0911163)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: _\$ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

Whenever coverage provided by this policy would be in violation of any United States economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of United States economic or trade sanctions as described above shall also be null and void.

All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TERMINAL OPERATOR'S LIABILITY ENDORSEMENT (MCL 0295111)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ (included)**

In consideration of the additional premium shown in the schedule to this endorsement and subject to the terms and conditions of the policy, it is agreed that:

1. Exclusion 23. d. of Section II. A. shall be voided, but only to the extent of the coverages provided under this endorsement.

2. We shall pay on your behalf all sums which you, as a terminal operator, shall become legally obligated to pay as damages including claims expenses, up to the applicable limits of insurance stated in the declarations for:

   a. By reason of liabilities imposed upon you by law for loss of or damage to the property of others in your care, custody and control at the location(s) shown below provided the loss or damage arose out of "your work" and/or operations and/or activities and/or business as a terminal operator, warehouseman or cargo handler while ashore and including your liability for said property which arises out of your ownership, maintenance or use of cranes, forklifts and tractors incidental to "your work."

      **Location / Address:**

      Those locations which are shown in your application which is on file with us and/or locations belonging to others from which you conduct your operations.

   b. your contingent liability in connection with the performance of "your work" by any of your subcontractors, provided such liability would have been covered hereunder if the work had not been subcontracted out.

3. This endorsement does not provide any insurance coverage for:

   a. Any liability assumed under contract;

   b. Demurrage, detention, loss of time, loss of freight, loss of charter, loss of use (and/or similar and/or substituted expenses) of any watercraft;

   c. Liability arising from watercraft repair, construction, conversion or gas freeing;

   d. "Bodily injury" and "personal injury;"

   e. Any claim for conversion or other act of dishonest character on your part or on the part of your employees and/or agents;

   f. Loss, damage or expense which may be recoverable under any other insurance;

   g. Loss of or damage to cargo you own;

h. Loss of or damage to cargo being loaded or unloaded;

i. Loss of or damage to watercraft and equipment, cargoes, freights and other interests on board the watercraft;

j. Loss of or damage to mobile equipment, rail cars, trucks and/or their trailers and/or other vehicles which you own, rent or borrow except for loss, damage or expenses to the property of others which you are in charge of for the purposes of transport and which would otherwise be covered hereunder;

4. All Other Terms and Conditions Remain Unchanged.

**MARINE COMPREHENSIVE LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LOUISIANA POLICYHOLDER NOTICE – DEFENSE WITHIN LIMITS**
**(MCL 0814168)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

This policy contains coverages where defense expenses are payable within the limits of insurance in those coverages, payment of defense expenses will reduce the limits of insurance. Please review the policy thoroughly.

Renewal of: **MASI HNW 000717 15 HULL**
**MASI HNW 000718 15 P&I**

Policy No.: **MASI HNW 000717 16 HULL**
**MASI HNW 000718 16 P&I**

# Starr Indemnity & Liability Company

**5151 San Felipe, Suite 200, Houston, TX 77056**

Amount: **$Per Form** Rate: **Per Form** Premium: Hull: P&I: TRIA: Commission: [redacted]

**BY THIS POLICY OF INSURANCE**

| | |
|---|---|
| Does Insure: | **Blanchard Contractors, Inc.**<br>**A&S Marine Services, LLC**<br>**BCI Midstream LLC**<br>**BLB Development, LLC**<br>**TJB Marine Services, LLC**<br>**P.O. Box 884**<br>**Cut Off, LA 70345** |
| For the account of: | **Themselves** |
| Loss, if any, payable to: | **Assured or Order** |
| To the Amount of: | **Per Form -------------------------Dollars** |
| From: | **12:01 a.m. October 1, 2016 LST** To: **12:01 a.m. October 1, 2017 LST** |
| On: | **Hull and Machinery / Protection & Indemnity** |

Subject to all the terms, conditions and exclusions the form(s) attached hereto:

**GENERAL CONDITIONS:**

Gulf of Mexico Extension
In Rem
Sistership Clause
Nuclear Energy Liability Exclusion Clause (Broad Form)
**Navigation Warranty:** Mississippi River System and all navigable Inland tributaries to or waters connected therewith, the Gulf Intracoastal Waterway and all navigable inland tributaries thereto and inland waters connected therewith between Brownsville, Texas and Carrabelle, Florida and to include Coastal Waters not to exceed three miles offshore for those vessels not otherwise restricted by their USCG certification.
Aggregate Deductible Clause
Blanket Additional Assured/WOS as required by written contract
Blanket Primary & Non-Contributory Endorsement as required by written contract
Blake International Wording Endorsement
Inclusion of Additional Assureds or Loss Payees Endorsement (In form)
AIMU Extended Radioactive Contamination Exclusion Clause (March 1, 2003)
AIMU Chemical, Biological, Bio-Chemical, & Electromagnetic Exclusion Clause (March 1, 2003)
AIMU U.S. Economic and Trade Sanctions Clause
AIMU Cyber Liability Exclusion Clause
Cross Liability Endorsement
Non-owned/Leased Equipment Clause
Affiliated Companies Clause
Oil Pollution Act Disclaimer Endorsement
50-20 Continuity/Profit Sharing
Limit and deductible are inclusive of legal costs, fees and expenses.
Terrorism Exclusion (TRIA 2002) Revised
Terrorism Exclusion and Marine Buyback Endorsement (Non-TRIA 2002)

## I. HULL AND MACHINERY, EXCLUDING COLLISION & TOWER'S LIABILITY:

American Institute Hull clauses (6/2/77), excluding Collision Liability
S.R.&C.C Endorsement
Automatic Acquisition Clause ($1,000,000.) – warranted 30 day reporting
Privilege to Charter Clause
Released Towage Contracts
Unrepaired Damage
Deliberate Damage Clause
Total Loss
Affiliated companies Clause
Pollution Exclusion

## II. PROTECTION & INDEMNITY COVERAGE, INCLUDING COLLISION AND TOWER'S LIABILITY:

Protection & Indemnity Form SP-38
Excluding Punitive Damages
Automatic Acquisition Clause ($1,000,000 limit) –warranted 30 day reporting
Pilot age and Towage clause
Pollution Exclusion and Buyback Endorsement A
Contractual Liability
Occupational Disease Exclusion
Excluding Divers – Coverage provided for insureds liability
Special Jones Act Wording
Cargo Liability Clause 23A Wording

**THIS POLICY IS MADE AND ACCEPTED SUBJECT TO the conditions which are hereby specifically referred to and made part of this Policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive or be deemed to have waived any provision or condition of this Policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the Assured unless so written or attached.**

**In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless countersigned by a duly authorized representative of the Company.**

Honora Keane
General Counsel

[signature]
President

**Countersigned at Houston, Texas**

**This** 26th **day of** October **, 2016**

**By:** [signature]
**Authorized Representative**

STARR MARINE

## Hull and Liability Claim Reporting Procedures

Hull and Liability claims should be reported directly to Carolyn O'Connor at VeriClaim, Inc., with a copy to Paul McSweeney at Starr Adjustment Services, Inc. Carolyn and Paul's contact information is as follows:

Carolyn O'Connor
Hull and Liability Manager
VeriClaim, Inc.
120 Broadway, Suite 900
New York, NY 10271

| | |
|---|---|
| E-mail: | coconnor@vericlaiminc.com |
| Direct Line: | (212) 266-4255 |
| Cell Phone: | (917) 330-1954 |
| Fax: | (212) 406-3932 |
| Home Page: | www.vericlaiminc.com |

Paul McSweeney
Assistant Vice President
Starr Adjustment Services, Inc.
5151 San Felipe, Suite 200
Houston, TX 77056

| | |
|---|---|
| E-mail: | paul.mcsweeney@starrcompanies.com |
| Direct Line: | (713) 470-1481 |
| Cell Phone: | (713) 503-3048 |
| Fax: | (713) 353-0247 |
| Home Page: | www.starrcompanies.com |

# GENERAL CONDITIONS

APPLICABLE TO SECTIONS A & B

## GULF OF MEXICO EXTENSION

It is agreed that the coverage afforded under this policy is extended to cover operations of the Named Insured in the Gulf of Mexico.

