UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE CO. AND EXCESS UNDERWRITERS SUBSCRIBING SEVERALLY TO POLICY NO. TMU-407387 | CIVIL ACTION |
| | NO.  17-CV-9318 |
| PLAINTIFF, V. | JUDGE ELDON E. FALLON |
| PHILLIPS 66 COMPANY | MAGISTRATE JANIS VAN MEERVELD |
| DEFENDANT. | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PHILLIPS 66 COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Phillips 66 Company ("P66") submits this Supplemental Memorandum in further support of its Motion for Partial Summary Judgment (Document 20) that La. R. S. 9:2780.1 does not invalidate the indemnity and insurance provisions in the November 17, 2016 Master Services Agreement ("MSA").

In its original Motion and Memorandum in Support (Documents 20 and 20-3), P66 shows how the plain language of La. R.S. 9:2780.1(E) and the exception to the definition of "construction contract" in La. R.S. 9:2780.1(A)(2)(b)(ii) make clear that 9:2780.1 cannot apply to the MSA.  The law set forth in the original Motion and Memorandum is a simple and direct way of demonstrating the inapplicability of 9:2780.1 to the MSA at issue here since it is clear the "co-mingled for transportation" exception of 9:2780.1(A)(2)(b)(ii) applies regardless of how the pipeline is technically characterized.

1

This Supplement demonstrates ***separate and independent*** additional reasons why, as a matter of statutory construction, La. R.S. 9:2780.1 does not invalidate the MSA provision at issue.  Quite simply, the MSA at issue here does not even fit within the definition of "construction contract" in La. R.S. 9:2780.1(A)(2)(a).  First, the language of this provision is directed toward the "construction" industry and cannot fairly be read to be directed toward the pipeline transportation industry.  Second, the pipeline on which the MSA work was being performed is not a "gas line."  The pipeline at issue here is defined and regulated under Louisiana law as a "hazardous liquids pipeline" and it is *not* defined or regulated as a "gas" or "natural gas" pipeline.

For these additional and independent reasons, the MSA at issue does not fall within 9:2780.1 as a matter of law.

**A.**      **9:2780.1(A)(2)Aa) does not apply to pipeline transportation contracts**.

Because Atlantic Specialty is seeking to invalidate a contractual indemnity provision, it has the burden of proving that 9:2780.1 applies to the contract at issue and operates to invalidate the indemnity provisions in it.  The initial hurdle for applicability of the statute is to prove that the MSA is a "construction contract" as that term is defined in 9:2780.1.  If it is not, then the statute does not apply regardless of whether the exceptions to the definition of "construction contract" apply.

The term "construction contract" is defined in 9:2780.1(A)(2)(a) as follows:

"Construction contract" shall mean any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the

instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property.

What is apparent from this definition is that the language, as a whole, does not evince a clear intent to apply specifically to pipeline transportation. The words "pipeline" and "transportation" nowhere appear in this definition.  Instead, the language is aimed at the "construction" industry and "improvements to real property," including associated "highways, roads, or bridges."  The statute should be interpreted as a whole in this light.  In real property improvement construction contracts, the scope of work often includes the necessary appurtenances to the building or structure being constructed – such as the water lines, sewer lines, and gas lines to the building and associated access roads or bridges, etc.  The word "line" is *not* synonymous with the words "pipeline" or "transportation pipeline" as is apparent from the simple fact that a line supplying natural gas to a building is not generally considered a "transportation pipeline."

Nothing in the language of 9:2780.1(A)(2)(a) suggests the focus is on pipeline transportation.  Indeed, the specific issue of pipeline transportation in the context of mineral production is specifically within the scope of a *different* statute, namely, La. R.S. 9:2780 (the Louisiana Oilfield Anti-indemnity Act).  And, as noted in P66's original Memorandum in Support, La. R.S. 9:2780.1(E) makes it clear that the legislature did ***not*** intend for 9:2780.1 to "add to", "alter" "amend" or "affect" the provisions of 9:2780.  The express intent of the legislature set forth in 9:2780.1(E) must be considered when interpreting the scope of the definition of "construction contract" in 9:2780.1(A)(2)(a).

Additionally, 9:2780.1(A) defines two types of contracts to which it applies: "construction contracts" and "motor carrier transportation contracts."  If the legislature had intended to include *pipeline transportation* within the anti-indemnity scope of 9:2780.1, why did

3

it limit 9:2780.1(A)(1) just to "*motor carrier*" transportation contracts?  Why not have it apply to

"transportation contracts" and include "motor carriers" and "pipeline carriers"?  Why place a

limitation on "transportation contracts" within the section on "construction contracts"?  It would

be a strained interpretation, indeed, to read into 9:2780.1(A)(2)(a) "pipeline transportation"

when, by its own language, this provision is limited to "construction" contracts, and when the

only "transportation" contracts mentioned in the statute are limited solely to "motor carrier"

transportation contracts.

