UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE CO. AND EXCESS UNDERWRITERS SUBSCRIBING SEVERALLY TO POLICY NO. TMU-407387<br><br>Plaintiff,<br><br>v.<br><br>PHILLIPS 66 COMPANY,<br><br>Defendant. | CASE NO. 17-cv-9318<br><br>JUDGE: ELDON E. FALLON<br><br>MAG.: JANIS VAN MEERVELD |

**PHILLIPS 66 COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (REC. DOC. 21)**

Atlantic Specialty Insurance Company's ("Atlantic") opposition to Phillips 66 Company's ("Phillips 66") motion for summary judgment on the duty to defend rests on the following erroneous assertions:

(1) The MSA "is explicit that additional insured status is contingent on indemnity" owed by Blanchard to Phillips 66;

(2) The issue of whether 9:2780.1 applies is a purely legal issue that does not depend on any facts for its resolution;

(3) "An insurer owes a duty to defend if the facts, once proven, would result in coverage;" and

(4) The MSA is void.

***First***, there is nothing in the MSA which states that Phillips 66 is an additional insured "only if Blanchard owes Phillips 66 indemnity under this Agreement." Instead, the MSA provides that Phillips 66 is an additional insured "to the extent of the risks and liabilities assumed by [Blanchard] under this Agreement."[1] Thus, the pertinent question is "*What risks and liabilities did Blanchard assume under the MSA*?" The answer to that question is found in Section 18.1.2 of the MSA, which requires Blanchard to assume Phillips 66's liability for any and all causes of action, claims, suits, losses, liabilities, fines, penalties, costs, damages, judgments, awards and expenses arising out of or related in any way to Personal Injury of the Employees or officers of Blanchard arising out of or occurring in connection with a Service Order[2] – *i.e.*, the *Calloway* and *Jambon* suits. Accordingly, Atlantic's position that Phillips 66's additional insured status is contingent on the indemnity owed by Blanchard is simply incorrect.[3]

***Second***, the issue of whether 9:2780.1 applies in this case is a question that depends on both law and fact for its resolution.[4] To prevail on their assertion that 9:2780.1 applies in this case, Atlantic and Blanchard must prove, *inter alia*, that:

---

[1] Rec. Doc. 21-5, **Exhibit A-1**, MSA, at Section 19.4.

[2] *Id.*, at Section 18.1.2.

[3] Atlantic's position is not only contrary to the express terms of the MSA, but it produces absurd results and must be rejected. La. C.C. art. 2046; *Ainsworth v. Ass'n Life Ins. Co., Inc.*, 325 So.2d 708, 711 (La. Ct. App.1976) ("A proposed interpretation of contractual language which would lead to absurd consequences must be rejected as unreasonable."). Just like the MSA, Atlantic's Policy restricts a party's additional insured status "to the extent of the risks and liabilities assumed" by Blanchard. *See* Rec. Doc. No. 21-7, **Exhibit B**, Policy, at p. 32. Thus, if Atlantic's position were accepted, an additional insured could **never** receive a defense under the Policy because the additional insured must always await an adjudication of the Named Insured's indemnity obligation (which, under well-settled Louisiana law, cannot be determined until a determination of liability has been made). *See Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987); *New England Ins. Co. v. Barnett*, 2012 WL 715261, at *5 (5th Cir. 2011).

[4] Nevertheless, Phillips 66 is entitled to a summary judgment that the 9:2780.1 does not apply in this case because: (1) there is no genuine issue of material fact and, based on the undisputed facts, the LAIA cannot apply; and (2)

(1) The VP01 Pipeline falls within the definition of a "construction contract";[5] and

(2) The VP01 Pipeline does not fall within the "commingled for transportation" exception of 9:2780.1(A)(2)(b)(ii).

Thus, Atlantic's assertion that application of 9:2780.1 is purely a question of law is wrong because, by its terms, certain facts must be established for the statute to apply.

As the Louisiana Supreme Court made clear long ago, **an insurer's duty to defend is not dependent on facts beyond the petition**.[6] Thus, while Atlantic attempts to shirk its duty to defend by relying on its ***unproven assertion*** that the MSA is invalid and on ***alleged facts beyond the Calloway and Jambon petitions***, "the duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[7] There is no question that the *Calloway* and *Jambon* petitions disclosed a possibility of liability under Atlantic's Policy. Thus, Atlantic owed Phillips 66 a defense.

---

Atlantic and Blanchard failed to produce admissible evidence to carry their burden of establishing that 9:2780.1 applies.

[5] La. R.S. 2780.1(A)(2)(a).