## IN REM

It is understood and agreed that a claim otherwise covered by the terms of this Insurance and brought "In Rem" shall be treated as a claim against the Named Assured provided, however, nothing in this Endorsement shall be construed as affording coverage to any interest other than the Named Assured.

## SISTERSHIP CLAUSE

Should the vessel hereby insured come into collision with or receive salvage services form another vessel belonging wholly or in part to the same owners or under the same management, the Assured shall have the same rights under this insurance as they would have were the other vessel entirely the property of owners not interested in the vessel hereby insured; but in such cases the liability for the collision or the amount payable for the services rendered shall be referred to a sole arbitrator to be agreed upon between the underwriters and the Assured.

## IN PERSONAM

Privilege is granted for the Captain or other qualified person of the vessel to leave the vessel and to continue the operations in which the vessel shall be engaged from other points of vantage while docking or undocking and this insurance shall extend to and cover the legal liability of either the vessel or Assured, or both, for any act of the vessel Captain while so conducting the operation; provided always that the amount payable by Underwriters in respect of legal liability claims arising out of any one casualty shall in no case exceed the sum insured under this Policy.

## NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)

**"This endorsement modifies the provisions of this policy relating to all General Liability and Medical Payments insurance other than Comprehensive Personal and Farmer's Comprehensive Personal Insurance."**

It is agreed that:

I. This policy does not apply:

A. Under any Liability Coverage to bodily injury or property damage:

(1) with respect to which an Assured under this policy is also an Assured under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an assured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (A) any person

or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof, or (B) the Assured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United Stated of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any liability coverage to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) The nuclear material (A) is at any nuclear facility owned by or operated by or on behalf of an Assured or (B) has been discharged or dispersed therefrom;

(2) The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or behalf of an Assured; or

(3) The bodily injury or property damage arises out of the furnishing by an Assured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

**"Hazardous Properties"** means radioactive, toxic or explosive properties;

**"Nuclear Materials"** means source material, special nuclear material or by–product material;

**"Source Material"**, **"Special Nuclear Material"** and **"By–Product Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

**"Waste"** means any waste material (A) containing by–product material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (B) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

**"Nuclear Facility"** means

(A) any nuclear reactor,

(B) any equipment or device used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(C) any equipment or device used for the processing, fabricating or alloying of special nuclear material if any time the total amount of such material in the custody of the Assured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(D) any structure, basin, excavation, premises or place prepared or used for the storage or disposal or waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for operations;

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material;

**"Property Damage"** includes all forms or radioactive contamination of property.

## ANNUAL AGGREGATE DEDUCTIBLE

There shall be deducted from any claim recoverable hereunder, including "Allocated Loss Expenses", arising from any one casualty or occurrence, a **Basic Deductible** of [redacted] each occurrence. However, the Basic Deductible shall not apply to claims for Total or Constructive Total Loss.

Notwithstanding the above, no sums shall become payable under this policy until the aggregate of all paid amounts including "Allocated Loss Expenses", in excess of the Basic Deductible and which would otherwise be recoverable under the terms of this policy, exceed an **Annual Aggregate Deductible** of [redacted]

An accounting of the Annual Aggregate Deductible will be performed six (6) months after policy inception and will occur again twelve (12) months after policy inception, or at policy expiration, whichever shall first occur. Additional accounting for the policy period will be performed at six (6) month intervals until such time as, by mutual agreement between the Underwriters and the Assured, the accounting of the Annual Aggregate Deductible for this policy period is declared to be final.

It hereby understood and agreed that:

a) Claims for Total or Constructive Total Loss shall apply to the Annual Aggregate Deductible without application of a Basic Deductible;

b) Only paid amounts and Allocated Loss Expenses above the Basic Deductible (including claims for Total or Constructive Total Losses, to which the Basic Deductible does not apply) and which would otherwise be recoverable under the terms of this policy shall erode the Annual Aggregate Deductible;

c) The amount of the Basic Deductible and any sums applied to the Annual Aggregate Deductible shall reduce the amount recoverable hereunder by such amounts;

d) All claims under this policy have claim occurrence dates and these dates shall determine the "Date of Loss" to be used in determining the applicable Annual Aggregate Deductible;

e) Upon exhaustion of the Annual Aggregate Deductible, only a **Maintenance Deductible,** equal to the Basic Deductible shown above, shall apply to every subsequent claim covered hereunder. This amount shall be deducted from the total amount payable by the Underwriters, including "Allocated Loss Expenses";

f) Notwithstanding the Cancellation Clause contained elsewhere in this policy, it is understood and agreed that the Annual Aggregate Deductible shall not be pro-rated over the term of this policy unless this policy is cancelled by these Underwriters. Cancellation by the Assured shall not serve to reduce the Annual Aggregate Deductible.

For the purposes of this endorsement, "Allocated Loss Expenses" shall mean the outside legal and investigative costs, including expert and attorney fees, which are incurred in the process of handling a claim covered under the terms of this policy. "Allocated Loss Expenses" do not include salaries, fees, and expenses of the Assured, the Company, Third Party Administrator, or their employees, which cannot be charged to an individual claim.

---

Where the Assured or a Third Party Administrator nominated by the Assured and agreed to by the Company (or lead Underwriter if a subscription policy) adjusts claims within the Annual Aggregate Deductible, the following provisions apply

when seventy-five percent (75%) or more of the Annual Aggregate Deductible has been exhausted:

1. Prompt notice shall be given to the Company (or lead Underwriter if a subscription policy) with supporting back up.
2. Supporting back up must include a detailed spreadsheet with individual claim numbers and all transactions that accumulated to the Annual Aggregate Deductible.
3. Itemized notices must be given to the Company (or lead Underwriter if a subscription policy) of all subsequent

   payments toward the Annual Aggregate Deductible and its potential breach as soon as practicable after such payments are made.
4. This Assurer has the legal right to all requested documentation in support of the claims adjusted within the Annual Aggregate Deductible, and shall have the privilege at any time during business hours to inspect the claim records of the Assured or approved Third Party Administrator within the Annual Aggregate Deductible retained, for the purpose of a complete and thorough audit of the adjustment of claims, at the Company's or lead Underwriter's discretion. The Company (or lead Underwriter) agrees to give no less than thirty (30) days' prior written notification of their intent to exercise this privilege.
5. In addition to the above, all other Notice of Occurrence requirements contained elsewhere herein shall continue to apply.

**ADDITIONAL ASSUREDS AND WAIVERS OF SUBROGATION CLAUSE**

Privilege is hereby granted the Assured to name others for whom the Assured is performing work as Additional Assureds on this Policy provided the Assured shall have exercised this option prior to loss. Privilege is also granted the Assured to release from Liability others for whom the Assured is performing operations, or who are performing operations for the Assured, provided the Assured shall have exercised this option prior to loss; and these insurers waive all rights of subrogation against any parties so released. Any phraseology required to be incorporated in this Policy by parties favored by the Assured with one of the above options shall be deemed to be incorporated herein, but to no greater extent than the privilege allowed by the above options.

Notwithstanding the preceding provisions, no party shall be deemed an Additional Assured or favored with a waiver of subrogation on any vessel insured hereunder which is not actually engaged or involved in the intended operations at the time of the loss, if any.

Where required by contract, or agreed to by the Assured, it is understood and agreed that:

1. Permission is also granted to name as Additional Assureds with waiver of subrogation and notice of cancellation those individuals, partnerships, joint ventures, or corporations for whom the Assured is working, directly or indirectly, when required, provided the loss or damage, as a result of which rights would arise, occurs during and as a result of the actual performance of such work.
2. Assent given for all waivers of rights of recovery made before or after the inception of this Policy, but prior to a loss.
3. Policies shall be primary and without right of contribution of other insurance which may be available to or by the Certificate Holder.
4. Any "Other Insurance Clause" contained herein shall be void and inoperative.
5. Employees of one Assured named hereunder shall be considered members of the public as to other Assureds.