      **B.**      **The VP01 Pipeline is *not* a "gas line"**

Even if 9:2780.1(A)(2)(a) is interpreted very broadly to include "gas transportation

pipelines" – which it should not be --  it still does not apply to the Pipeline at issue here.   In the

Declaratory Judgment Complaint, Atlantic Specialty alleges that 9:2780.1 applies because the

Pipeline at issue is a "gas line" pursuant to La. R.S. 9:2780.1(A)(2)(a).[1]  La. R.S. 9:2780.1 does

not define the term "gas line" so the statute is inherently vague.[2]  But, the Pipeline at issue here

is a regulated intrastate pipeline, and under the regulations that apply to it, the Pipeline is clearly

and unambiguously ***not*** defined or regulated as a "gas" pipeline.  It is defined and regulated as a

"hazardous liquids" pipeline, which is a regulatory definition and category ***separate and distinct***

from "gas pipelines" or "natural gas pipelines."

The Pipeline is an intrastate pipeline regulated by the Louisiana Department of Natural

Resources ("DNR") as set forth in Title 30 of the Louisiana Revised Statutes.  The regulation of

intrastate natural gas pipelines falls within La. R.S. 30:501, *et seq.*  The term "gas" is defined in

---

[1] See Ex. A, Atlantic Specialty's Answer to Interrogatory No. 4 claiming that the statute applies as an agreement "for the maintenance of gas pipelines."

[2] The lack of any definitions of key terms, such as "gas line," is yet another aspect of the statute's inherent vagueness.

R.S. 30:503 as "any gas derived from or composed of hydrocarbons, including synthetic gas which is produced from coal, lignite, or petroleum coke and the heat content of which synthetic gas does not exceed 800 BTUs per standard cubic foot."  DNR regulations implementing its authority under R.S. 30:503 to regulate gas pipelines define "gas" as "natural gas, flammable gas, or gas which is toxic or corrosive."[3]  It is indisputable that the unfractionated Raw Product/Y-Grade NGL that was being transported in the Pipeline is *not* included within either of these definitions of "gas" because it is a ***liquid***, not a gas, and it is not "natural gas."[4]

In fact, Louisiana pipeline laws and regulations define and regulate Raw Product/Y-grade NGL as a "hazardous liquid" and not as a "gas" or "natural gas."  The Louisiana regulations pertaining to the "transportation of hazardous liquids by pipeline" are contained in Title 33 of the Louisiana Administrative Code, as opposed to Title 43 which pertains to the regulation of "gas" pipelines.  *See*, La. Admin. Code Title 33, Part V, §30103, *et seq*.  "Hazardous liquid" is defined as "petroleum, petroleum products, or anhydrous ammonia," and the term "petroleum" is defined broadly to include "natural gas liquids."  La. Admin. Code Title 33, Part V, §30105.  Therefore, the Pipeline at issue here is regulated as a "hazardous liquid" pipeline and *not* as a "gas" pipeline.   This liquids pipeline is regulated under a completely different regulatory scheme than are gas pipelines.

The undisputed fact that the Pipeline at issue is *not* defined or regulated as a "gas" pipeline is demonstrated by the "Pipeline Failure Investigation Report" *prepared by* DNR with respect to this particular accident.[5]  On page 2 of the Report is the section entitled "Type of

---

[3] *See* La. Admin. Code Title 43, part XIII, §303.

[4] NGLs, or Y-grade hydrocarbons, are liquids condensed from a hydrocarbon stream and are kept in a liquid state for storage, transportation, and consumption.

[5] *See* Ex. B.

Pipeline," and it lists the 4 separate types of pipeline that could apply: "Gas Distribution," "Gas Transmission," "Hazardous Liquids," and "LNG." The Pipeline at issue here is identified and defined as a "Hazardous Liquid" pipeline, and it is ***not*** identified or defined as either type of "Gas" pipeline. Therefore, the Pipeline at issue is simply not a "gas line" and does not fall within the definition of "construction contract" in 9:2780.1(A)(2)(a), and 9:2780.1 simply does not apply at all.

For these reasons, as well as those set forth in P66's original Memorandum in Support, P66 prays that this Court grant its Motion for Partial Summary Judgment and issue a judgment declaring that La. R. S. 9:2780.1 does not apply to any provision in the November 17, 2016 Master Services Agreement.

By Attorneys:

*/s/Glenn M. Farnet*
Glenn M. Farnet (#20185) [Lead Attorney]
glenn.farnet@keanmiller.com
John F. Jakuback (#21643)
john.jakuback@keanmiller.com
Michael deBarros (#32422)
michael.debarros@keanmiller.com
Kean Miller LLP
400 Convention St., Suite 700
Baton Rouge, LA 70802
Telephone: 225-387-0999
Facsimile: 225-388-9133

***Counsel for Phillips 66 Company***

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this ____*31*<sup>th</sup>____ day of May, 2018.


_____*/s/Glenn M. Farnet*_____
Glenn M. Farnet

7