[6] *Vaughn v. Franklin*, 785 So.2d 79, 85 (La. App. 1st Cir. 2001)("[W]e believe that the broad language of [*American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969)] **does not allow us to look beyond the allegations of the petition**. The eight-corners rule, which is well established in Louisiana jurisprudence, makes no exception for defenses inconsistent with coverage. Thus, we are constrained by *Czarniecki* to hold that the trial court was legally correct in finding St. Paul had a duty to defend Hernandez and Callegan."); *Lexington Ins. Co. v. St. Bernard Par. Gov't*, 548 Fed. Appx. 176, 180 (5th Cir. 2013) ("An insurer's duty to defend suits on behalf on an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case. The former is governed by the 'Eight Corners Rule,' in which the allegations of the underlying complaint are applied to the policy, **without resort to extrinsic evidence**, to determine whether the pleadings against the insured disclose a *possibility of liability* under the policy.") (citations omitted, emphasis added). As such, Phillips 66 objects to the consideration of any documents beyond the Policy, the petitions, and the MSA (which is referenced in the Policy) in determining Atlantic's duty to defend.

[7] *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 9/7/16), 200 So.3d 277, 282.

***Finally***, Atlantic's reliance on *Aucoin v. Pelham Marine, Inc.*, 593 F. Supp. 770 (W.D. La. 1984) is misplaced. While *Aucoin* did find that an insurer's duty to defend was invalidated by the Louisiana Oilfield Indemnity Act (La. R.S. 22:2780), no other Courts have followed *Aucoin's* ruling on that issue; the ruling has no precedential value and is not binding on this Court; the party claiming coverage in that case did not object to the use of extrinsic evidence in determining the insurer's duty to defend (as Phillips 66 does herein); the *Aucoin* Court found, as a factual and legal matter, that La. R.S. 22:2780 applied; and *Aucoin* was decided without the benefit of *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987), which recognized a significant and fundamental distinction between an insurer's duty to defend and an indemnitor's duty to defend:

> Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And **the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense *unless the petition unambiguously excludes coverage***.
>
> An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. A cause of action under a liability insurance policy accrues when the liability attaches. However**, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy**. On the other hand, **an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss**. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid.[8]

[8] *Meloy*, 504 So. 2d at 839 (emphasis added and citations and footnotes omitted). The contract at issue in *Meloy* provided not only for indemnity, but went further to provide that, "Contractor further agrees to have any such claim, demand, or suit investigated, handled, responded to and defended at no cost to Company ... even if such claim, demand or suit is groundless, false or fraudulent." *Id.*, at 836, n. 4.

Therefore, unlike Blanchard's duties under the MSA, which are contingent on the outcome of the lawsuits against Phillips 66, Atlantic's duty to defend Phillips arose as soon as the pleadings "disclose[d] even a possibility of liability under the policy."[9]

Phillips 66 is entitled to a summary judgment on Atlantic's duty to defend since the determination of whether an insurer owes a duty to defend is made at the outset of the litigation.[10] It is not determined in hindsight. The simplicity of this test is mandated by the nature of the duty to defend:

> An insured obtains liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation. If the courts did not impose an immediate defense obligation upon a showing of a 'potential for coverage,' thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit.[11]

More simply put, an insurer cannot refuse to defend on the basis of an ***unproven assertion*** that relies on ***facts beyond the petition***. Yet, that is exactly what Atlantic seeks to do in this case. Louisiana law is clear that "the duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[12]

---

[9] *Arceneaux*, 200 So.3d at 282.

[10] *Samson v. Apollo Res. Inc.*, 64 Fed. Appx. 418, at *5 (5th Cir.2003) ("All of the Louisiana cases we have found discussing this issue definitively state that Louisiana law does not permit reliance on evidence extrinsic to the complaint to demonstrate the insurer's obligation to defend. . . . Adopting a rule that would impose a duty to defend based on evidence arising during trial would run counter to the sensible bright line rule which allows insurance companies to make a decision on their duty to defend at the outset of litigation based on the allegations of the complaint."); *Vaughn,*785 So. 2d at 85.

[11] *Haskel, Inc. v. Superior Court*, 33 Cal.App.4th 963, 979 (1995), as modified (Apr. 25, 1995). Policyholders who purchase an insurer's defense are purchasing peace of mind. As one court noted, "the whole point to the insurance coverage duty to defend is to afford insureds some security and peace of mind when suits such as these are brought." *Independent Petrochem. Corp. v. Aetna Casualty & Sur. Co.*, 654 F. Supp. 1334, 1346 (D. D.C. 1986).

[12] *Arceneaux*, 200 So.3d at 282.

The *Calloway* and *Jambon* petitions disclosed a possibility of liability under Atlantic's Policy. Therefore, Phillips 66's motion should be granted.

Respectfully Submitted:

*/s/ Michael deBarros*

Glenn M. Farnet (#20185) [Lead Attorney]
glenn.farnet@keanmiller.com
John F. Jakuback (#21643)
john.jakuback@keanmiller.com
Michael deBarros (#32422)
michael.debarros@keanmiller.com
KEAN MILLER LLP
400 Convention St., Suite 700
Baton Rouge, LA 70802
Telephone: 225-387-0999
Facsimile: 225-388-9133

***Counsel for Phillips 66 Company***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 25th day of June, 2018.

*/s/ Michael deBarros*

Michael J. deBarros