6. Certificate Holder shall not be liable for any and all premiums or calls for which Certificate Holder might otherwise become liable as assignee, a Named or Co-assured, loss payee or otherwise.

7. The so-called "Limitation of Liability," "Other Than Owner" and "As Owner Of" clauses as they appear in the printed forms contained herein shall not apply.

**BLANKET ADDITIONAL ASSUREDS AND WAIVERS OF SUBROGATION**

It is agreed that this Policy shall include as Additional Assureds, any person or organization to whom the Named Assured has agreed, by written contract, to provide coverage, but only with respect to operations performed by or on behalf of the Named Assured and only with respect to occurrences subsequent to the making of such written contract.

It is further understood and agreed that the Underwriters waive their rights of subrogation against any person or organization to whom the Assured is obligated by written contract to provide such waiver, but only to the extent of such obligation and only with respect to operations by or on behalf of the Assured or to the facilities of or used by Assured.

**BLANKET PRIMARY AND NON–CONTRIBUTORY WORDING**

Insurance provided to an Additional Insured under this policy shall be primary where shown as primary on a Certificate of Insurance or where the Named Insured is obligated by a written "insured contract" or agreement to provide insurance for the Additional Insured on a primary basis as respects Insured's operations. This insurance will not require any other insurance under which the Additional Insured is a Named Insured to share in the payment of loss.

**BLAKE INTERNATIONAL WORDING**

"All policies of insurance described hereunder shall be and shall state that it is primary insurance and that the insurer shall be liable under the policies for the full amount of the loss up to and including the total limits of liability as set forth in the declarations therein without right of contribution from any other insurance effected by or in the name of Blake International under any policy within any insurance Blake International covering the loss under this policy."

**INCLUSION OF ADDITIONAL ASSUREDS OR LOSS PAYEES**

Wherever additional assureds or loss payees are added to this policy it is specifically agreed:

a) Such additional assureds or loss payees are included only with respect to such activities insured by this policy as would exist in the absence of the naming of additional assureds or loss payees and coverage hereunder shall in no way be considered extended by the inclusion of additional assureds or loss payees.

b) The inclusion of additional assureds or loss payees in no way increases the limit of liability hereunder.

c) In the event of cancellation or change in policy coverage unless specifically endorsed in writing to the contrary hereon, no obligation is imposed on the Company to send notice of cancellation or change of coverage to an additional assured or loss payee and notice to the First Named Assured shall discharge all obligations of the Company hereunder. The Company shall not be required to notify additional named assureds or loss payees of any cancellation received from the First Named Assured hereon.

## AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A. (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

   1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A.)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

**AMERICAN INSTITUTE CYBER EXCLUSION CLAUSE (11/06/2015)**

**This clause shall be paramount and shall override anything contained in this insurance (including any endorsement(s)) inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability, or expense directly or indirectly caused by or contributed to or arising from

1. any "malicious act" involving the use of any "computer system", "electronic data communications system", "computer virus", or process or any other electronic system; and/or
2. any access to or disclosure of any "personally identifiable information" or any person's or organization's

   confidential information, including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, or any other type of nonpublic information; and/or
3. any action or omission that violates or is alleged to violate any federal, state or local statute that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of any written or electronic material or information.

Where this policy provides coverage for War Risks, section 1 above shall not operate to exclude losses which would otherwise be covered by such War Risks coverage.

**Definitions**

"Computer system" means computer hardware of any kind; "electronic computer program"; "electronic data processing media"; operating system; media microchip; microprocessor (computer chip); integrated circuit or similar device; computer network and networking equipment; firmware; server; website; extranet; and all input, output, processing, storage, and off-line media libraries.

"Computer virus" means any corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to, any maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a "computer system" or network of whatsoever nature.

"Electronic computer program" means computer software, application software, and other recorded instructions for the processing, sequencing, collecting, transmitting, recording, retrieval, or storage of "electronic data".

"Electronic data" means information or knowledge recorded or transmitted in a form usable in a "computer system", microchip, integrated circuit or similar device in non-computer equipment, and which can be stored on "electronic data processing media" for use by an "electronic computer program".

"Electronic data communications system" means any communication system, including a "computer system" and the internet, which provides the Assured with access to another "computer system", microchip, integrated circuit or similar device in non-computer equipment, or which provides any party access to the Assured's "computer system", microchips, integrated circuits or similar devices in non-computer equipment.

"Electronic data processing media" means punch cards, paper tapes, floppy disks, CD-ROM, hard drives, magnetic tapes, magnetic discs or any other tangible personal property on which "Electronic data" or "electronic computer programs" are recorded or transmitted, but not the "electronic data" or "electronic computer programs" themselves. Money or securities are not "electronic data processing media".

"Malicious act" shall mean the intentional and wrongful action or actions of one or more persons, whether or not agents of a sovereign power.

"Personally identifiable information" shall mean information, whether printed or digital, encrypted or unencrypted, in the care custody or control of any Assured which alone or in conjunction with other information can be used to uniquely identify an individual. However, "personally identifiable information" does not include information which is lawfully available to the general public.

**OIL POLLUTION ACT DISCLAIMER**

Notwithstanding any other provision of this policy or of any underlying insurance, this policy of insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal or State Laws. Any showing or offering of this policy by the Assured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Underwriters **DO NOT CONSENT TO BE GUARANTORS OR SUED DIRECTLY**.

**CANCELLATION CLAUSE**

This policy may be canceled by the First Named Assured by mailing to the Company written notice when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the First Named Assured at his last known address written notice stating when, not less than **thirty (30)** days thereafter, such cancellation shall be effective; except in event of non payment of premium, only **ten (10)** days notice in writing to the First Named Assured is required. Such notice sent to the First Named Assured in the care of the broker or agent who negotiated this policy shall have the same effect as if sent directly to the First Named Assured.

If cancellation is at the Assured's option, the Company will return a "short-rate return premium"; if cancellation is at the Company's option, pro rata unearned premium will be returned as soon as practicable.

**CROSS LIABILITY**

In consideration of the premium charged, it is hereby mutually agreed that the inclusion of more than one corporation, person, organization, firm or entity as insured under this policy shall not in any way effect the rights of any such corporation, person, organization, form or entity as respects any claims, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured. This policy shall protect each corporation, person, organization, firm or entity in the same manner as though a separate policy had been issued to each, but nothing herein shall operate to increase our liability as set forth elsewhere in this policy beyond the amount for which we would have been liable if only one person or interest had been named as the insured.

**NON-OWNED / LEASED EQUIPMENT CLAUSE**

This insurance is extended to cover equipment and apparatus (excluding survey and/or geophysical and/or seismographic equipment) not owned by the Assured, but installed for use on the insured vessel(s) and for which the Assured has assumed liability, whether such equipment or apparatus be in the nature of aids to navigation, communication or otherwise, subject to all other terms and conditions; but in no event shall the liability of Underwriters exceed the contractual liability of the Assured for such equipment or apparatus. All such equipment or apparatus installed on the vessel(s), but not owned by the Assured, shall be included in the agreed valuation of the Hull, Machinery, etc. Notwithstanding the foregoing no coverage is afforded hereunder to any such equipment or apparatus insured under separate policies.

**AFFILIATED COMPANIES CLAUSE**

It is agreed that the following additions to and amendments of the printed form of this Policy are hereby made a part of the Policy:

A. In respect of the vessel insured hereunder, it is agreed that this Policy also covers the Assured and Affiliated Companies of the Assured be they Owners, Subsidiaries or interrelated Companies and as bareboat charterers and/or charterers and/or sub-charterers and/or operators and/or in whatever capacity, and shall so continue to cover notwithstanding the provisions of this Policy with respect to change of ownership or management, but the term "Assured" in the Inchmaree Clause shall not include such charterers except bareboat charterers. Provided,

however, that in the event of any claim being made by any Affiliated, Subsidiary or inter-related Company under this clause it shall not be entitled to recover in respect of any liability to which it would not be subject, if it were the owner of the vessel, nor to a greater extent than an owner would be entitled in such event to recover. It is further agreed that Underwriters waive any right of subrogation against any Subsidiary, Affiliated or inter-related Company of the Assured, excepting to the extent that any such Company is insured against the liability asserted. However, should the vessel be sold to or transferred to or chartered on a bareboat basis to others than the Assured or the Affiliated Companies of the Assured, or be requisitioned on a bareboat basis the provisions of this Policy with respect to change of ownership or management shall govern.

B. It is hereby understood and agreed that the term "New Management" in the Change of Ownership Clause refers only to the transfer of the management of the vessel insured from one firm or corporation who have been managing the vessel to another and has no reference to any internal changes in the offices of the Assured.

**CONTINUITY CLAUSE/PROFIT SHARING**

Effective with respect to premiums entered on this Company's books from **October 1, 2016** to **October 1, 2017** and each anniversary thereafter, the annual net marine premiums hereunder are subject to a provisional profit sharing agreement. [redacted] of the gross marine premiums registered on the company books for each annual period shall be set aside as a profit sharing fund. From this fund shall be deducted the net incurred losses for the same year, and [redacted] of the remainder shall then be returned to the Assured. Such refund shall first be calculated within (24) months after the end of the period referenced above.

Net Marine premiums shall be the premium (excluding any commissions) entered on the Company's books, less return, for the policy period referenced.

Net incurred losses shall be those losses, including all allocated fees and expenses, entered on the Company's books as either paid or reserved claims, less net proceeds from salvages and recoveries.

Such provisional refund is to be calculated within (24) months after the end of each annual period above mentioned and shall become a self-insured retention that will applied to any new claim amounts that are in excess of the AAD and deductible.

In the event of cancellation or non-renewal by the assured of the Policy of which this endorsement is a part, no refund shall be made hereunder and any debits in the aforementioned self-insured retention shall be payable to underwriters.

Any deficit for an individual accounting period is to be applied against the profit sharing fund for the following year and if any deficit should then remain it shall be applied to the next following year and shall then be dropped.

## TERRORISM EXCLUSION (TRIA 2002) REVISED

**This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.**

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism shall mean:

(1) Act of Terrorism –

(A) Certification. – The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States –

(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –

(I) human life;

(II) property; or

(III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

(I) an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];

(II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

(B) Limitation. -- No act shall be certified by the Secretary as an act of terrorism if –

(i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

(ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final. – Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. – The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

**TERRORISM EXCLUSION AND MARINE BUYBACK (Non-TRIA 2002)**

**This Endorsement does not apply to losses arising directly or indirectly as a result of a certified "act of terrorism" as defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.**

This policy excludes any loss, damage, liability or expense arising from:

a) terrorism; and or
b) steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived terrorism.

For the purpose of this clause, "terrorism" means any act(s) of any person(s) or organization(s) Involving:

(i) the causing, occasioning or threatening of harm of whatever nature and by whatever means;
(ii) putting the public or any section of the public in fear,

in circumstances in which it is reasonable to conclude that the purpose(s) of the person(s) or organization(s) concerned are wholly or partly of a political, religious, ideological or similar nature.

Notwithstanding the foregoing, this Exclusion shall not apply to the following:

Any loss, damage, liability or expense arising from the operation, ownership, management or chartering of

1.1 Vessels, craft and units whilst afloat, under construction or repair, in dock or whilst in store ashore
1.2 Seawalls, wharves, piers, jetties, docks, berths, pontoons and associated dockside equipment all whilst within the confines of the port, terminal, shipyards, harbor or marina
1.3 Offshore fixed platforms whilst exploring, drilling or producing including all associated construction operations
1.4 Cargo in the ordinary course of transit per Joint Cargo Committee Termination of Transit Clause (Terrorism) JC2001/056.

# BLANCHARD CONTRACTORS, INC.
## SCHEDULE OF VESSELS

| Vessel Name | Year Built | Vessel Type | Dimensions | GRT | Hull Value | Loss Payee |
|---|---|---|---|---|---|---|
| Ramona Ann | 1982 | SP Work Barge | 55' x 22' x 5' | 42 | [redacted] | |
| Barge 2 | 1970 | Spud Barge | 135' x 32.7' x 7' | 380 | [redacted] | |
| Miss Angel | 1974 | Push Boat | 55.6' x 21.9' x 6.6' | 67 | [redacted] | |
| Barge #3 (KS-413) | 1980 | Deck Barge | 110' x 40' x 7' | 305 | [redacted] | |
| Sara JoE (Port Risk) | 1966 | SP Work Barge | 51.3' x 20' x 5.7' | 58 | [redacted] | |
| Barge #4 (CM-106) | 2006 | Deck Barge | 140' x 40' x 7' | 392 | [redacted] | |
| Blanchard1 | 2008 | Push Boat | 48.1' x 20' x 8' | 51 | [redacted] | |
| Mrs. Rosie | 2009 | SP Work Barge | 70' x 24' x 5' | 70 | [redacted] | Whitney Bank |
| Ms. Glo - 24 Ft Scully | 2006 | Crew Boat | 24' x 7' x 3' | 5 | [redacted] | |
| Miss Raven (A&S Marine) | 1978 | Push Boat | 63.3' x 20' x 3.7' | 39 | [redacted] | State Bank & Trust |
| Aly B (A&S Marine) | 2010 | Deck Barge | 120' x 30' x 7' | 275 | [redacted] | State Bank & Trust |
| Savannah B (A&S Marine) | 2010 | Deck Barge | 120' x 30' x 7 | 275 | [redacted] | State Bank & Trust |
| Aly/Savannah (A&S Marine) (Port Risk) | 1973 | Push Boat | 39.5' x 16' x 4.6' | 30 | [redacted] | State Bank & Trust |
| Contender 32' w/trailer | 2012 | Pleasure Boat | 32' | 5 | [redacted] | |
| A&S 1 (A&S Marine) | 2012 | Deck Barge | 140' x 45' x 7' | 392 | [redacted] | Whitney Bank |
| Mr. Spice | 2013 | Workboat | 30' x 9' | 5 | [redacted] | |
| Mr. Gary | 1977 | Tug Boat | 47' x 18' x 6' | 40 | [redacted] | |
| Mr. Travis | 2013 | Workboat(y-barge) | 40' x 12' | 100 | [redacted] | State Bank |
| Lil B | | Tug | 45' x 16' x 3.5' | 27 | [redacted] | |
| RG-417 | | Spud Barge | | 523 | [redacted] | |
| | | | **Total:** | | [redacted] | |

**NAVIGATION WARRANTY**

Mississippi River System and all navigable Inland tributaries to or waters connected therewith, the Gulf Intracoastal Waterway and all navigable inland tributaries thereto and inland waters connected therewith between Brownsville, Texas and Carrabelle, Florida and to include Coastal Waters not to exceed three miles offshore for those vessels not otherwise restricted by their USCG certification.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**PORT RISK (AMERICAN INSTITUTE JANUARY 18, 1970)**

Effective **Inception**, it is hereby understood and agreed that the following vessels are placed on Port Risk per the terms and conditions stated below:

**Vessels:** **Sara JoE**
**Aly/Savannah** **(A&S Marine)**

The clauses set forth below shall prevail over any policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1) The Vessel shall be laid-up in the port of **Larose, LA - Larose Dock , 1774 Hwy 24** with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2) The Vessel shall not be used as a storage ship or for lightering purposes;

(3) The Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this Policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart form the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be canceled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

57A-5

# SECTION A

# HULL and MACHINERY

# American Institute Hull Clauses

(June 2, 1977)

To be attached to and form a part of Policy No. **MASI HNW 000717 16**

of the **Starr Indemnity & Liability Company**

**The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.**

## ASSURED

This Policy insures **Blanchard Contractors, Inc.**
**P.O. Box 884**
**Cut Off, LA 70345** hereinafter referred to as the Assured.

If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent than would the Owner, had claim been made by the Owner as an Assured named in this Policy.

Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid companies, or with respect to any loss, damage or expense against which such companies are insured.

## LOSS PAYEE

Loss, if any, (excepting claims required to be paid to others under the Collision and Tower's Liability Clause), payable to
**Per Form**
or order.

Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons providing security for the release of the Vessel in Salvage cases.

## VESSEL

The Subject Matter of this insurance is the Vessel called the **Per Form** or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation,motor generators and other electrical machinery.

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed responsibility therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.

Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.

## DURATION OF RISK

From the **1st** day of **October** **2016,** **12:01 a.m.** **Local Standard** time
to the **1st** day of **October** **2017,** **12:01 a.m.** **Local Standard** time.

Should the vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.

In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.

## AGREED VALUE

The Vessel, for so much as concerns the Assured, by agreement between the Assured and Underwriters in this Policy, is and shall be valued at **Per Form** Dollars.

## AMOUNT INSURED HEREUNDER

**Per Form** Dollars.

## DEDUCTIBLE

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue and Labor Clause and claims under the Collision Liability Clause) arising our of each separate accident, the sum of **$ 10,000.** unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply.

A recovery from other interests, however, shall not operate to exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same accident shall be treated as due to that accident and (b) all heavy weather damage, or damage caused by contact with floating ice, which occurs during a single sea passage between two successive ports shall be treated as though due to one accident.

## PREMIUM

The Underwriters to be paid in consideration of this insurance $ **Per Form** Dollars being at the rate of **Various** per cent., which premium shall be due on attachment. If the Vessel is insured under this Policy for a period of less than one year at pro rata of the annual rate, full annual premium shall be considered earned and immediately due and payable in the event of Total Loss of the Vessel.

## RETURNS OF PREMIUM

**Premium returnable as follows:**

~~Pro rata daily net in the event of termination under the Change of Ownership clause;~~

~~Pro rata monthly net for each uncommenced month if it be mutually agreed to cancel this Policy;~~

~~For each period of 30 consecutive days the Vessel may be laid up in port for account of the Assured.~~

~~N/A cents per cent net not under repair, or~~

~~N/A cents per cent net under repair;~~

~~provided always that:~~

~~(a) a Total Loss of the Vessel has not occurred during the currency of this Policy;~~

~~(b) in no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved by the Underwriters;~~

~~(c) in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly;~~

~~(d) in no case shall a return be allowed when the Vessel is used as a storage ship or for lightering purposes.~~

~~If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such proportion of the return due in respect of a full period of 30 days, as the number of days attaching hereto bears to 30. Should the lay-up period exceed 30 consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable.~~

## NON-PAYMENT OF PREMIUM

In event of non-payment of premium 30 days after attachment, or of any additional premium when due, this Policy may be cancelled by the Underwriters upon 10 days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy. Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable. In the event of Total Loss

of the Vessel occurring prior to any cancellation or termination of this Policy full annual premium shall be considered earned.

**ADVENTURE**

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except as is customary of when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters. The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching, leaving or alongside the Vessel.

The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

**PERILS**

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon.

**ADDITIONAL PERILS (INCHMAREE)**

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following:

Accidents in loading, discharging or handling cargo, or in bunkering;

Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons;

Explosions on shipboard or elsewhere;

Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);

Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel;

Contact with aircraft, rockets or similar missiles, or with any land conveyance;

Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder;

Negligence of Masters, Officers, Crew or Pilots;

provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

**DELIBERATE DAMAGE (POLLUTION HAZARD)**

Subject to the conditions of this Policy, this insurance also coves loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard of threat. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

**CLAIMS (GENERAL PROVISIONS)**

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters, and:

(a) where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire;

(b) the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the actual additional expense of the voyage arising from compliance with the Underwriters' requirement);

(c) the Underwriters shall have the right of veto in connection with any repair firm proposed;

(d) the Underwriters may take tenders, or may require in writing that tenders be taken for the repair of the Vessel, in which event, upon acceptance of a tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent per annum on the amount insured, for each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the Underwriters' approval.

Due credit shall be given against the allowances in (b) and (d) above for any amount recovered:

(1) in respect of fuel, stores, and wages and maintenance of the Master, Officers or Crew allowed in General or Particular Average;

(2) from third parties in respect of damages for detention and/or loss of profit and/or running expenses;

for the period covered by the allowances or any part thereof.

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers or Crew, except when incurred solely for the necessary removal of the Vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and maintenance will be allowed only while the Vessel is under way. This exclusion shall not apply to overtime or similar extraordinary payments to the Master, Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea.

General and Particular Average shall be payable without deduction, new for old.

The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found.

No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom.

In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the Assured has assumed responsibility, claims shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less.

No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period of the Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the Vessel on that date if undamaged by such perils.

## GENERAL AVERAGE AND SALVAGE CHARGES

General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1950 or 1974 or with the Laws and Usages of the Port of San Francisco. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners of the cargo, General Average shall be paid accordingly.

In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the same Owners or Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the manner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this Policy.

When the contributory value of the Vessel is greater than the Agreed Value herein , the liability of the Underwriters for General Average contribution (except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which the amount insured hereunder bears to the contributory value, and if, because of damage for which the Underwriters are liable as Particular Average, the value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears to the contributory value.

**TOTAL LOSS**

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately under the Sue and Labor clause.

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been given or not.

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this Policy.

**SUE AND LABOR**

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in, and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

~~**COLLISION LIABILITY**~~

~~And it is further agreed that:~~

~~(a) if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their proportionate part of the Agreed Value;~~

~~(b) in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or proceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.~~

~~When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels becomes limited by law, claims under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in Ascertaining the balance or sum payable by or to the Assured in consequence of such collision.~~

~~The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or~~

~~charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of Hull Underwriters interested: the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding.~~

~~Provided always that this clause shall in no case extend to any sum which the Assured or the Surely may become liable to pay or shall pay in Consequence of, or with respect to:~~

~~(a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;~~

~~(b) injury to real or personal property of every description;~~

~~(c) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;~~

~~(d) cargo or other property on or the engagements of the Vessel;~~

~~(e) loss of life, personal injury or illness.~~

~~Provided further that exclusions (b) and (c) above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (c) above.~~

## PILOTAGE AND TOWAGE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners when the Assured or the agent of the Assured accepts such contract in accordance with established local practice.

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured:

(a) to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or

(b) to indemnify those providing the pilotage or towage services against loss or liability for any such damages.

it is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement. Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations.

## CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, it the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, Management, charter, requisition or classification; provided, however, that:

(a) if the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if Required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast;

(b) in the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer.

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the time of change or transfer and any deferred automatic termination, the Underwriters shall be surrogated to all of the rights of the Assured against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount insured hereunder bears to the Agreed Value.

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, and it shall not apply to any internal changes within the offices of the Assured.

## ADDITIONAL INSURANCES

It is a condition of this Policy that no additional insurance against the risk of Total Loss of the Vessel shall be effected to operate during the currency of this Policy by or for account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enumerated in the following Sections (a) to (g), inclusive, and no such insurance shall be subject to P.P.I., F.I.A or other like term on any interests whatever excepting those Enumerated in Section (a); provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge or such breach:

(a) Disbursements, managers' commissions, profits or excess or increased value of hull and machinery, and/or similar interests however described, and freight (including chartered freight or anticipated freight) insured for time. An amount not exceeding in the aggregate 25% of the agreed value.

(b) Freight or hire, under contracts for voyage. An amount not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this Section shall be reduced, as the freight or hire is earned, by the gross amount so earned. Any freight or hire to be earned under the form of Charters described in (d) below shall not be permitted under this Section (b) if any part thereof is insured as permitted under said Section (d).

(c) Anticipated freight if the vessel sails in ballast and not under charter. An amount not exceeding the anticipated gross freight on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section (b).

(d) Time charter hire or charter hire for series of voyages. An amount not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months. Any amount permitted under this Section shall be reduced as the hire is earned under t he charter by 50% of the gross amount so earned but, where the charter is for a period exceeding 18 months, the amount insured need not be reduced while it does not exceed 50% of the gross hire still to be earned under the charter. An insurance permitted by this Section may begin on the signing of the charter.

(e) Premiums. An amount not exceeding the actual premium of all interest insured for a period not exceeding 12 months (excluding premiums insured as permitted under the foregoing Sections but including, if required, the premium or estimated calls on any Protection and Indemnity or War Risks and Strikes insurance) reducing pro rata monthly.

(f) Returns of Premium. An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under any policy of insurance.

(g) Insurance irrespective of amount against: - Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the American Institute War Risks and Strikes Clauses; and General Average and Salvage Disbursements.

## WAR, STRIKES AND RELATED EXCLUSIONS

**The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy.**

**This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:**

**(a) Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or**

**(b) Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or**

**(c) Any mine, bomb or torpedo not carried as cargo on board the Vessel; or**

**(d) Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter; or**

**(e) Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or**

**(f) Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power; or**

**(g) Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related**

Exclusions clause; or

(h) Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (h) not to exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, military or air forces in association with a power.

If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above Conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.

ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.

***American Institute***
**S.R. & C.C. Endorsement (Hulls)** **87 B-46**
**September 8, 1959** **(Revised)**

To be attached to and form a part of Policy No. **MASI HNW 000717 16** of **Starr Indemnity & Liability Company**

Insuring **Blanchard Contractors, Inc.**

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after **12:01 a.m. October 1, 2016** in accordance with the following clause: -

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusions in the F. C. & S. Clause in the within policy "vandalism", "sabotage", and "malicious mischief", as used herein, shall be construed to include willful or malicious physical injury to or destruction of the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay, for the additional protection afforded by the above clause, an additional premium of **Per Form** percent. The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters. The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

Policy No.: **MASI HNW 00717 16**

## HULL INSURANCE SPECIAL CONDITIONS

### AUTOMATIC ACQUISITION CLAUSE

Subject to all terms and conditions, this Policy is automatically extended to cover other Vessels or floating equipment in which the Assured acquires an insurable interest through purchase, charter, or otherwise and are similar in description and type to those already insured hereunder.

Such vessels and/or floating equipment to be valued, unless otherwise agreed, at the amounts fixed between the Assured and those from whom they made the acquisition prior to attachment hereunder. Notwithstanding the above, Underwriters shall not be liable for values in excess of **$1,000,000.** Warranted 30 day reporting

### PRIVILEGE TO CHARTER

Privilege is granted the Assured to charter the insured vessels as occasion may require. While the insured vessels are bareboat or demise chartered to others (other than named insureds hereunder) insurance hereunder is suspended for the period of charter.

### RELEASED TOWAGE CONTRACTS

Permission is granted the Assured to enter into released or limited liability contracts of towage usual to the river operations.

### UNREPAIRED DAMAGE

In no case shall these Assurers be liable for unrepaired damage in addition to a subsequent total or constructive total loss sustained during the period covered by this policy.

### DELIBERATE DAMAGE CLAUSE

The attached American Institute Deliberate Damage Clause is added to this policy. In consideration of premium paid it is understood and agreed that, subject to the terms and conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

### TOTAL LOSS

In the event of a total or constructive total loss to a vessel insured hereunder, the full annual premium shall be deemed fully earned and payable immediately.

**POLLUTION EXCLUSION**

Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water.

**EXTENDED ADVENTURES AND PERILS**

It is especially understood and agreed that the **Adventures Clause** in this Policy shall be interpreted to include the following perils which shall in no event be construed to limit the basic coverage provided thereunder.

Loss or damage howsoever caused by theft, flood, cloudburst, tidal action, rising water, ice, or other storm, tempest, tornado, windstorm, landslide, falling object, upset, capsizing, overturn, pillage, looting and/or blowout or cratering, as these latter two terms are known in the oil industry and other perils incidental to the drilling and production of oil wells.

**ALTERATIONS AND REPAIRS**

Whenever any of the vessel(s) named herein during the currency of this policy are undergoing repairs, alterations, building, rebuilding, outfitting or overhauling by any recognized ship repairer or builder, this policy shall pay for physical loss or damage only to the vessel(s) named herein to the extent of any peril not recoverable hereunder that is recoverable under the terms of the American Institute Builders Risk Form (13L) February 8, 1979, subject, however, to the policy's termination, deductible average, agreed valuation and amount insured hereunder.

It is understood and agreed however that should the Assured agree with the ship repairer that the shipyard is to carry Builders (Repair) Risk Insurance for the account of the Assured, then this insurance shall not apply to the extent that any recovery is available under such Builders (Repair) Risk Insurance provided always that the claim is otherwise covered by this policy.

**BREACH OF WARRANTY**

Effective **Inception**, it is hereby understood and agreed to include the following:

**BREACH OF WARRANTY**

In consideration of the premium charged, it is noted and agreed that with respect to Hull and Machinery, coverage is extended to insure only the interests of Mortgagees shown below as an Innocent Mortgagee of the applicable Vessels shown below, against the non-payment of hull claims hereunder for loss, damage or expense arising during the term of this Policy, which non-payment arises only from an act of or omission by the Assured(s) named hereunder, which caused a breach of warranty, expressed or implied in this Policy, provided, however, this extension shall not apply:

a. to any loss or claim as a result of any deductible;
b. to any amount in excess of the mortgaged amount stated hereunder or the maximum interests of the Morgagee whichever amount shall be the least;
c. any loss or claim arising out of any insolvency of the other Assureds hereunder.

Provided further that upon payment of a claim by Underwriters under this extension, Underwriters shall be subrogated to all the rights of Mortagagees.

There shall be no recourse against Mortgagees for payment of premiums or commission hereunder.

In the event of cancellation or material change in the Policy, Underwriters will give thirty (30) days prior written notice to the Mortgagees listed below.

| VESSEL | MORTGAGE AMOUNT | MORTGAGEE |
|---|---|---|
| MISS ANGEL<br>BARGE #4 (CM-106)<br>BLANCHARD 1<br>MRS. ROSIE<br>MISS RAVEN (A&S MARINE)<br>ALY B (A&S MARINE)<br>SAVANNAH B (A&S MARINE)<br>ALY/SAVANNAH (A&S MARINE)<br>CONTENDER 32' W/TRAILER<br>A&S 1 (A&S MARINE)<br>MR. TRAVIS | [redacted] | [redacted]<br>Email: [redacted] |

# SECTION B

# PROTECTION & INDEMNITY

**P&I**
**1955** **SP – 38**

# PROTECTION AND INDEMNITY CLAUSES

Assured **Blanchard Contractors, Inc.**

Address **Per Porm**

Loss, if any, payable to **Per Form**

From the 1st day of **October** 20**16** Beginning and ending
Until the 1st day of **October** 20**17** at 12:01 a.m. Local Standard Time at place of issuance.

Amount hereby insured $ **$1,000,000.** Rate **Per Form** % Premium $ **Per Form**
In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 hereof, such sums as the assured, as owner of the **Per Form** shall have become legally liable to pay and shall have paid on account of:

Loss of life of, or injury to, or illness of, any person;

Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of any member of the crew of the vessel named herein;

Loss of, or damage to, or expense in connection with any fixed or movable object or property of whatever nature;

Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the assured;

Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or of any state thereof, or of any foreign country; provided, however, that this Company shall not be liable to indemnify the assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws;

Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the assured arising out of a liability or an alleged liability of the assured covered by this policy.

Notwithstanding the foregoing this Company will not pay for:
The first [redacted] of the claims covered by lines 14, 15, 16, 28, 29 and 30 nor for the first [redacted] of claims covered by any other parts of this policy, but, in no event shall the deductible exceed [redacted] each occurrence. (For the purpose of this Clause, each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)

Loss of, or damage sustained by the vessel named herein or her tackle, apparel, furniture, boats, fittings, equipment, stores, fuel, provisions or appurtenances;

Loss resulting from cancellation of charters, non-collectibility of freight, bad debts, insolvency of agents or others, salvage, general average, detention, loss of use or demurrage of the vessel named herein;

Any loss, damage, expense or claim with respect to any vessel or craft in tow of the vessel named herein and/or cargo thereon; provided this exclusion shall not apply to salvage services rendered in an emergency to a ship or vessel in distress, nor to loss of life and/or injury to, or illness of any person;

Any claim for loss of, damage to, or expense in respect of cargo on board the vessel named herein;

Any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation Act or any workmen's compensation act of any state or nation;

Any liability assumed by the assured beyond that imposed by law; provided however that if by agreement, or otherwise, the assured's legal liability is lessened, then this Company shall receive the benefit of such lessened liability.

Any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms; or sustained or caused by mines or torpedoes or other missiles or engines of war, whether of enemy or friendly origin: or sustained or caused by any weapon of war employing atomic fission or atomic fusion or radioactive material: or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material or war in the immediate zone of such engagement: and any such loss, damage and expense shall be excluded from this policy without regard to whether the assured's liability in respect thereof is based on negligence or otherwise, and whether in time of peace or war.

Any loss, damage, expense or claim collectible under the **American Institute Hull Clauses (June 2, 1977)** form of policy, whether or not the vessel named herein is actually covered by such insurance and regardless of the amount thereof.

Warranted that in the event of any occurrence which could result in a claim under this policy the assured promptly will notify this Company upon receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleadings or other legal papers or documents relating to such occurrence.

Whenever required by this Company, the assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with this Company in the defense of any claim or suit or in the appeal from any judgment.

This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution or defense of any litigation or negotiations between the assured and third parties concerning any claim covered by this policy, and shall have the direction of such litigation or negotiations. If the assured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made. The assured shall at the option of this Company permit this Company to conduct, with an attorney of this Company's selection, at this Company's cost and expense and under its exclusive control, a proceeding in the assured's name to limit the assured's liability to the extent, and in the manner provided by the present and any future statutes relative to the limitation of a shipowner's liability.

Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)

The assured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which this Company may be liable. The assured shall not interfere in any negotiations of this Company, for settlement of any legal proceedings in respect of any occurrence for which this Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the assured is obligated to and shall take such steps to protect his and/or the Company's interest as would reasonably be taken in the absence of this or similar insurance.

Upon making payment under this policy this Company shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the assured shall execute and deliver such instruments and papers as this Company shall require and do whatever else is necessary to secure such rights.

No action shall lie against this company for the recovery of any loss sustained by the assured unless such action is brought within one year after the entry of any final judgment or decree in any litigation against the assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim.

No claim or demand against this Company under this policy shall be assigned or transferred, and no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company.

It is expressly understood and agreed if and when the assured has any interest other than as a shipowner in the vessel named herein, in no event shall this Company be liable hereunder to any greater extent than if the assured were the sole owner and entitled to petition for limitation of liability in accordance with present and future law.

Where the assured is, irrespective of this policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise.

The navigation limits in the policy covering the hull, machinery, etc. of the vessel named herein are considered Incorporated herein.

This insurance shall be void in case the vessel named herein, or any part thereof, shall be sold, transferred or mortgaged, or if there be any change of management or charter of the vessel, or if this policy be assigned or pledged, without the previous consent in writhing of this Company.

Either party may cancel this policy by giving ten days' notice in writing; if at the option of this Company pro rata rates, if at the request of the assured short rates, will be charged - and arrival.

**SPECIAL CONDITIONS - WARRANTIES - ENDORSEMENTS, ETC.**

Attached to and made part of Policy No. **MASI HNW 000718 16** of the **Starr Indemnity & Liability Company**

**AMERICAN INSTITUTE**
POLLUTION EXCLUSION CLAUSE (P&I)
and BUY BACK ENDORSEMENT A
(July 4, 1976)

To be attached to and form a part of Policy No. **MASI HNW 000718 16**
of **Starr Indemnity & Liability Company**
Insuring **Blanchard Contractors, Inc.**

**This Policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.**

---

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF **$Per Form** THE ABOVE POLLUTION EXCLUSION CLAUSE (P&I) SHALL NOT APPLY TO SUMS PAID, OR LIABILITY OF THE ASSURED:

1) For loss of life of, or bodily injury to, or illness of, any person; or,

2) For loss, damage or expense to any cargo or property carried on board the insured Vessel(s); or

3) For loss, damage or expense to any cargo or property on board any other vessel or contained or stored ashore unless such sums are paid, or liability is imposed, as a result of contact of such cargo or property with oil, petroleum products, chemicals or other substances of any kind or nature whatsoever arising in consequence of their sudden and accidental discharge, emission, spillage or leakage upon or into the seas, waters, land or air; or,

4) For contamination of any cargo or property resulting from the pumping of oil, petroleum products, chemicals or any other substances of any kind or nature whatsoever directly into any other vessel, or between tanks of the insured Vessel(s), or into storage tanks or receptacles ashore or elsewhere.

PROVIDED that such sums, or such liability, are insured elsewhere, under the terms and conditions of this Policy. All other terms and conditions, including any deductible provisions, of this Policy shall remain unchanged.

## PROTECTION & INDEMNITY SPECIAL CONDITIONS

### PUNITIVE DAMAGE EXCLUSION

It is understood and agreed that this insurance shall not cover any fines, penalties, punitive damages, treble damages or any other damages resulting from the multiplication of compensatory damages.

### AUTOMATIC ACQUISITION CLAUSE

Subject to all terms and conditions, this Policy is automatically extended to cover other Vessels or floating equipment in which the Assured acquires an insurable interest through purchase, charter, or otherwise and are similar in description and type to those already insured hereunder.

Such vessels and/or floating equipment to be valued, unless otherwise agreed, at the amounts fixed between the Assured and those from whom they made the acquisition prior to attachment hereunder. Notwithstanding the above, Underwriters shall not be liable for values in excess of **$1,000,000.** Warranted 30 day reporting.

### PILOTAGE AND TOWAGE CLAUSE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners when the Assured or the agent of the Assured accepts such contracts in accordance with established local practice:

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured:

a. to assume liability for damages resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel or

b. to indemnify those providing the pilotage or towage services against loss or liability for any such damages.

It is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Section to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement.

Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations but only up to Policy limits.

### CONTRACTUAL LIABILITY EXTENSION

In consideration of the premium charged for which this insurance is written, the coverage afforded under this Policy is extended to insure the liability of the Insured arising out of hold harmless and/or indemnity agreements contained in such contracts as have been or may be entered into by the Insured for the furnishing of vessel services.

## OCCUPATIONAL DISEASE EXCLUSION

It is understood and agreed that this insurance shall not cover any liability, loss, damage or expense as regards bodily injury and/or personal injury (fatal or non-fatal) resulting from occupational disease sustained by any employee of the Assured.

## DIVING EXCLUSION

1) It is hereby understood and agreed that this policy shall not apply to any liability for loss of life, bodily injury, or personal injury to employees of the Assured arising out of diving operations. It is further agreed that this policy shall not apply to any liability for loss of life, bodily injury, or personal injury to employees of the Assured and/or subcontractors of the Assured, arising out of saturation diving operations, while in the course of employment by the Assured.

2) It is further agreed that the Assured will endeavor to preserve all rights against any / all Independent and / or Subcontractors and the Assured shall require said Independent and / or Subcontractors to maintain, in full force and effect, liability insurance with limits at least equal to the limits of this policy. Independent and / or subcontractors shall require their underwriters to name the Assured herein as an Additional Insured and shall waive rights of subrogation against the Assured herein and its Principal. The Liability insurance coverage provided by the Independent or Subcontractor shall be endorsed to designate it to be primary to all other liability insurance issued in favor of the Assured herein and its Principal. For the purposes of this endorsement the "Principal" is defined as any party for whom the Assured is performing work.

   It shall further be a condition of the insurance provided by this endorsement that prior to any such Independent and / or Subcontractor beginning work for the Assured, the Assured shall require the Independent and / or Subcontractor to provide proof of the insurance required by this endorsement. The Independent and / or Subcontractor shall also require their underwriters to provide the Assured with thirty (30) days written notice prior to cancellation or material change of this insurance.

## SPECIAL JONES ACT

It is understood and agreed that this policy, subject to its terms and conditions, is extended to cover the Assureds' liability for loss of life and personal injury arising out shore side employees (i.e., Assureds' employees not specifically assigned as a crew member on board vessels owned or not owned by the Assured) carrying out their duties on board vessels owned by others than the Assured.

This clause excludes claims recoverable under any State Workers' compensation Acts or claims recoverable under the Federal Longshoremen's and Harbor Workers' Act.

Such coverage as defined above shall be subject to the deductible provision of this policy, subject always to the limit of liability clause of this policy, which is hereby deemed paramount to anything herein contained to the contrary; and deductible shall not reduce underwriter's liability hereunder.

## COLLISION AND/OR TOWERS' LIABILITY

It is agreed that if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, thereof or to the property on board, and the Assured or the Surety, in consequence of the insured vessel

being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such sum or sums so paid as our subscriptions hereto bear the limit of liability hereby insured provided always that our liability in respect of any one such casualty shall not exceed or proportionate part of the liability in respect of any one such casualty shall not exceed or proportionate part of the limit of liability hereunder. And in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability, with our consent in writing, of contested or proceedings have been taken to limit liability, with our consent in writing, of the majority (in amount) of the Underwriters of the Hull and Machinery, we will also pay a like proportion of the costs, which the Assured shall thereby incur or be compelled to pay; but when both Vessels are to blame, then, unless the liability of the owners of one or both of such Vessels becomes limited by law, claims under the collision and tower's liability clause shall be settled on the principle of cross liabilities, as if the owners of each Vessel had been compelled to pay to owners of the other of such Vessels such one-half or other proportion of the latter's damage as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such casualty. It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the Vessels involved are the property, in part or in whole, of the same Assured, all questions or responsibility and amount of liability as between such vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators one to be appointed by the Assured, and one to be appointed by the majority (in amount) of Hull Underwriters interested, the two Arbitrators so chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single or any two of such three Arbitrators, appointed as above, to be final and binding.

It is agreed that wherever the words "our proportionate part of the value of the Vessel hereby insured" appear in the preceding clauses, the words "the limit of liability hereunder" shall be substituted therefore, and wherever the words "majority (in amount) of Hull Underwriters" appear in the preceding clause, the words "the Underwriters" shall be substituted therefore.

It is agreed that wherever the words "Agreed Value" appear in the preceding standard clauses, the words "Limit of Liability Hereunder" shall be substituted therefore.

Provided always that this clause shall in no case extend to any sum which the Assured or Surety may become liability to pay or shall pay for removal of obstruction under statutory power, or for loss of life or personal injury. And provided also that in the event of any claim under this clause being made by anyone other than the Owners of the vessel hereby insured, he shall not be entitled to recover in respect of any liability to which the Owners of the Vessel as such would not be subject, nor to a greater extent that the Owners would be entitled in such event to recover.

## COMBINED SINGLE LIMIT

It is understood and agreed that the Assurer's limit of liability under this section shall not exceed **$1,000,000** each accident or occurrence, regardless of the number of vessels involved. Any applicable deductible amount is to be included within the aggregate limit amount.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED**

**AIMU** 23A

Protection and Indemnity (P and I) Clauses
Cargo Liability Endorsement
June 2, 1983

ENDORSEMENT to be attached to and made part of Policy No. **MASI HNW 000718 16** of **Starr Indemnity & Liabiltiy Company**

In consideration of the payment of an additional premium of $Per Policy....., and subject to the limit of liability, the deductible amount for claims other than for loss of life, bodily injury or illness, the exclusions, the conditions and the other terms of this Policy, this Policy is hereby extended to indemnify the Assured for any sum which the Assured, as owner of the Vessel shall have become liable to pay and shall have paid, in respect of any claim for loss, damage or expense in respect of cargo, including baggage and personal effects of passengers, on board the Vessel, carried, to be carried, or which had been carried on board the Vessel SUBJECT ALSO to the Special Limits of Liability herein- after provided.

The underwriters expressly agree to indemnify the Assured for any sums which the Assured is unable to recover As cargo's proportion of general average, salvage charges and special charges from any other source PROVIDED that Cargo's proportion shall be determined as if the contract of carriage or charter party contained the New Jason Clause.

**EXCLUSIONS**

Notwithstanding anything to the contrary contained in this Endorsement, the Underwriters shall not be required to indemnify the Assured for any liability for, or any loss, damage or expense arising out of or in connection with

a) The custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to by the Underwriters and accepted for transportation under a form of contract approved in writing by the Underwriters.

b) The custody, care, carriage or delivery of mail and parcel post.

c) The custody, care, carriage or delivery of any cargo requiring refrigeration, unless the space, apparatus and means used for such care, custody, carriage and delivery thereof have been surveyed under working conditions by a classification surveyor or other competent disinterested surveyor before the commencement of each round voyage and found in all respects fit, and unless the said cargo be accepted for transportation under a form of contract approved in writing by the Underwriters.

d) The stowage of under deck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that he has taken every reasonable precaution to prevent such stowage.

e) Any deviation not authorized by the contract of affreightment, and known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Underwriters who agree in writing that such other insurance is unnecessary.

f) The refund of, or inability to collect, freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

g) The issuance of Bills of Lading or similar documents of title which, to the knowledge of the Assured, improperly describe the goods, their condition or quantity, their packing or their containers.

h) The delivery of cargo without surrender of Bills of Lading or similar documents of title.

i) Any unlawful act of the Assured or conversion of cargo or other property by the Assured.

**SPECIAL LIMITS OF LIABILITY**

It is specially further agreed and understood that under this Endorsement and subject always to the limit of liability of the Policy to which this Endorsement is attached,

A) with respect to cargo, not property of the Assured, carried by the Vessel, the liability of the Underwriters shall be limited:

(i) to the minimum liabilities and obligations imposed upon the Assured by the U.S. Carriage of Goods by Sea Act, April 16, 1936, regardless of whether the carriage is subject to the said Act,

and,

(ii) as may be reduced by any other lawful protective clauses commonly in use in the particular trade in which the Vessel is engaged,

regardless of whether the Assured or the Vessel assumes any greater liabilities or obligations;

B) with respect to cargo, property of the Assured, carried by the Vessel, the liability of the Underwriters shall be limited:

(i) as hereinbefore provided under the preceding clauses A(i) and A(ii),

(ii) subject however to reduction by the amount which would be recoverable for the loss under the usual form of All Risks Cargo Policy if fully insured,

(iii) regardless of whether such Policy had been obtained;

C) with respect to baggage and personal effects carried by the Vessel, the liability of the Underwriters shall in no event exceed the lesser of that which would be imposed upon the Assured in the absence of contract or that provided in the contract between the owner of the property and the Assured or Vessel.

All other terms and conditions remain unchanged.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED SIGNATURE